## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

Certified Training Solutions, LLC

       Plaintiff

v.                               Case No.: 8:26-cv-01156

ConvenientMD, LLC, Diane Willey,
Marie Hall, Caitlin Morse,
Melody Barry, Derek Nelson,
Katelyn Dalton, Diana Tereshchuk,
and Victoria Cline,

       Defendants.

_____/

### DEFENDANTS CONVENIENTMD, LLC AND MARIE HALL'S MOTION TO DISMISS AND/OR STRIKE OR TRANSFER VENUE

Defendants ConvenientMD, LLC and Marie Hall (together "Defendants")[1] move to dismiss the Complaint filed against them by Plaintiff Certified Training Solutions, LLC ("CTS" or "Plaintiff"), pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(3), for lack of personal jurisdiction and improper venue. In the alternative, Defendants move to transfer this case to the District of New Hampshire, per the discretion afforded under 28 U.S.C. § 1404(a). Defendants further move to dismiss Counts IV through VII of the Complaint, pursuant to Federal Rule of Civil Procedure 12(b)(6), for failure to state a claim; and to dismiss or strike Plaintiff's requests for damages that are barred as a matter of law, pursuant to Federal Rule of Civil Procedure 12(f).

---

[1]    Of these eight individual defendants, Plaintiff has only completed service of process as to Hall.

In its Complaint, Plaintiff attempts to force ConvenientMD and Hall to litigate this dispute 1,400 miles from home, in a forum with which they have no commercial or other relevant connections. Because Defendants have no relevant contacts with Florida, and because the claims in Plaintiff's Complaint do not arise from activities in the Middle District of Florida, the Court should dismiss the Complaint for lack of personal jurisdiction and lack of venue; or, in the alternative, transfer this case to the District of New Hampshire, where all the relevant activities occurred.

Adding to the burden that this forum already places on Defendants, Plaintiff's pleading also obscures all factual bases for its copyright claims, and seeks statutory damages, punitive damages, and attorneys' fees which are prohibited by statute. Plaintiff has therefore failed to assert its copyright claims, and the Court should dismiss those claims. Otherwise, at a minimum, the Court should dismiss or strike Plaintiff's claims for statutory damages and other remedies that are statutorily barred.

### SUMMARY OF THE ALLEGATIONS AND THE DECLARATIONS

Plaintiff asserts claims against ConvenientMD, its former employee Hall, and seven other current or former employees. *See generally* Dkt. 1. Plaintiff alleges that, on unspecified dates between 2014 and 2025, Hall and the other employees each accessed Plaintiff's online "Train-the-Trainer" course materials, *see id.* at ¶¶ 49, 63, 78; that by clicking through pop-up notices in those materials, the employees entered contracts with CTS, *see id.* at ¶¶ 50, 63, 78; that these contracts

forbid the employees from using the knowledge earned in the "Train-the-Trainer" courses, unless they made certain additional payments to CTS, *see id.* at ¶¶ 52, 64-66, 79-80, 82; and that the employees violated these contracts by participating in training classes hosted by ConvenientMD, *see id.* at ¶¶ 53-55, 68-70, 83-84. Plaintiff also alleges that ConvenientMD and the eight employees used CTS's copyrighted materials in the training classes that ConvenientMD hosted, *see id.* at ¶¶ 42, 45, 93, 113, 134, 153, but does not allege any details as to what proprietary aspects of the materials were allegedly infringed, *see generally id.* at ¶¶ 87-165.

In support of this Motion to Dismiss, Defendants submit three declarations as exhibits to this Motion:

(1)    Declaration of Marie Hall, attached as <u>Exhibit A</u> ("Hall Declaration"). In summary, Hall attests that she lives and works in New Hampshire, and that her activities involving the CTS "Train-the-Trainer" course occurred in New Hampshire.

(2)    Declaration of Celina Frost, attached as <u>Exhibit B</u> ("Frost Declaration"). In summary, Frost attests that ConvenientMD's headquarters is in New Hampshire, that its operations are confined to New Hampshire and the surrounding states, and that it does not conduct business in Florida. Frost also attests that the CTS "Train-the-Trainer" course was accessed by ConvenientMD's employees only in New Hampshire or surrounding states, and that ConvenientMD's own training classes were taught from its headquarters in New Hampshire.

(3)   Declaration of Aaron Fenton, *Esq.*, attached as <u>Exhibit C</u> ("Fenton Declaration"). The Fenton Declaration encloses six documents which attorney Fenton downloaded from publicly-available sources, namely: four webpages showing that CTS's "contact us" webpage listed addresses located outside Florida from 2014 to the present; CTS's Articles of Incorporation, filed with the Florida Secretary of State on February 14, 2021; and CTS's 2026 Annual Report filed with the Florida Secretary of State.

**ARGUMENT**

**I.   Florida Lacks Personal Jurisdiction Over Defendants Because All Relevant Actions Occurred in or Around New Hampshire.**

Plaintiff "bears the initial burden of alleging in the complaint sufficient facts to make out a *prima facie* case of [personal] jurisdiction" over out-of-state defendants ConvenientMD and Hall. *United Techs. Corp. v. Mazer*, 556 F.3d, 1260, 1274 (11th Cir. 2009). Where the defendant then challenges jurisdiction by submitting declarations contradicting the exercise of jurisdiction, "the burden traditionally shifts back to the plaintiff to produce evidence supporting jurisdiction." *Id.*

"The determination of personal jurisdiction over a nonresident defendant requires a two-part analysis by the federal courts." *Cable/Home Commc'n Corp. v. Network Prods., Inc.*, 902 F.2d 829, 855 (11th Cir. 1990). First, the court "examine[s] the jurisdictional issue under the state long-arm statute," and *second*, the court "ascertain[s] whether or not sufficient 'minimum contacts' exist to satisfy

**4** of **29**

the Due Process Clause . . . so that maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Id.*[2]

Plaintiff does not allege that any defendant is subject to general jurisdiction in Florida, and instead focuses exclusively on specific jurisdiction.[3] To satisfy its burden, Plaintiff must demonstrate that exercising specific personal jurisdiction over Defendants in Florida (1) is authorized by Florida's long-arm statute, and (2) does not violate the Due Process Clause. *See generally* F.R.C.P. 4(k)(1)(a); *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). Plaintiff has fallen short of its burden on both accounts, which requires dismissal of the Complaint.

