UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CERTIFIED TRAINING SOLUTIONS, LLC,

     Plaintiff,

v.                          Case No.: 8:26-cv-01156-CEH-CPT

CONVENIENTMD, LLC, DIANE WILLEY,
MARIE HALL, CAITLIN MORSE,
MELODY BARRY, DEREK NELSON,
KATELYN DALTON, DIANA TERESHCHUK,
and VICTORIA CLINE,

     Defendants.

_____/

**AMENDED COMPLAINT**

Plaintiff, Certified Training Solutions, LLC ("CTS" or "Plaintiff"), by and through undersigned counsel, hereby sues Defendants, ConvenientMD, LLC ("Defendant ConvenientMD" or "ConvenientMD"), and Defendants Diane Willey ("Defendant Willey"), Marie Hall ("Defendant Hall"), Caitlin Morse ("Defendant Morse"), Melody Barry ("Defendant Barry"), Derek Nelson ("Defendant Nelson"), Katelyn Dalton ("Defendant Dalton"), Diana Tereshchuk ("Defendant Tereshchuk"), and Victoria Cline ("Defendant Cline") (collectively, the "Individual Defendants"), and alleges as follows:

## PARTIES

1.  Plaintiff CTS is a Florida limited liability company with its principal place of business in Pinellas County, Florida.

2.  CTS provides Department of Transportation- ("DOT") compliant online training and certification programs nationwide through an online learning platform that delivers proprietary content developed and administered in Florida.

3.  Defendant ConvenientMD is a Delaware limited liability company with its principal place of business in New Hampshire.

4.  Defendant Marie Hall ("Defendant Hall") is an individual who enrolled in and completed Plaintiff's Train-the-Trainer course and entered into Plaintiff's standard license agreement.

5.  Defendants Caitlin Morse ("Defendant Morse"), Melody Barry ("Defendant Barry"), Derek Nelson ("Defendant Nelson"), Katelyn Dalton ("Defendant Dalton"), Diana Tereshchuk ("Defendant Tereshchuk"), Diane Willey ("Defendant Willey"), and Victoria Cline ("Defendant Cline"), are individuals who enrolled in Plaintiff's Train-the-Trainer course and, as a condition of access, affirmatively accepted Plaintiff's Terms and Conditions and license agreement.

2

**GENERAL ALLEGATIONS**

6.     Lisa Bradley, CTS's owner, directs and controls CTS's operations, including the creation of CTS's copyrighted training materials, the administration of the learning management system, and the licensing program, and she conducts CTS's operations from Florida.

7.     Since November 2018, Bradley has resided in Florida and has directed and controlled CTS's business from Florida. In January 2021, CTS was organized as a Florida limited liability company with its principal office in Pinellas County, Florida. At all times since 2018, CTS's business has been based in, directed from, and operated in Florida.

8.     Before its incorporation, CTS operated as a sole proprietorship wholly owned by Bradley. Upon CTS's incorporation as a Florida limited liability company in January 2021, all of the sole proprietorship's contracts, licenses, accounts receivable, and claims arising from the conduct alleged herein were assigned to and vested in CTS, the Florida limited liability company that is Plaintiff in this action.

9.     As set forth above, CTS offers nationally recognized DOT compliant online training and certification programs. One of CTS's core offerings is its proprietary "Train-the-Trainer" Urine Specimen Collector Course (the "Course"), which equips qualified individuals to provide hands-on training (proficiency demonstration) to others in DOT urine specimen collection procedures.

10. The proficiency demonstration/hands-on training includes, without limitation, qualified trainers/monitors overseeing specimen collector students performing federally-required, five error-free mock collections while the instructor directs the students, observes, and ensures the mock collections are error-free.

11. The Course is hosted exclusively through CTS's learning management system ("LMS") and consists of protected, original copyrightable content including, without limitation, instructional slides, video modules, procedural checklists, digital proficiency evaluations, and accompanying certification forms.

12. The Course materials are subject to copyright protection and may only be accessed and used under strict license terms issued by CTS. CTS is the copyright owner of the original literary works that make up the Course, including the original copyrighted work known as "Urine Specimen Collection" (also referred to as the "Work"), and the copyrighted derivative work known as "Urine Specimen Collection 2023 Edition" (also referred to as the "Derivative Work") (collectively, the "Works").

13. The Works are original copyrightable works. Plaintiff has complied in all respects with 17 U.S.C. § 101 et seq. and has secured exclusive rights in the Works and has received its copyright registrations in the Works with the Copyright Office in accordance with its rules and regulations. True and correct

4

copies of the Certificates of Registration from the U.S. Copyright Office for the Works are attached hereto as Exhibit A and Exhibit B.

14.     ConvenientMD initiated the parties' relationship in July 2014 when ConvenientMD, through its manager Melissa Mavrogeorge, contacted CTS to obtain access to CTS's Train-the-Trainer course. ConvenientMD has continuously maintained this relationship with CTS through consistent use of CTS training courses since 2014.

15.     At the outset of the relationship, CTS informed ConvenientMD that its Train-the-Trainer course did not authorize the purchaser to teach Component 1 procedures training, and that the purchaser was required to buy a separate procedures course from CTS for each specimen collector the purchaser trained. ConvenientMD proceeded to purchase the course and instructed its employees to do so as well.

16.     Each individual who enrolled in the Train-the-Trainer Course, including Defendant Hall and the remaining Individual Defendants, were required to affirmatively accept CTS's Terms and Conditions prior to receiving access to the Course, the Works, and related training content.

17.     These Terms and Conditions included a limited, non-transferable license to access the Course and the copyright-protected works therein, and expressly prohibited the sharing, reproduction, or public display of any training materials.

18.     Since as early as 2014, CTS has enforced a strict one-user licensing model through its LMS. At the beginning of its Train-the-Trainer course, each trainee is presented with copyright warnings that appear prominently on a required slide before access to course content.

19.     CTS's copyright warning and notice (the "IMPORTANT NOTICE"), continuously in use since 2014, expressly states that the course being accessed is copyrighted and intended for use by one individual only, that copying, printing, or sharing the content was prohibited, and that violations will result in legal action. The notice also states that a separate course purchase is required "for each person you will train." A true and correct screenshot of this notice is attached hereto as Exhibit C. The IMPORTANT NOTICE is displayed on the CTS website and set forth in the Terms and Conditions users agreed to when purchasing the online course.

20.     Prior to July 24, 2019, all users were required to proceed past the IMPORTANT NOTICE in order to complete the training, and the LMS did not permit course access without viewing the notice. This process constituted valid notice under Florida law, and user agreement to Terms and Conditions as well as continuation through the LMS reflected manifested assent to the stated limitations.

21.     Individual Defendant Willey first accessed and completed the Train-the-Trainer Course between 2014 and July 24, 2019.

6

22.     On July 24, 2019, an affirmative "click-to-agree" mechanism was implemented. Between July 24, 2019, and April 9, 2023, CTS incorporated multi-layered acceptance requirements pursuant to which trainees were required to click "I Agree," type their name and email, and affirm multiple times that they understood they must purchase a new and separate online collector procedures course for each trainee to whom they intended to provide hands-on proficiency training, that they were not permitted to teach Component 1 content, and that they were only authorized to supervise hands-on Component 2 instruction for internal staff after purchase of required Component 1 courses for staff they intended to train and upon payment of a fee for each person to whom they provided Component 2 instruction. If a user did not accept these terms, they were instructed to exit and were offered a refund. A true and correct copy of the updated July 24, 2019 agreement is attached hereto as Exhibit D.