> A. *Florida's Long-Arm Statute Does Not Authorize Personal Jurisdiction Over Defendants.*

To demonstrate personal jurisdiction in Florida, Plaintiff must first clear the initial hurdle of showing that jurisdiction is authorized under Florida's long-arm statute. *See generally* § 48.193. "Florida's long-arm statute is to be strictly construed," *Sculptchair, Inc. v. Century Arts, Ltd.*, 94 F.3d 623, 627 (11th Cir. 1996), and "any doubts about applicability of the statute [are] resolved in favor of

---

[2] "When jurisdiction is based on a federal question arising under a statute that is silent regarding services of process," Federal Rule of Civil Procedure 4(e) requires the Court to "look to the state long-arm statute" for personal jurisdiction. *Sculptchair, Inc. v. Century Arts, Ltd.*, 94 F.3d 623, 626-27 (11th Cir. 1996). *See also Hayes v. Ocean Images, Ltd.*, 2009 WL 10667835, 4 (S.D. Fla. Oct. 2, 2009) ("Jurisdiction in this case is premised on a federal question arising under a statute, the Copyright Act, that is silent as to service of process," therefore "Florida's long-arm statute applies.").

[3] To satisfy general jurisdiction, Defendants' Florida connections would need to be "so continuous and systematic as to render them essentially at home in [Florida]." *See Goodyear Dunlop Tires Ops., v. Brown*, 564 U.S. 915, 919 (2011). Instead, as CTS acknowledges, ConvenientMD is a Delaware company with its principal place of business in New Hampshire. *See* Dkt. 1 ¶ 3. CTS appears to be aware that Hall is a resident of New Hampshire, as evidenced by CTS having successfully arranged service on Hall at her home in New Hampshire. *See* Dkt. 5.

the defendant and against a conclusion that personal jurisdiction exists," *Gadea v. Star Cruises, Ltd.*, 949 So. 2d 1143, 1150 (Fla. 3d DCA 2007). Plaintiff attempts to contort its claims to fit three subsections of the statute: section 48.193(1)(a)(6), relating to physical injuries or property damage occurring in Florida; section 48.193(1)(a)(2), relating to tortious acts occurring in Florida; and section 48.193(1)(a)(7), relating to contractual breaches occurring in Florida.

To start, under certain enumerated circumstances, Section 48.193(1)(a)(6) authorizes personal jurisdiction "over persons who cause injury to persons or property within Florida arising out of an action or omission . . . outside Florida." *MPS Monitor S.R.L v. Oberon Am.s, Inc.*, 2025 WL 807343, 5 (M.D. Fla. Mar. 13, 2025). This subsection fails to authorize personal jurisdiction over Defendants for two independent reasons:

- First, subsection (1)(a)(6) does not confer personal jurisdiction where the plaintiff suffers only "economic injury without accompanying physical injury or property damage." *Sculptchair*, 94 F.3d at 629. *See also Prunty v. Arnold & Itkin, LLP*, 753 Fed. Appx. 731, 735-36 (11th Cir. 2018) (similar). Each of Plaintiff's alleged damages are in the manner of "economic injuries" allegedly resulting from Defendants' breach of contract or copyright infringement. *See generally* Dkt. 1 ¶¶ 75-76, 103-05, 123-25. Thus, subsection (1)(a)(6) does not apply. *See Sculptchair*, 94 F.3d at 629; *Prunty*, 753 Fed. Appx. at 736; *MPS Monitor*, 2025 WL 807343 at 5.

**6** of **29**

- Second, subsection (1)(a)(6) is limited by the "corporate shield doctrine," which provides that "the actions of a corporate employee in a representative capacity do not form the basis for jurisdiction over the corporate employee in their individual capacity." *Villarino v. Joekel*, 2025 WL 2329959, 5 (11th Cir. 2025). *See also MPS Monitor*, 2025 WL 807343 at 4. Here, Plaintiff alleges that Hall was acting as ConvenientMD's employee and/or agent while she was taking the CTS course and subsequently training ConvenientMD staff. *See* Dkt. 1 ¶¶ 37, 40, 135. Given these allegations, Florida's corporate shield doctrine precludes subsection (1)(a)(6) jurisdiction over Hall. *See Villarino*, 2025 WL 2329959, at 5-6; *MPS Monitor*, 2025 WL 807343 at 4-5.

Next, Section 48.193(1)(a)(2) authorizes personal jurisdiction over parties who commit tortious acts in Florida. As with subsection (1)(a)(6), the corporate shield doctrine precludes personal jurisdiction for Hall under subsection (1)(a)(2). *See id.* Furthermore, because Plaintiff fails to state a valid claim for copyright infringement, *see infra*, § IV.A, Plaintiff likewise fails to plead any "tortious act" that could support personal jurisdiction under subsection (1)(a)(2). *See Horowitz v. Laske*, 855 So. 2d 169, 174 (Fla. 5th 2003) ("Where the threshold question of jurisdiction turns on whether a tort is committed in Florida, the court necessarily must review the allegations of the complaint to determine if a cause of action is stated."); *PVS Windoors, Inc. v. Babbitbay Beach Const., N.V.*, 598 F.3d 802, 808

(11th Cir. 2010) (finding personal jurisdiction improper where plaintiff initially alleged a tort, but the complaint failed to state such a claim).