23.     The following Individual Defendants accessed and completed the Train-the-Trainer Course between July 24, 2019, and April 9, 2023, during which CTS required trainees to affirmatively accept the Terms and Conditions through a multi-step click-to-agree process, including entering their name and email and confirming their agreement to all usage restrictions: Marie Hall, Caitlin Morse, Melody Barry, Derek Nelson, and Katelyn Dalton.

24.     Defendant Hall specifically enrolled in the Train-the-Trainer Course and accepted CTS's Collector Trainer Agreement on February 17, 2021, agreeing

that she was not qualified to teach Component 1, that she would purchase a separate course from CTS for each collector she trained, that she would train specimen collectors only within her own organization, and that she would not copy, reuse, or distribute CTS's copyrighted materials.

25.   The other Individual Defendants likewise enrolled in the Train-the-Trainer course and accepted CTS's Terms and Conditions. Each identified her or his position with ConvenientMD in the enrollment record: Defendant Barry as Regional Clinical Lead; Defendant Dalton as Regional Clinical Lead; Defendant Nelson as Regional Clinical Training Lead; Defendant Tereshchuk as Clinical Educator; Defendant Cline as District Clinical Educator for Maine; Defendant Willey as District Clinical Educator; and Defendant Morse as "R.T.(R)" (a radiologic-technologist credential).

26.   Defendants Morse, Barry, Nelson, and Dalton enrolled in 2022, Defendant Tereshchuk in 2023, and Defendant Cline in 2025. Defendant Willey, who enrolled and accepted CTS's terms on two separate occasions, enrolled the second time on February 15, 2024.

27.   As Regional Clinical Leads, Defendants Barry and Dalton were responsible for conducting and directing ConvenientMD's specimen-collector trainings within their assigned regions, and each personally used CTS's Train-the-Trainer materials in trainings Defendant Barry or Defendant Dalton conducted or directed for ConvenientMD's staff, without ensuring the required

8

per-collector procedures courses were purchased for each trainee, in violation of the license each personally accepted.

28.    As Regional Clinical Training Lead, Defendant Nelson likewise was responsible for conducting and directing ConvenientMD's specimen-collector trainings, and personally used CTS's Train-the-Trainer materials in trainings Defendant Nelson conducted or directed for ConvenientMD's staff without ensuring the required per-collector procedures courses were purchased, in violation of the license Defendant Nelson personally accepted.

29.    As Clinical Educator, Defendant Tereshchuk was responsible for conducting ConvenientMD's specimen-collector trainings, and personally used CTS's Train-the-Trainer materials in trainings Defendant Tereshchuk conducted for ConvenientMD's staff without ensuring the required per-collector procedures courses were purchased, in violation of the license Defendant Tereshchuk personally accepted.

30.    As District Clinical Educator for Maine, Defendant Cline likewise was responsible for conducting ConvenientMD's specimen-collector trainings within that district, and personally used CTS's Train-the-Trainer materials in trainings Defendant Cline conducted for ConvenientMD's staff without ensuring the required per-collector procedures courses were purchased, in violation of the license Defendant Cline personally accepted.

9

31. CTS's Terms were further updated on April 10, 2023, to incorporate enforceable legal and financial provisions. The revised agreement expressly prohibited trainers from providing instruction outside their own organization or offering training services for compensation, reiterated that Component 1 instruction remained exclusively within CTS's control, and contains a liquidated damages clause of $100.00 per unlicensed trainee and $400.00 per individual trained outside the user's organization. A true and correct copy of the April 10, 2023 agreement is attached hereto as Exhibit E.

32. It further provided that violators would be liable for attorneys' fees, lost revenue, court costs, and related judgments. To underscore the binding nature of these terms, the agreement advised trainees to exit and request a refund if they did not agree. The update also clarified key instructional limitations and adopted standardized legal terminology across the platform. See Exhibit E.

33. The following Individual Defendants enrolled in the Train-the-Trainer Course on or after April 10, 2023, and affirmatively accepted CTS's revised Terms and Conditions by completing the required multi-step acceptance process, including acknowledgment of the updated legal and financial provisions: Diana Tereshchuk, Diane Willey, and Victoria Cline.

34. Each version of CTS's Terms and Conditions, whether in the form of an initial copyright warning slide such as the IMPORTANT NOTICE or formalized multi-step agreement, was reinforced through consistent messaging

10

at the point of purchase, through Terms and Conditions, login, and within the LMS platform, including in the Course Modules and on the Trainer Resources Page. These materials uniformly and repeatedly communicated that each trainee must be licensed individually, that course content including, without limitation, the provided resources, documents and forms, could not be reproduced or reused, that training was limited strictly to the trainer's internal organization, and that a new procedures course must be purchased for each and every individual trained.

35.    Every iteration of Terms and Conditions included and imposed binding use limitations and express consent to such limitations. Restrictions were reiterated throughout the online course in multiple locations, including the course start screen, certification modules, and Module 12. Users could not access the full training materials without agreeing to and proceeding past these restrictions. See Exhibits C–E.

36.    Defendants were repeatedly and unambiguously advised that unauthorized reproduction, reuse, or instructional use of the course materials, outside the terms of the license, would constitute copyright infringement and a breach of the licensing agreement.

37.    Between approximately 2014 and 2025, Defendant ConvenientMD coordinated the enrollment of its employees, including Defendant Hall and the other Individual Defendants, in CTS's Train-the-Trainer Course. The enrollees

11

were ConvenientMD's clinical-training personnel, including practice managers, regional and district clinical leads, clinical educators, and trainers, who enrolled in their ConvenientMD capacity and identified ConvenientMD as their employer, reflecting that ConvenientMD coordinated the enrollments to build and maintain an internal specimen-collector training program using CTS's materials.

38.    Each of these individuals, including the Individual Defendants, registered online, agreed to CTS's Terms and Conditions, and received certification upon completion.

39.    ConvenientMD returned to CTS year after year to train successive cohorts of staff, and its employees repeatedly contacted CTS for account assistance, including requests that CTS reissue trainer certificates in updated names.

40.    ConvenientMD purchased at least fifty (50) Train-the-Trainer licenses over this period, in a continuous, year-over-year succession. However, CTS did not receive corresponding purchases for the required Component 1 procedures training for any additional trainees to whom ConvenientMD employees provided hands-on/proficiency training. CTS also did not receive the corresponding Component 2 procedures training fees for any ConvenientMD employees to whom Train-the-Trainer licensees provided hands-on/proficiency training.

41. In March 2025, Plaintiff learned of ConvenientMD's unauthorized internal use of the Train-the-Trainer Course and the absence of required procedures course purchases.

42. In communications with CTS in March 2025, Defendant Hall, on behalf of ConvenientMD in her capacity as Clinical Education Manager for ConvenientMD, acknowledged that ConvenientMD had utilized CTS's Train-the-Trainer Online Procedures Course. In that communication, Defendant Hall did not dispute that internal training at ConvenientMD had occurred or that ConvenientMD did not purchase the required collector procedures courses for each additional trainee over the years.