Under prevailing Eleventh Circuit precedent, subsection (1)(a)(2) authorizes jurisdiction even where "defendants commit[] tortious acts outside the state that cause injury in Florida." *Posner v. Essex Ins. Co., Ltd.*, 178 F.3d 1209, 1217 (11th Cir. 1999). But this interpretation still requires the existence of an out-of-state tortious act that *causes injury within Florida. See, e.g., Kernal Records Oy v. Mosley*, 2010 WL 2812565, 5 (S.D. Fla. Jul. 5, 2010) (where courts have applied the Eleventh Circuit's interpretation, the tortious conduct was nonetheless "directed at Florida residents, corporations, or property, and the harm was felt exclusively or primarily in Florida"). Although Plaintiff alleges that it suffered injury in Florida, publicly-available documentation largely belies these allegations. In particular, for the entire period of the alleged tortious conduct, CTS has represented to the public that its business is located in states other than Florida: in early 2014, its website advertised a Michigan address for the company, *see* Fenton Declaration, ¶ 5.a; from mid-2014 to mid-2016, a California address, *see id.* at ¶ 5.b; and from mid-2016 to the present, a Tennessee address, *see id.* at ¶¶ 5.c, 6. Moreover, although Plaintiff alleges tortious conduct starting in 2014, *see* Dkt. 1 ¶¶ 28, 37, 49, CTS did not become a Florida entity until *seven years later*, in January 2021, *see* Fenton Declaration, ¶ 7 (CTS Articles of Organization). Given Plaintiff's public representations and filings, Plaintiff's allegations in the Complaint fail to satisfy a prima facie showing of "injury in Florida," and

subsection (1)(a)(2) does not authorize jurisdiction. *See Kernal Records*, 2010 WL 2812565 at 5 (finding no jurisdiction where copyright infringement allegedly occurred outside of Florida); *Lorente-Garcia v. Giraldo-Navarro*, 759 F. Supp. 3d 1301, 1308-09 (S.D. Fla. 2024) (finding no jurisdiction even though copyright infringement claim was brought by a Florida resident).

Finally, Section 48.193(1)(a)(7) authorizes personal jurisdiction over parties who "breach[] a contract in [Florida] by failing to perform acts required by the contract to be performed in [Florida]." Plaintiff does not allege the existence of any contract with ConvenientMD, so subsection (1)(a)(7) is facially inapplicable to ConvenientMD. As for Hall, although Plaintiff makes a conclusory allegation that Hall "failed to perform acts required by contract to be performed within Florida," Plaintiff does not actually identify any particular obligation that Hall was required to perform in Florida. *See* Dkt. 1 ¶ 16. This Court is not required to credit conclusory allegations, *see Edwards v. Prime, Inc.*, 602 F.3d 1276, 1291 (11th Cir. 2010), and such "naked assertion devoid of further factual enhancement" is insufficient under the federal pleading standard, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up). But contrary to Plaintiff's "naked assertion," even a rudimentary examination of the alleged contract terms shows that Hall's performance is devoid of any Florida connection: The obligation Hall is accused of violating was a prohibition on training other ConvenientMD staff, *see* Dkt. 1 ¶¶ 68-70, and ConvenientMD's staff exclusively operates within the confines of New England, *see* Frost Declaration, ¶¶ 5, 10-12. There is simply no instance where Hall would

have traveled to Florida — over 1,400 miles south of ConvenientMD's facilities — on account of any of the obligations in the alleged contract with CTS. Because nothing in the alleged contract was "required . . . to be performed in [Florida]," subsection (1)(a)(7) does not authorize jurisdiction over Hall.

> B. *Defendants' Activities Occurred Entirely Within or Around New Hampshire, and Defendants Have Not Purposefully Availed Themselves of Florida Law.*

In addition to long-arm authorization, Plaintiff must demonstrate that jurisdiction over Defendants in Florida would satisfy the requirements of Due Process. *See Int'l Shoe*, 326 U.S. at 316. To do so, Plaintiff must show that ConvenientMD and Hall each "purposefully directed [their] activities at residents of" Florida, and that Plaintiff's injuries "arise out of or relate to those activities." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985) (quotations and citations omitted). Plaintiff fails to satisfy this burden, thereby precluding Florida from exercising personal jurisdiction over ConvenientMD and Hall.

As alleged throughout the Complaint, Plaintiff has identified a single link between this lawsuit and the State of Florida: that Defendants accessed the CTS website and materials, and that CTS in turn had some link to Florida. *See* Dkt. 1 ¶¶ 1, 9-16. Setting aside the roundabout and vicarious nature of this purported Florida connection, even as to CTS's own link with Florida, this link is (i) tenuous, since CTS nonetheless represents its business as being located in Michigan, California, and Tennessee, and (ii) partial, since CTS only became a Florida company seven years into the relevant time period. *See* Fenton Declaration, ¶¶ 5.a-

5.c, ¶ 7 (CTS Articles of Organization). But regardless of the tenuous nature of the CTS–Florida link, as a matter of law, *Plaintiff's links* to the State of Florida are insufficient to confer personal jurisdiction over *Defendants. See Walden v. Fiore*, 571 U.S. 277, 284 (2014) (explaining that the Supreme Court has "consistently rejected attempts to satisfy the defendant-focused 'minimum contacts' inquiry by demonstrating contacts between the plaintiff . . . and the forum State").

Instead, the personal jurisdiction inquiry focuses on those "contacts that the 'defendant *himself*' creates with the forum state." *Id*. at 284 (quoting *Burger King*, 471 U.S. at 475). As to these defendant-created contacts, "it is essential" that Defendant commit "some act . . . purposefully avail[ing] itself of the privilege of conducting activities within [Florida], thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958) (citing *Int'l Shoe,* 326 U.S. 310). Plaintiff does not allege any act by ConvenientMD or Hall directed at Florida. And to the extent that Plaintiff alleges any affirmative acts at all by these Defendants, such acts occurred at and around ConvenientMD's headquarters approximately 1,400 miles north of Florida, where Defendants accessed CTS's website and conducted staff trainings. *See* Dkt. 1 ¶¶ 9-16; Hall Declaration, ¶¶ 6-8; Frost Declaration, ¶¶ 8-12. Nor does Plaintiff plausibly allege that Defendants purposefully directed their New Hampshire-based activities towards Florida by interacting with the CTS website; to the contrary, CTS's limited affiliation with Florida was unknown to Defendants, particularly since Plaintiff's website listed CTS's business address as being located in Michigan, California, and Tennessee.