43. Instead, Defendant Hall asserted that individuals working for ConvenientMD, such as herself and the other Individual Defendants, lacked authority to bind ConvenientMD to CTS's licensing terms and directed all further inquiries to ConvenientMD's legal counsel. Prior to this communication, Plaintiff had no means of discovering the Defendants' unauthorized uses of its copyrighted materials. Plaintiff was not aware and could not have discovered the unauthorized use of its copyrighted materials and the infringing activities prior to the communication.

44. Plaintiff's training model and licensing structure depend upon individual course purchases for each trainer and trainee, along with strict adherence to license terms. By bypassing required course purchases and

13

replicating instructional use internally, the Defendants have deprived and continue to deprive Plaintiff of contractual revenue and have infringed and continue to infringe upon Plaintiff's protected training content.

45.     CTS has expended significant time and resources developing, updating, and hosting its proprietary training content, including platform integration, compliance auditing, and technical support. Defendants' unauthorized use of this content has caused ongoing harm to Plaintiff's business reputation, market standing, and ability to enforce its licensing scheme consistently across clients.

46.     Despite Plaintiff's demand for corrective action, including the issuance of a cease and desist letter dated April 7, 2025, Defendants have failed to remediate the unauthorized use or provide documentation to establish that they did not use CTS training materials unlawfully. A true and correct copy of the April 7, 2025 cease and desist letter is attached hereto as Exhibit F.

47.     In response to Plaintiff's cease and desist letter, Defendant ConvenientMD disclosed certain training materials it was using, directly establishing it was and is infringing at least three of CTS's copyrighted materials.

48.     Among the training materials Defendant ConvenientMD disclosed in response to Plaintiff's cease-and-desist letter were documents that are word-for-word verbatim reproductions of CTS materials that are part of the

14

deposit materials submitted to the U.S. Copyright Office in support of its registrations of the Works.

49. These verbatim reproductions are not merely evidence that Defendants had access to CTS's copyrighted materials; they are copies of CTS's protected expression itself, disclosed by ConvenientMD in its own words as materials it was using to conduct the very internal trainings alleged above, and by admission, infringing upon CTS's copyrighted materials.

50. As of the date of this filing, Defendants have not ceased the unauthorized use and infringement of Plaintiff's proprietary training materials, nor have they compensated Plaintiff for the required procedures courses or associated license fees.

51. As a direct and continuing result of Defendants' conduct, Plaintiff has suffered and continues to suffer substantial financial harm, loss of contractual revenue, and erosion of its intellectual property rights. Defendants' ongoing unauthorized use of Plaintiff's proprietary training materials has undermined Plaintiff's ability to enforce its licensing program, created unfair competitive advantages for Defendants, and caused irreparable harm to Plaintiff's business operations and goodwill.

## JURISDICTION AND VENUE

52.    This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1338(a) because Plaintiff's copyright claims arise under the Copyright Act, 17 U.S.C. §§ 101 et seq.

53.    This Court has supplemental jurisdiction over Plaintiff's related breach-of-contract claims under 28 U.S.C. § 1367(a) because they arise from the same license relationship and common nucleus of operative facts as the copyright claims.

54.    This Court has personal jurisdiction over each Defendant under Florida's long-arm statute, § 48.193(1)(a), Florida Statutes, and the Due Process Clause, because each Defendant purposefully established and exploited a continuing commercial relationship with CTS, a Florida company, and committed acts that caused injury to CTS in Florida.

55.    Each Defendant committed a tortious act within Florida within the meaning of § 48.193(1)(a)(2), Florida Statutes. Copyright infringement is a tortious act, and Defendants committed it within Florida by transmitting communications into Florida to obtain and reproduce CTS's Florida-based Works and by directing their infringing conduct at CTS's Florida copyrights and business, causing injury to CTS in Florida.

56.    The parties' agreements do not specify a place of payment.

57. Each Individual Defendant breached a contract in Florida within the meaning of § 48.193(1)(a)(7), Florida Statutes. Each was obligated to purchase from CTS, and to pay CTS for, a separate procedures course for each collector trained; because the agreements specify no place of payment, as alleged above, that payment was due to CTS at its principal place of business in Florida, and each breached that obligation by failing to make the required purchases and payments.

58. None of these purchase-and-payment obligations belongs to Defendant ConvenientMD. Each Individual Defendant personally entered into, and personally breached, the license described above, independent of that Defendant's employment by ConvenientMD; ConvenientMD was never a party to any of these agreements.

59. As alleged above, ConvenientMD sought out CTS and, over more than a decade, deliberately and repeatedly transacted with CTS. These deliberate, continuing, and substantial contacts are not random, fortuitous, or attenuated, and Defendants purposefully availed themselves of the benefits of a continuing commercial relationship they initiated and sustained for more than a decade. *See Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc.*, 593 F.3d 1249 (11th Cir. 2010) (purposeful availment established through a sustained course of dealing, without regard to the defendant's knowledge of the plaintiff's forum).

60.     Each Individual Defendant is subject to jurisdiction in his or her individual capacity because each personally accepted CTS's license and personally and willfully committed copyright infringement, an intentional tort, by using, reproducing, or distributing CTS's Works beyond the license each personally accepted. Defendants Hall, Barry, Dalton, Nelson, Tereshchuk, and Cline further personally directed or facilitated the unlicensed internal trainings that infringed CTS's Works, as alleged above.

61.     Florida's corporate-shield doctrine does not bar jurisdiction over the Individual Defendants. That doctrine limits jurisdiction only over acts performed exclusively in a corporate capacity; it does not apply to a personal contractual obligation that ConvenientMD never assumed, nor does it protect a corporate officer or employee who personally commits an intentional tort. *See Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1355 (11th Cir. 2013) (corporate-shield defense fails where the individual defendant committed an intentional tort, regardless of whether the conduct was undertaken on behalf of his corporation); *Doe v. Thompson*, 620 So. 2d 1004, 1006 n.1 (Fla. 1993) ("[A] corporate officer committing fraud or other intentional misconduct can be subject to personal jurisdiction.").

62.     As alleged above, CTS sustained injury in Florida, including lost licensing revenue and harm to its Florida-based business, Works, and licensing program.

63. Venue is proper in this District under 28 U.S.C. § 1400(a) because Defendants may be found in this District, in that each Defendant is subject to the personal jurisdiction of this Court for the reasons alleged above.

64. Venue is also proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claims occurred in this District: CTS administered from Florida the platform and licensing program through which Defendants transacted; the payments Defendants failed to make were due to CTS in Florida; the Works that Defendants infringed are administered from Florida; and CTS's injury occurred in Florida; and Defendants transmitted their enrollment communications, course access requests, and payment obligations into that Florida-administered platform.

## <u>COUNT I - BREACH OF CONTRACT</u>
### (Against Defendant Willey)

65. Plaintiff re-alleges and incorporates paragraphs 1–17, 34–36, 41–44, 46, 50–51, 53–54, 56–59, and 62–64 as if fully set forth herein.

66. Defendant Willey accessed and completed the Train-the-Trainer Course between 2014 and July 24, 2019, and by doing so entered into a valid and enforceable agreement with CTS for the use of its course.