*See* Fenton Declaration, ¶¶ 5-6. Absent *any* in-forum activity and *any* knowledge of the CTS–Florida link, Plaintiff is left arguing that the mere happenstance of Defendants accessing a website with a secret Florida connection somehow creates jurisdiction. Creation of jurisdiction through such a chance encounter is exactly the "random, fortuitous, or attenuated contact" that the "purposeful availment" test protects against. *See Burger King*, 471 U.S. at 475. Such jurisdiction-by-happenstance is the antithesis of "purposeful availment," which is meant to cabin personal jurisdiction to those forums where the defendant can "reasonably anticipate being haled into court." *See World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).

Finally, Plaintiff argues that jurisdiction is proper in Florida based on Hall's alleged contract with CTS, and based on the "injury to Plaintiff within [Florida]." *See* Dkt. 1 ¶¶ 9, 10, 13-16. As to Hall's alleged contract, "an individual's contract with an out-of-state party alone" is not "sufficient minimum contacts." *See Burger King*, 471 U.S. at 478-79. In fact, Florida courts have regularly rejected personal jurisdiction where it is based only on contracts with Florida counterparties. *See Marsh Supermarkets, Inc. v. Queen's Flowers Corp.*, 696 So. 2d 1207, 1209 (Fla. 3d DCA 1997) (where out-of-state buyer placed 105 purchase orders with a Florida seller, these contracts alone were "insufficient to establish minimum contacts with Florida").[4]

---

[4] *See also O'Brien Glass v. Miami Wall Sys.*, 645 So. 2d 142, 144 (Fla. 3d DCA 1994) ("The mere fact that O'Brien ordered goods from a Florida corporation does not render it amenable to suit in Florida."); *Burke Prod.s, Inc. vs Access Elec.s, LLC*, 311 So. 3d 145, 151 (Fla. 2d DCA

<u>As to Plaintiff's alleged injury</u>:

> Mere injury to a forum resident is not a sufficient connection to the forum. . . . The proper question is not where the plaintiff experienced a particular injury or effect but whether the *defendant's* conduct connects him to the forum in a meaningful way.

*Walden*, 571 U.S. at 290. In both scenarios, neither in-forum contracts nor injuries relieve Plaintiff of its burden to demonstrate that Defendants' own purposeful contacts "create a substantial connection with the forum State." *See Burger King*, 471 U.S. at 475. Plaintiff has failed to make this showing, and jurisdiction in Florida is therefore improper.

C.  *Exercising Personal Jurisdiction Over Defendants in Florida Offends Traditional Notions of Fair Play and Substantial Justice.*

Plaintiff's threadbare jurisdictional allegations are even more dubious when "considered in light of other factors to determine whether the assertion of personal jurisdiction would comport with fair play and substantial justice." *Burger King*, 471 U.S. at 476 (citing *Int'l Shoe,* 326 U.S. 310). These factors include: (1) "the burden on the defendant," (2) "the forum State's interest in adjudicating the dispute," (3) "the plaintiff's interest," (4) "the interstate judicial system's interest in obtaining the most efficient resolution of controversies," and (5) the "shared interest of the several States in furthering fundamental substantive social policies." *Id.* at 476–77 (quoting *World-Wide Volkswagen*, 444 U.S. at 292).

---

2020) (finding no personal jurisdiction over out-of-state buyer, even though buyer contacted the Florida seller multiple times about the contract); *Pres-Kap*, 636 So. 2d at 1353 (transaction with Florida counterparty was "obviously New York-based," and the fact that the plaintiff's web server was located in Florida did not change the transaction "into a Florida transaction so that the defendant could reasonably expect to be sued in Florida").

For the <u>first factor</u>, forcing Defendants to litigate in Florida would cause particularly-acute burdens for Defendants, including because (i) Hall is an individual living in New Hampshire, approximately 1,400 miles north of this Court, *see* Hall Declaration, ¶ 3, and (ii) ConvenientMD is based in New Hampshire, and does not do business outside New England, *see* Frost Declaration, ¶¶ 4-5. This first factor therefore weighs heavily in favor of rejecting personal jurisdiction. *See Future Tech. Today, Inc. v. OSF Healthcare Sys.*, 218 F.3d 1247, 1251 (11th Cir. 2000) (where the Illinois-based defendant did not do business in Florida, "the burden on [the] defendant in defending a lawsuit in Florida would be great"); *Estes v. Rodin*, 259 So.3d 183, 198 (Fla. 3d DCA 2018) (finding a heavy burden if California and Kansas defendants, who do not do business in Florida, were forced to litigate in Florida).

For the <u>second factor</u>, although Florida has an interest in resolving disputes involving Florida companies, it is unclear how much CTS actually operates in Florida. *See* Fenton Declaration, ¶¶ 5-6 (CTS's website, listing Michigan, California, and Tennessee addresses). But Defendants' lack of activity within Florida's boundaries and the attenuated nature of their Florida connection make Florida's interest significantly less compelling. *See Future Tech.*, 218 F.3d at 1251 (the Court "cannot conclude a strong state interest in haling people into Florida courts from all over the country for entering into one service arrangement, over the telephone without ever setting foot in Florida"); *R&R Games, Inc. v. Fundex Games, Ltd.*, 2013 WL 784397, 9 (M.D. Fla. Mar. 1, 2013) ("Florida lacks an

interest in disciplining a foreign company that has never directed any activity into the state").