67. CTS's Terms and Conditions governed Defendant Willey's enrollment in the Train-the-Trainer Course and established binding license restrictions. These terms expressly limited access and use of CTS's proprietary

course materials to the individual trainee, prohibited reproduction or reuse for training others, and required a separate course purchase for each individual to be trained. See Exhibit C.

68. Defendant Willey, in addition to being subject to CTS's Terms and Conditions, was presented with the IMPORTANT NOTICE before being permitted course access.

69. Under these terms, Defendant Willey was prohibited from reproduction, reuse, or dissemination of Plaintiff's proprietary materials, and was further required to purchase a new course license for each additional trainee.

70. CTS internal records confirm that Defendant Willey engaged in training activities and participated in a system of training at ConvenientMD in affirmative breach of these enforceable licensing restrictions.

71. Defendant Willey directly facilitated Component 1 training sessions using CTS's protected content without ensuring that the required Component 1 procedures courses were separately purchased for each trainee or confirming compensation to CTS for the Component 2 procedures training for each trainee to whom she provided training, thereby breaching the express licensing limitations. Defendant Willey furthermore directed other ConvenientMD employees to breach these Terms and Conditions.

72. Defendant Willey's unauthorized use constituted a material breach of the operative agreements by depriving Plaintiff of the contractual benefit of

20

course-by-course licensing revenue and undermining the exclusivity of CTS's proprietary course materials.

73.   Defendant Willey's breaches of the Terms and Conditions are ongoing and continuous in nature, as evidenced and compounded by the fact that she entered into a new agreement with CTS after April 10, 2023 for re-licensing.

74.   CTS did not authorize the continued use of its training materials beyond Defendant Willey's individual certification, and her unauthorized reproduction, internal use, and training of additional personnel without the purchase of corresponding procedures courses constitute repeated and distinct breaches of contract within the statutory period.

75.   Moreover, CTS reasonably relied on Defendant Willey's representations and had no reasonable means of discovering the full extent of her unauthorized internal training activities until in or around March of 2025.

76.   Accordingly, even if certain acts of misuse began prior to the limitations period, CTS's claims are timely under Florida law because the breaches either (i) occurred within the five-year window; or (ii) were not discoverable with reasonable diligence until 2025.

77.   As a direct and proximate result of Defendant Willey's material breaches, Plaintiff has suffered and continues to suffer damages including, but

not limited to, lost licensing revenue, internal investigation and enforcement costs, and reputational harm caused by the improper replication of its materials.

78.    Plaintiff is entitled to recover all compensatory damages arising from Defendant Willey's breach and any equitable relief necessary to prevent further misuse of its proprietary content.

WHEREFORE, Plaintiff Certified Training Solutions, LLC respectfully requests that this Court enter judgment in its favor and against Defendant Diane Willey for breach of contract, and award Plaintiff its compensatory damages, together with all costs and interest permitted under applicable law, and grant such other and further relief as the Court deems just and proper.

## COUNT II – BREACH OF CONTRACT
**(Against Defendants Hall, Morse, Barry, Nelson, and Dalton)**

79.    Plaintiff re-alleges and incorporates paragraphs 1–17, 22–28, 34–36, 41–44, 46, 50–51, 53–54, 56–59, and 62–64 as if fully set forth herein.

80.    Defendants Hall, Morse, Barry, Nelson, and Dalton accessed and completed the Train-the-Trainer Course between July 24, 2019 and April 10, 2023, and by doing so entered into a valid and enforceable agreement with CTS for the use of its course.

81.    CTS's Terms and Conditions governed these Individual Defendants' enrollment in the Train-the-Trainer Course and established binding license restrictions. These terms expressly limited access and use of CTS's proprietary

22

course materials to the individual trainee, prohibited reproduction or reuse for training others, and required a separate course purchase for each individual to be trained. See Exhibits C–D.

82. Defendants Hall, Morse, Barry, Nelson, and Dalton, in addition to being subject to CTS's Terms and Conditions, affirmatively accepted and agreed to the terms requiring that they must purchase a new and separate online collector procedures course for each trainee to whom they intended to provide hands-on proficiency training, that they were not permitted to teach Component 1 content without purchasing Component 1 courses for each student they would teach, and that they were only authorized to supervise hands-on Component 2 instruction for internal staff if purchasing the required Component 1 courses for those trainees or paying a fee for each trainee to whom they provided Component 2 training.

83. Under these terms, Defendants Hall, Morse, Barry, Nelson, and Dalton were prohibited from reproduction, reuse, or dissemination of Plaintiff's proprietary materials, and were further required to purchase a new course license for each additional trainee.

84. Defendants Hall, Morse, Barry, Nelson, and Dalton were presented with these licensing restrictions at multiple points during the course after affirmatively accepting them, including at login, in-course instruction, and final certification.

85.   CTS internal records confirm that Defendants Hall, Morse, Barry, Nelson, and Dalton engaged in training activities or participated in a system of training at ConvenientMD in affirmative breach of these enforceable licensing restrictions.

86.   Specifically, these Defendants either directly or indirectly facilitated unauthorized Component 1 and Component 2 training sessions using CTS's protected content without ensuring that the required Component 1 and procedures courses were separately purchased for each trainee or compensating CTS for Component 2 training fees, thereby breaching the express licensing limitations.

87.   These unauthorized uses constituted a material breach of the operative agreements by depriving Plaintiff of the contractual benefit of course-by-course licensing revenue and undermining the exclusivity of CTS's proprietary course materials.

88.   Defendants' breaches of the Terms and Conditions are ongoing and continuous in nature.

89.   CTS did not authorize the continued use of its training materials beyond each Defendant's individual certification, and their unauthorized reproduction, internal use, and training of additional personnel without the purchase of corresponding procedures courses constitute repeated and distinct breaches of contract within the statutory period.

90.    Moreover, CTS reasonably relied on Defendants' representations and had no reasonable means of discovering the full extent of their unauthorized internal training activities until in or around March of 2025.

91.    Accordingly, even if certain acts of misuse began prior to the limitations period, CTS's claims are timely under Florida law because the breaches either (i) occurred within the five-year window; or (ii) were not discoverable with reasonable diligence until 2025.

92.    As a direct and proximate result of Defendants Hall, Morse, Barry, Nelson, and Dalton's material breaches, Plaintiff has suffered and continues to suffer damages including, but not limited to, lost licensing revenue, internal investigation and enforcement costs, and reputational harm caused by the improper replication of its materials.

93.    Plaintiff is entitled to recover all compensatory damages arising from these Individual Defendants' breaches and any equitable relief necessary to prevent further misuse of its proprietary content.

WHEREFORE, Plaintiff Certified Training Solutions, LLC respectfully requests that this Court enter judgment in its favor and against Defendants Marie Hall, Caitlin Morse, Melody Barry, Derek Nelson, and Katelyn Dalton, for breach of contract, and award Plaintiff its compensatory damages, together with all costs and interest permitted under applicable law, and grant such other and further relief as the Court deems just and proper.

## COUNT III – BREACH OF CONTRACT
### (Against Defendants Tereshchuk, Willey, and Cline)

94.    Plaintiff re-alleges and incorporates paragraphs 1–17, 25–26, 29–36, 41–44, 46, 50–51, 53–54, 56–59, and 62–64 as if fully set forth herein.