The third factor almost always favors the plaintiff, whose choice of forum is afforded some weight. *See, e.g.*, *Future Tech.*, 218 F.3d at 1251 ("Any plaintiff's interest in obtaining convenient and effective relief is always present"). However, it appears that Plaintiff is "at home" in at least one other state, *see* Fenton Declaration, ¶ 6 (listing CTS's address in Knoxville, Tennessee), reducing Plaintiff's interest in litigating in Florida.

For the fourth factor, because all activities relevant to Plaintiff's claims occurred in New Hampshire, the evidence needed for this lawsuit will overwhelmingly be located in New Hampshire, rather than Florida. This weighs against exercising personal jurisdiction over this matter in Florida.

For the fifth factor, this does not weigh for or against exercising jurisdiction, except to the extent that the several States have an interest in preserving the Due Process protections afforded by the "purposeful availment" test.

In summation, exercising jurisdiction in Florida would inflict exceptional burdens on Defendants (first factor), while offering limited benefit to Plaintiff (third factor). And while Florida's interests are not particularly availing (second factor), there is at least some reason to believe that the judicial system's interest in efficient resolution (fourth factor) would be harmed if jurisdiction is granted. On balance, the five factors do not weigh in favor of finding jurisdiction, particularly in light of Plaintiff's weak purposeful availment showing.

**II.   Venue is Inappropriate in the Middle District of Florida, Because All "Events Giving Rise to CTS's Claims" Occurred in or Around New Hampshire.**

As with personal jurisdiction, Plaintiff bears the burden of presenting "a prima facie showing of venue." *Delong Equip. Co. v. Wash. Mills Abrasive Co.*, 840 F.2d 843, 845 (11th Cir. 1988). CTS alleges that venue exists in this Court pursuant to 28 U.S.C. § 1391(b), § 1391(c), and § 1400(a). *See* Dkt. 1 ¶ 17. As to § 1391(b)(1), § 1391(c), and § 1400(a), these provisions are facially inapplicable: Each affords venue based on one or more defendants residing within the district, but none of the defendants in this lawsuit reside in Florida, let alone the Middle District of Florida. *See, e.g.*, Dkt. 1 ¶ 3 (ConvenientMD "is a Delaware [LLC] with its principal place of business in New Hampshire"); Dkt. 5 (Summons Issued to Marie Hall); Hall Declaration, ¶ 3.

As for Section 1391(b)(2), this provision allows venue in the district where "a substantial part of the events or omissions giving rise to the claim occurred." To evaluate venue under this provision, the Court must analyze "[o]nly the events that directly give rise to a claim" implicated in the lawsuit. *Jenkins Brick Co. v. Bremer*, 321 F.3d 1366, 1371 (11th Cir. 2003). Then, as to each "event" so analyzed, the Court may "only [consider] those locations hosting a 'substantial part' of [the] events." *Id. See also Anderson v. Cottonwood Senior LP*, 2011 WL 4595594, 1 (N.D. Fla. Aug. 29, 2011) (locations "hosting a substantial part" of the event are locations where in-location activities "bear a close nexus to the claims") (quoting *Daniel v. Am. Bd. of Emergency Med.*, 428 F.3d 408, 433 (2d Cir. 2005)). All told, the venue

evaluation "generally requires a greater level of relevant activities by the Defendants than the minimum contacts analysis for personal jurisdiction." *TMJ Practice Mgmt. Assoc.s, Inc. v. Curran*, 2017 WL 3130421, 5 (S.D. Fla. Jul 24, 2017) (citing *Jenkins Brick*, 321 F.3d at 1372).

Turning to Plaintiff's claims and allegations, all events "giv[ing] rise to" Plaintiff's claims occurred outside Florida. Most notably, *New Hampshire* is where the alleged contract was presented to Hall (via clickwrap notices), and where Hall allegedly entered that contract, *see* Hall Declaration, ¶ 6; *New Hampshire* is where the terms of the alleged contract intended to restrict Hall's actions, by prohibiting her from conducting trainings, *see* Dkt. 1 ¶¶ 29, 52, 54; and *New Hampshire* is primarily where Defendants are alleged to have violated the contract and CTS's copyrights, by nonetheless training ConvenientMD's staff, *see* Frost Declaration, ¶¶ 9-10 (trainings were in New Hampshire, Massachusetts, or Maine, and all instructors lived "within driving distance of . . . Portsmouth, New Hampshire"), Hall Declaration, ¶ 8. Given these key activities, New Hampshire — not Florida — hosted "a substantial part" of each event that gave rise to Plaintiff's claims, including events constituting the alleged offer, acceptance, and breach for Plaintiff's contract claim, and the alleged infringement for its copyright claim.

On the other hand, the only "event" involving Florida was CTS's decision to "operate" and "administer" website servers from Florida – although Plaintiff does not even allege that the servers themselves are located within the state. *See* Dkt. 1

¶¶ 12, 15.[5] Plaintiff's decision on where to administer its website did not "directly give rise to" its breach of contract or copyright infringement claims, given that the alleged breach and infringement occurred well after any access to the servers. *See* Dkt. 1 ¶¶ 42, 45, 68-70. But more pointedly, Plaintiff's Florida website administration is irrelevant because "the proper focus of the venue inquiry is on the relevant activities of the Defendants," not Plaintiff. *TMJ Practice*, 2017 WL 3130421 at 3 (citation omitted). *See also, e.g., Infinite Growth Grp., LLC v. Infinite Growth Assocs., LLC*, 2010 WL 3190613, 3 (M.D. Fla. Aug 11, 2010) (although the plaintiff was a Florida company and injured in M.D. Florida, this "d[id] not bear a sufficiently close nexus to the asserted claims").