95.    Defendants Tereshchuk, Willey, and Cline accessed and completed the Train-the-Trainer Course after April 10, 2023, and by doing so entered into a valid and enforceable agreement with CTS for the use of its course.

96.    Defendants Tereshchuk, Willey, and Cline affirmatively accepted and agreed to CTS's updated Terms and Conditions, which governed their enrollment in the Train-the-Trainer Course and established binding license restrictions. These terms expressly limited access and use of CTS's proprietary course materials to the individual trainee, prohibited reproduction or reuse for training others, and required a separate course purchase for each individual to be trained.

97.    These Terms and Conditions further included specific legal enforcement provisions, such as: (i) liquidated damages of $100.00 per unauthorized trainee and $400.00 per trainee instructed outside of the trainer's own organization; (ii) an express prevailing party attorneys' fees clause; (iii) prohibitions on offering training to third parties for compensation; and (iv) a reaffirmation that Component 1 training may only be performed by CTS directly.

26

98.    Defendants Tereshchuk, Willey, and Cline were required to agree to the updated licensing restrictions by affirmatively acknowledging the terms at multiple stages during the training, including at LMS login, course entry, and prior to certification. These Defendants were provided a refund option in the event of non-acceptance and unequivocally warned that unauthorized instructional use would result in financial and legal liability.

99.    Under these terms, Defendants Tereshchuk, Willey, and Cline were prohibited from reproduction, reuse, or dissemination of Plaintiff's proprietary materials, and were further required to purchase a new course license for each additional trainee.

100.    CTS internal records confirm that Defendants Tereshchuk, Willey, and Cline facilitated or participated in training activities within ConvenientMD's operations without ensuring the requisite procedures courses were purchased for the trainees, and in doing so, affirmatively breached the limited use license granted to them under CTS's updated agreement.

101.    These actions constitute material breaches of contract by violating express licensing limitations and triggering the contractual damages provisions, including liquidated damages and the prevailing party attorneys' fees clause.

102.    As a direct and proximate result of these breaches, Plaintiff has suffered and continues to suffer damages including, but not limited to, lost

27

licensing revenue, internal investigation and enforcement costs, and reputational harm caused by the improper replication of its materials.

103.   Plaintiff is further entitled to recover its reasonable attorneys' fees and costs pursuant to the prevailing party provision set forth in the April 2023 Terms and Conditions. See Exhibit E.

WHEREFORE, Plaintiff Certified Training Solutions, LLC respectfully requests that this Court enter judgment in its favor and against Defendants Diana Tereshchuk, Diane Willey, and Victoria Cline, for breach of contract, and award Plaintiff its compensatory damages, contractual liquidated damages, reasonable attorneys' fees and costs, together with all interest permitted under applicable law, and grant such other and further relief as the Court deems just and proper.

### COUNT IV – COPYRIGHT INFRINGEMENT
**17 U.S.C. § 101 et seq.**
**(Against all Defendants)**

104.   Plaintiff re-alleges and incorporates paragraphs 1–52, 54–55, and 59–64 as if fully set forth herein.

105.   Plaintiff owns a valid copyright in the Urine Specimen Collection at issue in this case.

106.   Plaintiff registered the Urine Specimen Collection with the Register of Copyrights pursuant to 17 U.S.C. § 411(a). See Exhibit A.

28

107.    Plaintiff is and at all relevant times has been the sole owner and proprietor of all rights, title and interest in and to the copyright of the Urine Specimen Collection.

108.    The Urine Specimen Collection is a wholly original work that is copyrightable subject matter under the laws of the United States.

109.    Plaintiff has invested substantial resources to develop and protect the Urine Specimen Collection and strictly controls access through limited-use license agreements that prohibit unauthorized reproduction, distribution, public display, or use for instructional purposes beyond the scope of license.

110.    All the Individual Defendants gained access to the Urine Specimen Collection through Plaintiff's Florida-based LMS, affirmatively agreed to the governing license terms, and thereafter used, reproduced, or distributed portions of the Urine Specimen Collection without securing the required licenses for additional internal trainees.

111.    Defendant ConvenientMD gained unauthorized access to the Urine Specimen Collection through the Individual Defendants identified above.

112.    At no time has Plaintiff authorized Defendant ConvenientMD or any of the Individual Defendants to reproduce, distribute, prepare derivative works, or publicly display the Urine Specimen Collection or any portion thereof.

113.    Nonetheless, Defendants willfully infringed Plaintiff's copyright in the Urine Specimen Collection by reproducing, displaying, distributing, creating

29

derivative works of, and/or publicly displaying the Urine Specimen Collection and portions thereof without permission in violation of the Copyright Act, 17 U.S.C. § 106.

114. As alleged in paragraphs 47–49 above, materials Defendant ConvenientMD disclosed in response to Plaintiff's cease-and-desist letter contain verbatim reproductions of pages of the deposit copy Plaintiff submitted to the United States Copyright Office in connection with the registration of its copyrighted Works. This is not mere access to unprotected ideas or procedures; it is copying of CTS's protected expression itself, in Defendants' own disclosed materials.

115. These acts constitute direct infringement under 17 U.S.C. § 501 and were committed knowingly and willfully, with actual or constructive knowledge of the Plaintiff's exclusive copyright, the applicable limitations to use of the copyright, and in conscious disregard of Plaintiff's exclusive rights in the protected copyrighted Work.

116. CTS at no time authorized the Defendants' continued use of Plaintiff's copyrighted Work, and as such their continued unauthorized use constitutes repeated and distinct acts of infringement within the statutory period.

117. Moreover, CTS had no means of discovering the Defendants' unauthorized uses of the Work prior to March 2025. Plaintiff was not aware and could not have discovered the infringing activities prior to March 2025.

118. Accordingly, even if certain infringement acts began prior to the limitations period, CTS's claims are timely under federal law because the infringement either (i) occurred within the three-year window; or (ii) were not discoverable with reasonable diligence until 2025.

119. By reason of Defendants' acts of infringement, Plaintiff has sustained and continues to sustain substantial injury, loss, and damage to its ownership rights in the copyrighted Urine Specimen Collection, including without limitation lost licensing revenue, dilution of intellectual property, and injury to market position.

120. Because Plaintiff is without an adequate remedy at law, Plaintiff is entitled to an injunction, in accordance with 17 U.S.C. § 502, restraining all Defendants and their officers, directors, agents, employees, representatives, assigns, and all persons acting in concert with those Defendants, from engaging in further acts of copyright infringement.

121. Plaintiff is further entitled to recover from all Defendants the gains, profits, and advantages they have obtained as a result of copyright infringement.

122. Plaintiff is informed and believes, and on that basis alleges, that unless enjoined by this Court, Defendants will continue their course of conduct and will continue to wrongfully use, infringe upon, reproduce, distribute, and otherwise profit from Plaintiff's copyrighted Urine Specimen Collection.

WHEREFORE, Plaintiff Certified Training Solutions, LLC respectfully requests that the Court enter judgment in its favor and against Defendants, ConvenientMD, LLC, Diane Willey, Marie Hall, Caitlin Morse, Melody Barry, Derek Nelson, Katelyn Dalton, Diana Tereshchuk and Victoria Cline, for copyright infringement, and further order as follows:

A. A preliminary and permanent injunction enjoining and restraining Defendants and all persons acting in concert with them from reproducing, distributing, creating derivative works, displaying, advertising, promoting, offering for sale and/or selling, or performing any materials that are substantially similar to the copyrighted Urine Specimen Collection, and to destroy and certify to the Court such destruction or deliver to the Court for destruction or other reasonable disposition all such materials and means for producing same in their possession or control;

B. A preliminary and permanent injunction enjoining and restraining Defendants and their agents, servants, employees, attorneys, and all persons acting in concert and participation with it from infringing upon Plaintiff's copyright.