For example, in *Jenkins Brick*, an Alabama employer bound its Georgia employee under a non-compete agreement. *See* 321 F.3d at 1372. Although the employer made regular contact with the employee from within Alabama, the Court found these contacts "do not have a close nexus with the cause of action for breach of contract, and they are therefore irrelevant." *Id.* at 1372-73. The Court then found that the acts "giving rise to" the employer's breach of contract claim all occurred in Georgia, where the non-compete was presented to and signed by the employee; where the non-compete intended to restrict the employee's actions; and where the

---

[5] Even if CTS's servers were located in Florida, the location of its servers was unknown to Defendants, of vanishingly-little practical importance regardless, and would still not support personal jurisdiction in Florida. *See Pres-Kap, Inc. v. Sys. One, Direct Access, Inc.*, 636 So. 2d 1351, 1353 (Fla. 3d DCA 1994) ("The additional factor in this case that the computer database for the contracted-for information happens to be located in Florida cannot change this result. There is no showing on this record that the defendant was even aware of the exact electronic location of the subject computer database, as this clearly would have been of little importance to it.").

employee ultimately violated that non-compete. *See id.* at 1372. The New Hampshire events "giving rise to" CTS's claims are analogous to the Georgia events "giving rise to" the *Jenkins Brick* claims, whereas Courts have regularly rejected Plaintiff's argument that venue is proper merely because CTS operated and was injured in Florida. *See, e.g., TMJ Practice*, 2017 WL 3130421 at 5-6 (although the plaintiff was injured in S.D. Florida, this in-forum injury was not "a substantial part of the events or omissions giving rise to the claim").[6]

Finally, because this action may be brought in an alternative venue — the District of New Hampshire — Plaintiff's last potential basis for venue, Section 1391(b)(3), is inapplicable. Because venue is improper in the Middle District of Florida, this Court should dismiss the Complaint under 28 U.S.C. § 1406(a).

### III.   Transfer Is Otherwise Appropriate "For the Convenience of Parties and Witnesses" and "in the Interest of Justice."

Venue is improper in the Middle District of Florida. But if this Court determines otherwise, the Court should nonetheless transfer this case to the District of New Hampshire. Where an alternative venue exists, 28 U.S.C. § 1404(a) allows that:

---

[6] *See also, e.g., Jenkins Brick*, 321 F.3d at 1372-73; *Infinite Growth*, 2010 WL 3190613 at 3 (rejecting venue in M.D. Florida, notwithstanding a Florida plaintiff and injury in M.D. Florida); *Anderson*, 2011 WL 4595594 at 2 (although the plaintiff lived in Florida, the location with "a substantial part of the events underlying this action" was Alabama, where the harassment and statutory violations actually occurred); *Threadgill v. Dennard*, 2020 WL 4740502, 1 (N.D. Fla. Jul 20, 2020) (although the plaintiff lived in Florida, "[t]he crux of [the] complaint arises out of events . . . in . . . California," where the plaintiff was wrongfully-detained).

> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

Transfers under § 1404(a) are generally "in accordance with the doctrine of *forum non conveniens*," except that courts are afforded "more discretion" than would be allowed under *forum non conveniens. Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 253 (1981). *See also Norwood v. Kirkpatrick*, 349 U.S. 29, 39 (1955) (§ 1404(a) "permit[s] courts to grant transfers upon a lesser showing of inconvenience").

As previously discussed, venue is appropriate under 28 U.S.C. § 1391(b)(2) in the District of New Hampshire, because "a substantial part of the events . . . giving rise to the claim occurred" in New Hampshire. *See supra,* § II. In addition, Defendants are residents of New Hampshire, thereby authorizing venue under 28 U.S.C. § 1391(b)(1) in the District of New Hampshire.

Having identified an alternative venue, the Court next evaluates whether transfer would serve "the convenience of the parties and witnesses" and otherwise promote "the interest of justice." *Atl. Marine Const. Co. v. W. Dist. of Tex.*, 571 U.S. 49, 62-63 (2013). Given the paucity of connections between Plaintiff's claims and the Middle District of Florida, and the extensive connections that this case has with the District of New Hampshire, the overwhelming majority of evidence in this lawsuit will be located in New Hampshire. For example, nearly all of the witnesses concerning the defendants' access to the Train-the-Trainer course and ConvenientMD's in-house training classes are (or were) ConvenientMD employees, located in (or around) New Hampshire. *See* Frost Declaration, ¶¶ 10-12

(all course and training participants and training instructors lived in New England). On sheer numbers alone, the location of ConvenientMD's relevant personnel overwhelmingly favors New Hampshire over Florida: Plaintiff alleges that "at least fifty [] Train-the-Trainer licenses" were sold to ConvenientMD's staff, Dkt. 1 ¶ 38, meaning that "at least fifty" individuals would presently be required to travel 1,400 miles from in or near New Hampshire to Florida for this case, *see* Frost Declaration, ¶ 11 (all course participants lived in New England). Similarly, nearly all documents concerning the defendants' participation in the Train-the-Trainer course and in-house training classes are located at ConvenientMD's headquarters in New Hampshire. *See* Frost Declaration, ¶¶ 13-14.

In contrast, the Middle District of Florida has little-to-no connection to the claims, and therefore little-to-no benefit from litigating here. *See, e.g., Manuel v. Convergys Corp.*, 430 F.3d 1132, 1135 (11th Cir. 2005) ("Our court has previously recognized convenience of the parties and the forum's connection with the controversy as relevant, albeit nonexclusive, factors."). Even for the handful of Plaintiff's personnel that may be implicated in or inconvenienced by the lawsuit, it is unclear that the Middle District of Florida is particularly convenient for these personnel. For example, according to filings with the Florida Secretary of State, the addresses for CTS's President (Lisa Bradley) and CFO (Phoenix Vanzutphen) are each in Knoxville Tennessee, not Florida. *See* Fenton Declaration, ¶ 8 (2026 Annual Report).