C. An award of actual damages and Defendants' profits to be determined at trial, plus interest; and

D. Such other and further relief as the Court deems just and proper.

## COUNT V – COPYRIGHT INFRINGEMENT
### 17 U.S.C. § 101 et seq.
### (Against Defendants ConvenientMD, Tereshchuk, Willey, and Cline)

123.   Plaintiff re-alleges and incorporates paragraphs 1–17, 26, 29–46, 50–52, 54–55, and 59–64 as if fully set forth herein.

124.   Plaintiff owns a valid copyright in the Urine Specimen Collection 2023 Edition at issue in this case.

125.   Plaintiff registered the Urine Specimen Collection 2023 Edition with the Register of Copyrights pursuant to 17 U.S.C. § 411(a). See Exhibit B.

126.   Plaintiff is and at all relevant times has been the sole owner and proprietor of all rights, title and interest in and to the copyright of the Urine Specimen Collection 2023 Edition.

127.   The Urine Specimen Collection 2023 Edition is a derivative work of the original copyrighted Urine Specimen Collection, and contains copyrightable subject matter under the laws of the United States.

128.   Plaintiff has invested substantial resources to develop and protect the Urine Specimen Collection 2023 Edition and strictly controls access through limited-use license agreements that prohibit unauthorized reproduction, distribution, public display, or use for instructional purposes beyond the scope of license.

129.   Defendants Tereshchuk, Willey, and Cline gained access to the Urine Specimen Collection 2023 Edition through Plaintiff's Florida-based LMS,

33

affirmatively agreed to the governing license terms, and thereafter used, reproduced, or distributed portions of the Urine Specimen Collection 2023 Edition without securing the required licenses for additional internal trainees.

130.  The Urine Specimen Collection 2023 Edition was first published on January 23, 2023 and, on information and belief, was incorporated into the Course as delivered through CTS's LMS from that date forward; because Defendants Tereshchuk, Willey, and Cline each first enrolled in and accessed the Course after that date, the Course content each of them accessed and was licensed to use necessarily included the Urine Specimen Collection 2023 Edition.

131.  Defendant ConvenientMD gained unauthorized access to the Urine Specimen Collection 2023 Edition through the Individual Defendants identified above.

132.  At no time has Plaintiff authorized Defendant ConvenientMD or any of the Individual Defendants identified above to reproduce, distribute, prepare derivative works, or publicly display the Derivative Work or any portion thereof.

133.  Nonetheless, these Defendants willfully infringed Plaintiff's copyright in the Urine Specimen Collection 2023 Edition by reproducing, displaying, distributing, and creating derivative works of the Derivative Work and portions thereof without permission in violation of the Copyright Act, 17 U.S.C. § 106.

34

134. These acts constitute direct infringement under 17 U.S.C. § 501 and were committed knowingly and willfully, with actual or constructive knowledge of the Plaintiff's exclusive copyright, the applicable limitations to use of the copyright, and in conscious disregard of Plaintiff's exclusive rights in its protected copyrighted Derivative Work.

135. CTS at no time authorized these Defendants' continued use of Plaintiff's copyrighted Derivative Work, and as such their continued unauthorized use constitutes repeated and distinct acts of infringement within the statutory period.

136. Moreover, CTS had no means of discovering these Defendants' unauthorized uses of the Derivative Work prior to March 2025. Plaintiff was not aware and could not have discovered the infringing activities prior to March 2025.

137. Accordingly, even if certain infringement acts began prior to the limitations period, CTS's claims are timely under federal law because the infringement either (i) occurred within the three-year window; or (ii) were not discoverable with reasonable diligence until 2025.

138. By reason of Defendants ConvenientMD, Tereshchuk, Willey, and Cline's acts of infringement, Plaintiff has sustained and continues to sustain substantial injury, loss, and damage to its ownership rights in the copyrighted

Urine Specimen Collection 2023 Edition, including without limitation lost licensing revenue, dilution of intellectual property, and injury to market position.

139.    Because Plaintiff is without an adequate remedy at law, Plaintiff is entitled to an injunction, in accordance with 17 U.S.C. § 502, restraining Defendants ConvenientMD, Tereshchuk, Willey, and Cline, and their officers, directors, agents, employees, representatives, assigns, and all persons acting in concert with those Defendants, from engaging in further acts of copyright infringement.

140. Plaintiff is further entitled to recover from Defendants ConvenientMD, Tereshchuk, Willey, and Cline the gains, profits, and advantages those Defendants have obtained as a result of copyright infringement.

141.    Plaintiff is informed and believes, and on that basis alleges, that unless enjoined by this Court, Defendants will continue their course of conduct and will continue to wrongfully use, infringe upon, reproduce, distribute, and otherwise profit from Plaintiff's copyrighted Urine Specimen Collection 2023 Edition.

WHEREFORE, Plaintiff Certified Training Solutions, LLC respectfully requests that the Court enter judgment in its favor and against Defendants, ConvenientMD, LLC, Diana Tereshchuk, Diane Willey, and Victoria Cline, for copyright infringement, and further order as follows:

A. A preliminary and permanent injunction enjoining and restraining those Defendants and all persons acting in concert with them from reproducing, distributing, creating derivative works, displaying, advertising, promoting, offering for sale and/or selling, or performing any materials that are substantially similar to the copyrighted Urine Specimen Collection 2023 Edition, and to destroy and certify to the Court such destruction or deliver to the Court for destruction or other reasonable disposition all such materials and means for producing same in their possession or control;

B. A preliminary and permanent injunction enjoining and restraining those Defendants and their agents, servants, employees, attorneys, and all persons acting in concert and participation with it from infringing upon Plaintiff's copyright.

C. An award of actual damages and those Defendants' profits to be determined at trial, plus interest; and

D. Such other and further relief as the Court deems just and proper.

## COUNT VI – VICARIOUS COPYRIGHT INFRINGEMENT
### 17 U.S.C. § 101 et seq.
### (Against Defendant ConvenientMD)

142.   Plaintiff re-alleges and incorporates paragraphs 1–52, 54–55, 59, and 62–64 as if fully set forth herein.

143.   Plaintiff owns a valid copyright in the Works at issue in this case.

144. Plaintiff registered the Works with the Register of Copyrights pursuant to 17 U.S.C. § 411(a). See Exhibits A–B.

145. Plaintiff is and at all relevant times has been the sole owner and proprietor of all rights, title and interest in and to the copyrights of the Works.

146. The Works are wholly original and derivative works that contain copyrightable subject matter under the laws of the United States.

147. Plaintiff has invested substantial resources to develop and protect the Works and strictly controls access through limited-use license agreements that prohibit unauthorized reproduction, distribution, public display, or use for instructional purposes beyond the scope of license.