The District of New Hampshire is also the more convenient forum because Plaintiff's breach of contract claims are governed by New Hampshire law.[7] In this regard, Florida follows Lex Loci Contractus choice of law, *see Shaps v. Provident Life & Acc. Ins. Co.*, 826 So. 2d 250, 254 n. 3 (Fla. 2002), which holds that a contract is governed by the law of the place where the last act necessary to bind the parties occurred, *see Jemco, Inc. v. United Parcel Service, Inc.*, 400 So. 2d 499, 501 (Fla. 3d 1981). In "clickwrap" agreements like those alleged by Plaintiff, this "last act" is ordinarily where the user clicks to accept the clickwrap terms. *See Sun Life Assur. Co. v. Imperial Premium Fin., LLC*, 904 F.3d 1197 (11th Cir. 2018); *Airbnb, Inc. v. Doe*, 336 So.3d 698 (Fla. 2022). Because Hall clicked accept on these terms from her device located in New Hampshire, *see* Hall Declaration, ¶ 6, New Hampshire law applies to these alleged contracts.

For each of these reasons, if the Court elects not to dismiss the Complaint, then the Court should exercise its discretion to transfer this case to the District of New Hampshire under § 1404(a), as that forum is significantly more convenient for the parties and the witnesses, and has substantially more connection to the issues and claims in this case.

## IV. Plaintiff's Copyright Claims Are Based on Conclusory Allegations, and Should be Dismissed.

In Counts IV through VII of the Complaint, Plaintiff asserts claims for copyright infringement based on two registered copyrights: Urine Specimen

---

[7] The alleged contracts do not contain a choice of law or choice of venue provision. *See* Dkt. 1-3, 1-4, 1-5.

Collection ("'174 Registration"), and Urine Specimen Collection 2023 Edition ("'404 Registration"). *See* Dkt. 1 ¶¶ 88-91, 108-11. For each of these claims, Plaintiff's allegations of infringement rely on rote recitation of the legal elements, and are devoid of any supporting factual allegations, which warrants dismissal. Furthermore, if the Court chooses not to dismiss these claims, then it should nonetheless dismiss or strike Plaintiff's claims for punitive damages, statutory damages, and attorney's fees, which are barred by the relevant statutes.

A.   *Plaintiff's Copyright Claims Lack Factual Allegations to Support the Causes of Action.*

To state a claim for direct copyright infringement, Plaintiff must allege (1) ownership of a valid copyright, and (2) copying of original elements of the work. *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991). This requires Plaintiff to plead "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007). *See also Iqbal*, 556 U.S. at 678 ("Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement") (cleaned up).

In the Complaint, Plaintiff alleges that Hall and each of the other individual defendants had access to copyrighted materials through the online Train-the-Trainer course, and that ConvenientMD obtained access to these materials through the individual defendants. *See* Dkt. 1 ¶¶ 93–94, 113–14. This is where the Complaint's relevant factual allegations end. In particular, as to Defendants' alleged infringement of Plaintiff's works, the Complaint foregoes factual

allegations in lieu of parroting the Copyright Act, by alleging that Defendants infringed the '174 Registration and '404 Registration "by reproducing, displaying, distributing, creating derivative works of, and/or publicly displaying [the work] and portions thereof." Dkt. 1 ¶¶ 96, 116.[8] However, pleadings "require[] more than . . . a formulaic recitation of the elements of [Plaintiff's] cause of action," *Twombly*, 550 U.S. at 545, nor is it sufficient for Plaintiff to "tender[] naked assertions devoid of further factual enhancement," *Iqbal*, 556 U.S. at 678.

In relying exclusively on conclusory allegations, Plaintiff makes no factual allegations identifying the original element(s) of the works that were copied; specifying who copied the works, and when; describing the manner or circumstances of the alleged reproduction, distribution, or display; identifying the alleged "derivative works"; nor giving notice as to how the accused materials are substantially similar to protectable elements of Plaintiff's '174 Registration and '404 Registration. Plaintiff's conclusory allegations are insufficient as a matter of law. *See Dodd v. Woods*, 2010 WL 3747007, 4 (M.D. Fla. Aug. 31, 2010), *report and recommendation adopted*, 2010 WL 3745802 (M.D. Fla. Sept. 21, 2010); *Trovato v. Machado*, No. 1:25-cv-20064, Dkt. 51 at p. 11 (S.D. Fla. Oct. 20, 2025) ("At bottom, Plaintiffs have failed to allege which elements are their original creation, and attempting to allege similarity is not enough"). Plaintiff's omissions

---

[8] *Compare* Dkt. 1 ¶¶ 96, 116 *with* 17 U.S.C. § 106 (affording copyright holders the exclusive right to "reproduce," "distribute," "prepare derivative works base upon," and "display . . . publicly" the copyrighted work).

are particularly egregious given its further allegation that ConvenientMD "disclosed certain training materials" to CTS "directly establishing [ConvenientMD] was and is infringing at least three of CTS's copyrighted materials." Dkt. 1 ¶ 45. Since Plaintiff is already in possession of specific allegedly-infringing materials, Plaintiff has no excuse for the conclusory allegations in its Complaint.

In this manner, Plaintiff's conclusory allegations fail to allege copying, because Plaintiff does not identify the accused materials, the original protectable elements allegedly copied, nor facts supporting substantial similarity. This Court should therefore dismiss the Complaint's direct copyright claims (Count IV and Count V), which in turn warrants dismissal of the indirect copyright claims (Count VI and Count VII).[9] Alternatively, the Court should require a more definite statement under Rule 12(e), because Count IV and Count V are so vague that Defendants cannot reasonably prepare a response—particularly as to what specific elements of the '174 Registration and '404 Registration were allegedly copied, what accused materials embody the alleged copying, and the manner in which the alleged copying occurred. *See* Fed. R. Civ. P. 12(e).