148. Since 2014, Defendant ConvenientMD purchased at least 50 Train-the-Trainer licenses for employees, including all the Individual Defendants named herein, yet consistently failed to purchase the required Component 1 procedures courses for the trainees those trainers instructed or compensate CTS for the Component 2 training they provided.

149. ConvenientMD knowingly permitted and facilitated internal training using CTS's proprietary content without proper licensing, thereby infringing CTS's copyrights.

150. At all relevant times, the Individual Defendants were employees, agents, or representatives of ConvenientMD and acted within the course and

scope of their employment when using, reproducing, and delivering CTS's copyrighted training content to other ConvenientMD staff.

151. ConvenientMD had both the right and ability to supervise the Individual Defendants' conduct and the direct financial interest in the outcome, including avoiding course licensing fees and cost savings from in-house training.

152. Despite CTS's April 7, 2025 cease and desist letter and prior communications, ConvenientMD failed to cease or correct the infringing conduct and did not produce evidence of authorized course purchases for the internally trained personnel.

153. By authorizing, overseeing, and directly and substantially financially benefitting from the infringing use of Plaintiff's Works, ConvenientMD is vicariously liable for the acts of infringement committed by its employees under 17 U.S.C. § 501.

154. CTS had no means of discovering ConvenientMD's vicarious copyright infringement prior to March 2025. Plaintiff was not aware and could not have discovered ConvenientMD's vicariously infringing activities prior to March 2025.

155. Accordingly, even if certain vicarious acts of infringement began prior to the limitations period, CTS's claims are timely under federal law because the infringement either (i) occurred within the three-year window; or (ii) were not discoverable with reasonable diligence until 2025.

156.  Plaintiff has sustained and continues to sustain substantial injury, loss, and damage to its ownership rights in the copyrighted Works, including without limitation lost licensing revenue, dilution of intellectual property, and injury to market position as a direct result of ConvenientMD's vicarious infringement.

157.  Because Plaintiff is without an adequate remedy at law, Plaintiff is entitled to an injunction, in accordance with 17 U.S.C. § 502, restraining ConvenientMD and its officers, directors, agents, employees, representatives, assigns, and all persons acting in concert with it, from engaging in, authorizing, overseeing, and/or directly and substantially financially benefitting from further acts of copyright infringement.

158.  Plaintiff is further entitled to recover from ConvenientMD the gains, profits, and advantages it obtained, or profits attributable to the infringement of Plaintiff's Works, as a result of its vicarious copyright infringement.

159.  Plaintiff is informed and believes, and on that basis alleges, that unless enjoined by this Court, Defendant ConvenientMD will continue its course of conduct and will continue to wrongfully authorize, oversee, and directly and substantially financially benefit and profit from Plaintiff's copyrighted Works.

WHEREFORE, Plaintiff Certified Training Solutions, LLC respectfully requests that the Court enter judgment in its favor and against Defendant

ConvenientMD, LLC for vicarious copyright infringement and further order as follows:

A. A preliminary and permanent injunction enjoining and restraining Defendant ConvenientMD and all persons acting in concert with it from authorizing, overseeing, or benefitting from the unauthorized reproducing, distributing, creating derivative works, displaying, advertising, promoting, offering for sale and/or selling, or performing of any materials that are substantially similar to the copyrighted Works, and to destroy and certify to the Court such destruction or deliver to the Court for destruction or other reasonable disposition all such materials and means for producing same in their possession or control;

B. A preliminary and permanent injunction enjoining and restraining Defendant ConvenientMD and its agents, servants, employees, attorneys, and all persons acting in concert and participation with it from directly or vicariously infringing upon Plaintiff's copyrights.

C. An award of actual damages and Defendant ConvenientMD's profits to be determined at trial, plus interest; and

D. Such other and further relief as the Court deems just and proper.

## COUNT VII – CONTRIBUTORY COPYRIGHT INFRINGEMENT
### 17 U.S.C. § 101 et seq.
### (Against Defendant ConvenientMD)

160.    Plaintiff re-alleges and incorporates paragraphs 1–52, 54–55, 59, and 62–64 as if fully set forth herein.

161.    Plaintiff owns a valid copyright in the Works at issue in this case.

162.    Plaintiff registered the Works with the Register of Copyrights pursuant to 17 U.S.C. § 411(a). See Exhibits A–B.

163.    Plaintiff is and at all relevant times has been the sole owner and proprietor of all rights, title and interest in and to the copyrights of the Works.

164.    The Works are wholly original and derivative works that contain copyrightable subject matter under the laws of the United States.

165.    Plaintiff has invested substantial resources to develop and protect the Works and strictly controls access through limited-use license agreements that prohibit unauthorized reproduction, distribution, public display, or use for instructional purposes beyond the scope of license.

166.    Since 2014, Defendant ConvenientMD purchased at least 50 Train-the-Trainer licenses for employees, including all the Individual Defendants named herein, yet consistently failed to purchase the required Component 1 procedures courses for the trainees those trainers instructed or compensate CTS for the Component 2 training they provided.

42

167. ConvenientMD knowingly induced the direct infringement by the Individual Defendants by directing and facilitating internal training using CTS's proprietary content without proper licensing, thereby contributing to the infringement of CTS's copyrights.

168. At all relevant times, the Individual Defendants were employees, agents, or representatives of ConvenientMD and acted within the course and scope of their employment when using, reproducing, and delivering CTS's copyrighted training content to other ConvenientMD staff.

169. ConvenientMD, with full knowledge of CTS's copyrights in the Works, intentionally induced the Individual Defendants to use, reproduce, and deliver CTS's copyrighted training content to other ConvenientMD staff without license or authorization.

170. ConvenientMD knew or had reason to know that the Individual Defendants were infringing on CTS's copyrights, and materially contributed to the infringing acts of the Individual Defendants.

171. Despite CTS's April 7, 2025 cease and desist letter and prior communications, ConvenientMD failed to cease or correct the infringing conduct and did not produce evidence of authorized course purchases for the internally trained personnel.

172. By authorizing, inducing, directing, and directly and substantially financially benefitting from the infringing use of Plaintiff's copyrighted Works,

43

ConvenientMD is contributorily liable for the acts of infringement committed by its employees under 17 U.S.C. § 501.

173. CTS had no means of discovering ConvenientMD's contributory copyright infringement prior to March 2025. Plaintiff was not aware and could not have discovered ConvenientMD's contributory infringing activities prior to March 2025.

174. Accordingly, even if certain contributory acts of infringement began prior to the limitations period, CTS's claims are timely under federal law because the infringement either (i) occurred within the three-year window; or (ii) were not discoverable with reasonable diligence until 2025.

175. Plaintiff has sustained and continues to sustain substantial injury, loss, and damage to its ownership rights in the copyrighted Works, including without limitation lost licensing revenue, dilution of intellectual property, and injury to market position as a direct result of ConvenientMD's contributory infringement.

176. Because Plaintiff is without an adequate remedy at law, Plaintiff is entitled to an injunction, in accordance with 17 U.S.C. § 502, restraining ConvenientMD and its officers, directors, agents, employees, representatives, assigns, and all persons acting in concert with it, from engaging in, authorizing, inducing, directing, and/or directly and substantially financially benefitting from further acts of copyright infringement.

177. Plaintiff is further entitled to recover from ConvenientMD the gains, profits, and advantages it obtained, or profits attributable to the infringement of Plaintiff's Works, as a result of its contributory copyright infringement.