---

[9] *See Peter Letterese & Assocs., Inc. v. World Inst. of Scientology Enters., Int'l*, 533 F.3d 1287, 1298 n. 11 (11th Cir. 2008*); Klein & Heuchan, Inc. v. CoStar Realty Info., Inc.,* 2011 WL 6097980, 3 (M.D. Fla. Dec. 7, 2011).

B.     *Punitive Damages, Statutory Damages, and Attorney's Fees are Unavailable as a Matter of Law.*

If the Court does not dismiss one or more of Plaintiff's copyright claims, the remaining claims must be stricken or dismissed to the extent that they seek punitive damages, statutory damages, and attorney's fees under the Copyright Act. *See* Dkt. 1 ¶¶ 26, 31, 35-36, 40.

As to punitive damages, "based on the express language of 17 U.S.C. § 504(a), which sets forth the remedies for copyright infringement . . . punitive damages are not a remedy available under the Copyright Act." *Calio v. Sofa Express, Inc.*, 368 F. Supp. 2d 1290, 1291-92 (M.D. Fla. 2005). *See also Healthplan Servs., Inc. v. Dixit*, 2021 WL 4927434, 11 (M.D. Fla. May 27, 2021), *report and recommendation adopted,* 2021 WL 4926752 (M.D. Fla. July 22, 2021).

As to statutory damages and attorney's fees, by statute, Plaintiff is barred from recovering statutory damages (§ 504) and attorney's fees (§ 505) if the infringing activity began before CTS registered the copyrights. *See* 17 U.S.C. § 412 ("[N]o award of statutory damages or of attorney's fees, as provided by sections 504 and 505, shall be made for . . . any infringement of copyright commenced after first publication of the work and before the effective date of its registration . . . ."). As detailed in the Complaint and exhibits thereto, Plaintiff alleges infringement of two registered copyrights:

- The '174 Registration, which has a publication date of November 15, 2014, and an effective registration date of October 20, 2025. *See* Dtk. 1-1. Plaintiff

alleges that it learned of the '174 Registration's infringement "in March 2025," *i.e.*, at least six months prior to the effective registration date. *Compare* Dkt. 1 ¶¶ 39, 44-47 *with* Dkt. 1-1.

- The '404 Registration, which has a publication date of January 23, 2023, and an effective registration date of March 3, 2026. *See* Dkt. 1-2. Plaintiff alleges that it learned of the '404 Registration's infringement "in March 2025," *i.e.*, nearly a year prior to the effective registration date. *Compare* Dkt. 1 ¶¶ 39, 44-47 *with* Dkt. 1-2.

Because the alleged infringement commenced prior to the effective date for each of Plaintiff's registered copyrights, 17 U.S.C. § 412 expressly prohibits Plaintiff from recovering any "award of statutory damages or of attorney's fees" related to such alleged infringement, and Plaintiff's demands for the same must therefore be stricken or dismissed. *See, e.g., GlobalOptions Servs., Inc. v. N. Am. Training Grp., Inc.*, 131 F. Supp. 3d 1291, 1298 (M.D. Fla. 2015) (dismissing claims for statutory damages under § 504 and attorney's fees under § 505, where the alleged infringement occurred before copyright registration); *Andros v. Indian River News, LLC*, 2025 WL 3282575, 4-5 (S.D. Fla. Oct. 2, 2025) (striking identical damages under copyright laws), *report and recommendation adopted*, No. 25-14123, CIV (S.D. Fla. Apr. 17, 2026).

## CONCLUSION

ConvenientMD operates exclusively in New England, which is also where each of the individual defendants live and work. Nonetheless, Plaintiff seeks to hale

Defendants into court over 1,400 miles away in Florida, based on the mere fact that Defendants accessed online materials that were – unbeknownst to Defendants – owned by a Florida company. Plaintiff's spartan basis for personal jurisdiction is matched by the paucity of factual allegations supporting its copyright claims, which merely repeat the statutory elements of Plaintiff's claim. There is no jurisdiction or venue in this Court and Plaintiff has failed to state copyright claims against Defendants, each warranting dismissal.

**WHEREFORE**, Defendants ConvenientMD and Hall respectfully request that this Court issue an order:

(i)    Dismissing the Complaint as to Defendants ConvenientMD and Hall, for lack of personal jurisdiction;

(ii)    Dismissing the Complaint as to Defendants ConvenientMD and Hall, for lack of appropriate venue, or in the alternative, transferring venue to the District of New Hampshire under 28 U.S.C. 1404(a);

(iii)    Dismissing Count IV, Count V, Count VI, and Count VII as-against Defendants ConvenientMD and Hall, or in the alternative, dismissing or striking Plaintiff's claims for punitive damages, statutory damages, and attorneys' fees under the Copyright Act; and

(iv)    Grant such other relief as may be just, equitable, and proper.

## LOCAL RULE 3.01(g) CERTIFICATION

The undersigned certifies that on June 24, 2026, counsel for ConvenientMD conferred with counsel for Plaintiff via video conference regarding the relief requested herein. Plaintiff opposes the relief requested.

Respectfully submitted,

*s/ Tori C. Simmons*

Cameron G. Shilling (NHBA 11363)
Cameron.Shilling@mclane.com
Aaron R. Fenton
Aaron.Fenton@mclane.com
MCLANE MIDDLETON, PA
900 Elm St.
Manchester, NH 03101
603-628-1351
*Lead Counsel for Defendants*
*ConvenientMD, LLC and Marie Hall*

Dennis P. Waggoner (FBN 509426)
dennis.waggoner@hwhlaw.com
regina.bigness@hwhlaw.com
Tori C. Simmons (FBN 107081)
tori.simmons@hwhlaw.com
michelle.armstrong@hwhlaw.com
HILL, WARD & HENDERSON, P.A.
101 E. Boulevard, Suite 3700
Tampa, FL 33602
Telephone:  813-221-3900
Facsimile:  813-221-2900
*Attorneys for Defendants*
*ConvenientMD, LLC and Marie Hall*