178. Plaintiff is informed and believes, and on that basis alleges, that unless enjoined by this Court, Defendant ConvenientMD will continue its course of conduct and will continue to wrongfully authorize, induce, direct, and directly and substantially financially benefit and profit from Plaintiff's copyrighted Works.

WHEREFORE, Plaintiff Certified Training Solutions, LLC respectfully requests that the Court enter judgment in its favor and against Defendant ConvenientMD, LLC for contributory copyright infringement and further order as follows:

A. A preliminary and permanent injunction enjoining and restraining Defendant ConvenientMD and all persons acting in concert with it from authorizing, inducing, directing, or benefitting from the unauthorized reproducing, distributing, creating derivative works, displaying, advertising, promoting, offering for sale and/or selling, or performing of any materials that are substantially similar to the copyrighted Works, and to destroy and certify to the Court such destruction or deliver to the Court for destruction or other reasonable disposition all such materials and means for producing same in their possession or control;

B. A preliminary and permanent injunction enjoining and restraining Defendant ConvenientMD and its agents, servants, employees, attorneys, and all persons acting in concert and participation with it from directly or contributorily infringing upon Plaintiff's copyrights.

C. An award of actual damages and Defendant ConvenientMD's profits to be determined at trial, plus interest; and

D. Such other and further relief as the Court deems just and proper.

## COUNT VIII – UNJUST ENRICHMENT
### *In the alternative to Counts IV, V, VI, and VII*
### (Against Defendant ConvenientMD)

179.   Plaintiff re-alleges and incorporates paragraphs 1–52, 54–55, 59, and 62–64 as if fully set forth herein.

180.   This Count is pled in the alternative to Counts IV–VII above, and applies to the extent, if any, that the Court determines Plaintiff is not entitled to recover under the Copyright Act, 17 U.S.C. § 101 et seq., for the benefit that Defendant ConvenientMD received and retained from Plaintiff's Works, training, and licensing program.

181.   This Count seeks recovery for ConvenientMD's failure to pay the license and procedures-course fees CTS's business model requires for every trainer and trainee who accesses and uses the Course, an obligation distinct from, and not equivalent to, any of the exclusive rights protected by the Copyright Act.

46

182. Since 2014, CTS has conferred a benefit on Defendant ConvenientMD by providing it access to CTS's proprietary Works through CTS's Florida-based LMS, together with the training, proficiency instruction, and certification associated with the Course.

183. Defendant ConvenientMD had knowledge of this benefit. Defendant ConvenientMD coordinated and directed the enrollment of its clinical-training personnel in the Course year after year, as alleged above, and by virtue thereof had continuous access to CTS's Works.

184. Defendant ConvenientMD voluntarily accepted and retained the benefit of CTS's training and certification programs for which no license or procedures-course fee was ever paid. Defendant ConvenientMD used the certified trainers it obtained through CTS's Course to build and maintain an internal specimen-collector training program.

185. At all relevant times, the Individual Defendants were employees, agents, or representatives of Defendant ConvenientMD and acted within the course and scope of their employment when using, reproducing, and delivering CTS's training content to other ConvenientMD staff, as alleged above.

186. Defendant ConvenientMD had both the right and ability to supervise the Individual Defendants' conduct described above and had a direct financial interest in that conduct, including avoiding the required course

licensing and procedures-course fees and realizing cost savings from building and maintaining an internal training program using Plaintiff's Works.

187. Defendant ConvenientMD was never a party to any license agreement with CTS, as alleged above, yet ConvenientMD purchased at least fifty (50) Train-the-Trainer licenses for its employees since 2014, and, having done so, avoided paying CTS for the required Component 1 procedures courses for the additional trainees those licensed instructors trained, or compensating CTS for the Component 2 procedures training those instructors provided.

188. CTS has invested substantial time, expertise, and resources in developing, updating, hosting, and administering the Works and the Course, and depends for its revenue on payment of a separate license or procedures-course fee for every trainer and trainee who receives training under the Course.

189. Despite Plaintiff's demand for corrective action, including the April 7, 2025 cease-and-desist letter, ConvenientMD has retained the full benefit of the training, certification, and use of the Works described above without remitting to CTS the license and procedures-course fees CTS's business model required for that benefit.

190. Under these circumstances, it would be inequitable for Defendant ConvenientMD to retain the benefit of Plaintiff's Works, training, and certification without paying CTS the reasonable value of that benefit.

191. As a direct result of ConvenientMD's retention of this benefit without payment, Plaintiff has suffered damages in an amount to be determined at trial, including without limitation the unpaid license and procedures-course fees for every trainee trained by an Individual Defendant or any other ConvenientMD employee for whom a course was purchased, and the value of ConvenientMD's internally built specimen-collector training program.

192. The calculation of the benefit ConvenientMD received and retained, including the number of internal trainees trained over the more-than-decade-long course of dealing and the revenue ConvenientMD derived from its internally built training program, involves extensive and complicated accounts, and it is not clear that a remedy at law would be as full, adequate, and expeditious as an equitable accounting. *See Zaki Kulaibee Establishment v. McFliker*, 771 F.3d 1301, 1311 (11th Cir. 2014) (an accounting is available where the accounts between the parties are sufficiently complicated and an adequate remedy at law is lacking).

193. Plaintiff is therefore entitled to (a) compensatory and restitutionary damages equal to the reasonable value of the benefit ConvenientMD received and retained; (b) disgorgement of the gains, profits, and cost savings ConvenientMD obtained from its unlicensed use of Plaintiff's Works and training program; and (c) an equitable accounting to determine the full extent of

ConvenientMD's unlicensed use and the revenue and cost savings derived from it.

WHEREFORE, Plaintiff Certified Training Solutions, LLC respectfully requests that this Court enter judgment in its favor and against Defendant, ConvenientMD, LLC, for unjust enrichment, and further order as follows:

A. Compensatory and restitutionary damages equal to the reasonable value of the benefit conferred on and retained by ConvenientMD, to be determined at trial;

B. Disgorgement of all gains, profits, and cost savings ConvenientMD obtained by avoiding payment of the license and procedures-course fees CTS's business model requires;

C. An equitable accounting of all revenue, cost savings, and other benefits ConvenientMD derived from its unauthorized use of Plaintiff's Works and Course; and

D. Prejudgment interest, costs, and such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff Certified Training Solutions, LLC hereby demands a trial by jury on all issues so triable.

Dated: <u>July 16, 2026.</u>

Respectfully submitted,

<u>/s/ Julia Hannah Weber</u>
Julia Hannah Weber
Florida Bar No. 1045592
**SOUTHRON FIRM, P.A.**
400 N. Ashley Drive, Suite 1720
Tampa, Florida 33602
Tel. (813) 773-5105
Fax (813) 683-4338
julia.weber@southronfirm.com
eservice@southronfirm.com

Joseph F. Southron, Esq.
LEAD COUNSEL FOR PLAINTIFF
Florida Bar No. 122109
**SOUTHRON FIRM, P.A.**
400 N. Ashley Drive, Suite 1720
Tampa, Florida 33602
Tel. (813) 773-5105
Fax (813) 773-5103
joe@southronfirm.com
eservice@southronfirm.com

*Attorneys for Plaintiff*