**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

Certified Training Solutions, LLC

       Plaintiff

v.                                     Case No.: 8:26-cv-01156

ConvenientMD, LLC, Diane Willey,
Marie Hall, Caitlin Morse,
Melody Barry, Derek Nelson,
Katelyn Dalton, Diana Tereshchuk,
and Victoria Cline,

       Defendants.

_____/

## DEFENDANTS CONVENIENTMD, LLC AND MARIE HALL'S MOTION TO DISMISS, OR TO TRANSFER VENUE

Defendants ConvenientMD, LLC and Marie Hall (together, "Defendants")[1] move to dismiss the Amended Complaint filed by Plaintiff Certified Training Solutions, LLC ("CTS" or "Plaintiff"), for lack of personal jurisdiction and improper venue pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(3). In the alternative, Defendants move to transfer this case to the District of New Hampshire, per the discretion afforded under 28 U.S.C. § 1404(a). Defendants further move to dismiss Plaintiff's copyright claims (Counts IV through VII), for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).

With its Amended Complaint, Plaintiff seeks to force ConvenientMD and Hall to litigate this dispute 1,400 miles from home, in a forum where they have no

---

[1] Of the eight individual defendants, Plaintiff has only completed service of process as to Hall.

alleged connections. Because Defendants have no relevant contacts with Florida, and because Plaintiff's claims do not arise from activities in the Middle District of Florida, the Court should dismiss the Amended Complaint for lack of personal jurisdiction and lack of venue; or, in the alternative, transfer this case to the District of New Hampshire, where all relevant activities took place. Moreover, Plaintiff's pleading further compounds the burden that this forum already places on Defendants by obscuring the contents of each of the materials allegedly implicated in its copyright claims, notwithstanding that Plaintiff possesses copies of all the referenced materials. Because Plaintiff's copyright claims wholly omit any supporting factual allegations, the Court should dismiss those claims.

### SUMMARY OF THE ALLEGATIONS AND THE DECLARATIONS

Plaintiff asserts claims against ConvenientMD, former employee Hall, and seven other current or former employees. *See generally* Dkt 21. Plaintiff alleges that, between 2014 and 2025, Hall and the other employees each accessed Plaintiff's online "Train-the-Trainer" course materials, *see id.* at ¶¶ 21, 23-24, 26, 33, 66, 80, 95; and that, while clicking through pop-up notices within those materials, these employees each entered a clickwrap-based contract with CTS, *see id.* at ¶¶ 67, 80, 95. Plaintiff further alleges that the clickwrap contracts contained provisions that forbid the employees from subsequently utilizing the knowledge they acquired from CTS's courses, unless the employee sent a payment to CTS each time they used the newfound knowledge, *see id.* at ¶¶ 69, 81-83, 92, 96-97; and that the employees each violated the clickwrap contracts by utilizing

their new knowledge to train other employees, as part of training classes hosted by ConvenientMD ("In-House Trainings"), *see id.* at ¶¶ 27-30, 70-72, 85-87, 100-01.

Plaintiff also alleges that it owns two copyrighted textual works, and that ConvenientMD and the eight employees used unspecified portions of those works at In-House Trainings. *See id.* at ¶¶ 11-12, 27-30, 44, 47, 110, 129, 149, 167. Plaintiff does not allege any identifying details as to the contents of its textual works or the proprietary elements Defendants allegedly infringed, *see generally id.* at ¶¶ 104-78, but alleges that Defendants utilized "word-for-word verbatim reproductions" of these unspecified materials at In-House Trainings, *id.* at ¶¶ 48-49, 114.

In support of this Motion to Dismiss, Defendants submit three declarations as exhibits to the Motion:

(1)     Declaration of Marie Hall, attached as Exhibit A ("Hall Declaration"). In summary, Hall attests that she lives and works in New Hampshire, and that each of her interactions with the online CTS course took place in New Hampshire.

(2)     Declaration of Celina Frost, attached as Exhibit B ("Frost Declaration"). In summary, Frost attests that ConvenientMD's has its headquarters in New Hampshire, that its operations are confined to New Hampshire and the surrounding states, and that it does not conduct business in Florida. Frost also attests that each interaction between ConvenientMD's employees and the online CTS course took place in New Hampshire or the surrounding

states, and that the In-House Trainings were taught from ConvenientMD's New Hampshire headquarters.

(3)   Declaration of Aaron Fenton, *Esq.*, attached as <u>Exhibit C</u> ("Fenton Declaration"). The Fenton Declaration encloses five documents which Attorney Fenton downloaded from publicly-available sources, namely: four webpages, showing that the CTS "contact us" webpage listed addresses located outside Florida from 2014 to the present; and CTS's 2026 Annual Report, received from the Florida Secretary of State.

**ARGUMENT**

**I.    Florida Lacks Personal Jurisdiction Over Defendants Because All Relevant Acts Occurred in or Around New Hampshire.**

Plaintiff "bears the initial burden of alleging . . . sufficient facts to make out a *prima facie* case of [personal] jurisdiction" over an out-of-state defendant. *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009). Where a defendant then challenges personal jurisdiction by submitting declarations that contradict the forum's exercise of jurisdiction, the burden again "shifts back to the plaintiff to produce evidence supporting jurisdiction." *Id.*

Plaintiff's Amended Complaint alleges that this state has specific jurisdiction over Defendants under several theories, each of which ultimately stems from Plaintiff's present-day domicile in Florida. *See* Dkt 21 ¶¶ 54-62.[2] But regardless of

---

[2]   Plaintiff does not allege that any defendant is subject to general jurisdiction in Florida, which would require Florida connections that are "so continuous and systematic as to render them essentially at home in [Florida]." *See Goodyear Dunlop Tires Ops., v. Brown*, 564 U.S. 915, 919 (2011). Instead, (i) as CTS acknowledges, ConvenientMD is a Delaware company, with its

**4** of **26**

the particular theory, Plaintiff's burden requires it to demonstrate that exercising personal jurisdiction does not violate Defendants' Constitutional Due Process rights, *i.e.,* that Defendants have "sufficient minimum contacts" with Florida, such that "maintenance of th[is] suit" in Florida "does not offend traditional notions of fair play and substantial justice." *Cable/Home Commc'n Corp. v. Network Prods., Inc.*, 902 F.2d 829, 855 (11th Cir. 1990). *See also Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). Plaintiff's allegations fall well shy of this burden, because Plaintiff relies exclusively on its own unilateral, undisclosed, and unrelated contacts that have no bearing on personal jurisdiction.

A.    *Plaintiff's Unilateral Decision to Relocate to Florida Does Not Create Personal Jurisdiction Over Defendants, Especially Because This Newly-Spawned Contact Was Never Disclosed to Defendants.*

The "minimum contacts" inquiry focuses exclusively on "contacts that the 'defendant *himself*' creates with the forum state." *Walden v. Fiore*, 571 U.S. 277, 284 (2014) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)). In particular, the "essential" requirement for establishing minimum contacts is that the defendant has itself committed "some act . . . purposefully avail[ing] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958) (citing *Int'l Shoe,* 326 U.S. 310).

---

principal place of business in New Hampshire, *see* Dkt 21 ¶ 3; and (ii) CTS appears to be aware that Hall is a resident of New Hampshire, as evidenced by CTS having successfully arranged service on Hall at her home in New Hampshire, *see* Dkt 5.

Instead, the Amended Complaint looks to bypass this "essential" element, by substituting Plaintiff's unilateral and undisclosed contacts in place of Defendants' own minimum contacts. Specifically, the sole alleged connection tying this lawsuit to Florida is Plaintiff's choice to domicile in Florida — a choice in which Defendants had no involvement. *See* Dkt 21 ¶¶ 7-8. Plaintiff does not otherwise allege any affirmative act initiated by Defendants and directed at Florida or invoking Florida laws. In fact, throughout the entire Amended Complaint, Plaintiff alleges only a single occasion whereby ConvenientMD has ever intentionally ventured outside the boundaries of New England: When ConvenientMD first "sought out" and "established . . . a continuing commercial relationship with CTS," which all occurred back in July 2014. *Id.* at ¶¶ 14, 54, 59. Even if true, the state of Florida is not implicated in any way by this alleged 2014 outreach to CTS, which would have occurred more than four years prior to Plaintiff establishing its own first connection to Florida in November 2018. *See id.* at ¶¶ 7-8. [3] And the fact that Plaintiff unilaterally relocated to Florida four years after ConvenientMD allegedly established contacts with CTS has no bearing on personal jurisdiction over Defendants, which is based exclusively on Defendants' own affirmative acts rather than "random, fortuitous, or attenuated contacts" initiated by parties that are outside Defendants' control. *See Burger King*, 471 U.S. at 475; *See also Walden*,

---

[3] At most, ConvenientMD's 2014 foray would have been directed towards the state of California, where CTS appears to have been based at that time. *See* Fenton Declaration, ¶ 5.b (CTS's website, circa May 2014, listing address in Imperial Beach, California).

571 U.S. at 284 (explaining that the Supreme Court has "consistently rejected attempts to satisfy the defendant-focused 'minimum contacts' inquiry by demonstrating contacts between the plaintiff . . . and the forum State").

Plaintiff's unilateral Florida relocation is also necessarily irrelevant to Defendants' minimum contacts because Defendants had no knowledge of the move. Knowledge of the forum-state connection is a fundamental prerequisite for that connection to create personal jurisdiction, because "minimum contacts" are satisfied only where the defendant has "purposefully direct[ed] his activities at residents of the forum state." *Kinon Surface Design, Inc. v. Hyatt Corp.*, 2019 WL 4731771, 4 (S.D. Fla. 2019) (*citing Shaffer v. Heitner,* 433 U.S. 186, 218 (1977) and *Keeton v. Hustler Magazine, Inc.,* 465 U.S. 770, 774 (1984)). Yet Plaintiff does not allege that its newly-established Florida connection was ever conveyed to Defendants; to the contrary, after its move to Florida, CTS continued to list its business address as located in California and Tennessee. *See* Fenton Declaration, ¶¶ 5-6. As a result, to the extent that Plaintiff alleges Defendants established minimum contacts by continuing to conduct business with CTS after its 2018 move, this is impossible: Defendants' business with CTS could not have been "purposefully direct[ed] . . . at residents of [Florida]" where ConvenientMD had no idea that CTS was a "resident of Florida." *See Kinon Surface*, 2019 WL at 4.[4]

---

[4]   In support of its jurisdictional arguments, the Amended Complaint cites to *Diamond Crystal Brands, Inc. v. Food Movers International, Inc.*, 593 F.3d 1249 (2010), with a parenthetical alleging that this decision found "purposeful availment . . . without regard to the defendant's knowledge of the plaintiff's forum." *See* Dkt 21 ¶ 59. This parenthetical is false. In *Diamond Crystal*, the defendant plainly knew that its counterparty was located in the forum state

Invoking personal jurisdiction in such a circumstance is the antithesis of the Constitution's Due Process protections, as a defendant could not possibly "reasonably anticipate being haled into court" in a jurisdiction with which it had only unwitting contact. *See World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).

B.   *Plaintiff's Bases for Exercising Personal Jurisdiction in Florida are Each Insufficient, Because None of the Bases Relieve Plaintiff of its Obligation to Identify Minimum Contacts Initiated <u>By Defendant</u>.*

Throughout the Amended Complaint, Plaintiff attempts to yoke personal jurisdiction to the series of contracts that CTS entered with Hall and the other employees, and the resulting "continuous commercial relationship" that arose between ConvenientMD and CTS. *See* Dkt 21 ¶¶ 54, 59. Contracts and resulting relations with the Florida-based Plaintiff are insufficient to establish personal jurisdiction in Florida, even where the contractual relationship stretched across multiple contracts and many years. *See Burger King*, 471 U.S. at 478-79 ("[C]ontract[s] with an out-of-state party alone" are not "sufficient minimum contacts"); *Diamond Crystal*, 593 F.3d at 1271 ("[E]ven a history of such transactions does not provide sufficient minimum contacts.") (describing and upholding *Banton Indus., Inc. v. Dimatic Die & Tool Co.*, 801 F.2d 1283 (11th Cir. 1986)).

---

(Georgia), as evidenced by the fact that they specifically wrote the counterparty's Savannah warehouse address into the contract as the location for delivery of all contracted-for goods. *See* 593 F.3d at 1270.

Rather, for a contractual relationship to establish minimum contacts by an out-of-state party, the substance of the parties' contractual relationship must evidence a "deliberate affiliation with the forum state." *Burger King*, 471 U.S. at 482. *See also Diamond Crystal*, 593 F.3d at 1268 (2010) (creating minimum contacts through contractual relationships relies on "the substance of the transaction") (citing *Burger King*, 471 U.S. at 479). For example, in *Diamond Crystal*, the Eleventh Circuit found minimum contacts with Georgia where the defendant expressly wrote the address of the plaintiff's "Savannah, Georgia" warehouse into the contract, as the place where the goods would be delivered, held for resale, and picked up once re-sold. *See* 593 F.3d at 1267-70, 1273. Similarly, in *Burger King*, the U.S. Supreme Court found minimum contacts with Florida where the contract expressly named Florida as the place where the contract was made and enforced, where plaintiff's operations were based, and where notices must be sent. *See* 471 U.S. at 480-81. In summary, these cases show that, as the Supreme Court explained in *Burger King*, a contract may create minimum contacts in circumstances where the out-of-state party "most certainly knew that he was affiliating himself with an enterprise based primarily in [the forum state]." *Burger King*, 471 U.S. at 480.

The substance of the CTS–ConvenientMD transactions sits at the opposite end of the spectrum. Most pointedly, the clickwrap contracts contain no mention of Florida, and neither party had even a single alleged connection to Florida for the first four years of their business relationship. *See* Dkt 21 ¶ 7. Moreover, at all times

during their eleven-year business relationship, all material aspects of their transactions were centered in or around New Hampshire.[5] In the end, Plaintiff's undisclosed Florida residency is the lone string tethering the transactions to Florida, and Eleventh Circuit and Florida courts have regularly found that such a string does not suffice for minimum contacts and personal jurisdiction. *See, e.g., Banton Indus.*, 801 F.2d at 1284-85 (finding four years of contracts with the in-forum counterparty "too insignificant" for minimum contacts); *Marsh Supermarkets, Inc. v. Queen's Flowers Corp.*, 696 So. 2d 1207, 1209 (Fla. 3d DCA 1997) (finding sequence of 105 contracts with the Florida counterparty "insufficient to establish minimum contacts with Florida").[6]

Finally, Plaintiff seeks to invoke personal jurisdiction over Defendants because Hall allegedly failed to make in-forum payments to CTS under the clickwrap contract, and because CTS was allegedly injured in Florida. *See* Dkt 21 ¶¶ 55-58, 62. Florida courts have soundly rejected each of these bases. As to in-

---

[5]    For example, New Hampshire (or the surrounding states) was where (i) the clickwrap contract was presented to, and allegedly entered by, Hall, *see* Hall Declaration, ¶ 6; (ii) Hall and other employees accessed the online course materials, *see* Hall Declaration, ¶ 7, Frost Declaration, ¶ 8; (iii) the clickwrap contract purportedly restricted ConvenientMD employees by prohibiting participation in In-House Trainings, *see* Dkt 21 ¶¶ 22, 81-83; (iv) ConvenientMD allegedly accessed CTS's online course materials via ConvenientMD employees, *see* Dkt 21 ¶¶ 111, 131; and (v) ConvenientMD allegedly benefitted from utilizing those materials, *see id.* at ¶ 182.

[6]    *See also O'Brien Glass v. Miami Wall Sys.*, 645 So. 2d 142, 144 (Fla. 3d DCA 1994) ("The mere fact that O'Brien ordered goods from a Florida corporation does not render it amenable to suit in Florida."); *Burke Prod.s, Inc. vs Access Elec.s, LLC*, 311 So. 3d 145, 151 (Fla. 2d DCA 2020) (finding no personal jurisdiction over out-of-state buyer, even though buyer contacted the seller multiple times in Florida about the contract); *Pres-Kap, Inc. v. Sys. One, Direct Access, Inc.*, 636 So. 2d 1351, 1353 (Fla. 3d DCA 1994) (finding transaction with Florida counterparty was nonetheless "obviously New York-based").

state payments, "the mere failure to pay money in Florida" does not "suffice to obtain jurisdiction over a nonresident defendant." *Venetian Salami Co. v. Parthenais,* 554 So.2d 499, 503 (1989).[7] Similarly, as to in-state injury:

> Mere injury to a forum resident is not a sufficient connection to the forum. . . . The proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way.

*Walden*, 571 U.S. at 290.[8] These and myriad similar cases indicate that Plaintiff's burden remains the same regardless of in-forum payments or injuries: Plaintiff must demonstrate that, through Defendants' purposeful contacts with Florida, Defendants have "create[d] a substantial connection with the forum State." *See Burger King*, 471 U.S. at 475. Plaintiff fails to make such a showing, and personal jurisdiction is therefore improper.

C. *Exercising Personal Jurisdiction Over Defendants in Florida Offends Traditional Notions of Fair Play and Substantial Justice.*

Plaintiff's proffer of its own unilateral and undisclosed Florida connection as a basis for personal jurisdiction is even more dubious when "considered in light of" the five "fair play and substantial justice" factors. *See Burger King*, 471 U.S. at 476 (citing *Int'l Shoe,* 326 U.S. 310). These factors include the: (1) "burden

---

[7] *See also, e.g., Pres-Kap*, 636 So. 2d at 1353 ("It is settled law" that a contract with a Florida party does not "automatically establish sufficient minimum contacts . . . even where . . . the foreign defendant allegedly breaches that contract by failing to make the required payments in Florida."); *O'Brien Glass*, 645 So. 2d at 144 ("[T]he fact that payment was due in Florida is not a sufficient minimum contact to sustain personal jurisdiction."); *Marsh Supermarkets,* 696 So. 2d at 1209 ("[P]urchases from a Florida vendor and . . . failure to make payment for the same in this state is insufficient to establish minimum contacts with Florida").

[8] *See also, e.g., Licciardello v. Lovelady*, 544 F.3d 1280 (11th Cir. 2008) (to exercise personal jurisdiction based on in-forum injury, defendants must have "expressly aim[ed] [their] wrongful conduct" at the state by "individually targeting a known forum resident.").

on the defendant," (2) "forum State's interest in adjudicating the dispute," (3) "plaintiff's interest," (4) "interstate judicial system's interest in obtaining the most efficient resolution of controversies," and (5) "shared interest of the several States in furthering fundamental substantive social policies." *Id.* at 476–77 (quoting *World-Wide Volkswagen*, 444 U.S. at 292).

For the <u>first factor</u>, litigating in Florida would inflict acute burdens on Defendants, including because (i) Hall is an individual living in New Hampshire, approximately 1,400 miles north of this Court, *see* Hall Declaration, ¶ 3, and (ii) ConvenientMD is also based in New Hampshire, and does not do business outside New England, *see* Frost Declaration, ¶¶ 4-5. This factor therefore weighs heavily in favor of rejecting personal jurisdiction. *See Future Tech.*, 218 F.3d at 1251 (where the defendant was based in Illinois and did not do business in Florida, "the burden . . . in defending a lawsuit in Florida would be great"); *Estes v. Rodin*, 259 So.3d 183, 198 (Fla. 3d DCA 2018) (where the defendants were based in California and Kansas and did not do business in Florida, the burden of litigating in Florida outweighed the deference afforded to plaintiff's choice of forum).

For the <u>second factor</u>, Florida has an interest in resolving disputes involving a Florida company. But this interest is tempered as to CTS, because (i) CTS portrays itself as operating from Michigan, California, and most recently Tennessee, casting doubt on how much of CTS's operations are actually based in Florida, *see* Fenton Declaration, ¶¶ 5-6; (ii) during four of the eleven years at issue in this lawsuit, Plaintiff had zero alleged connection to Florida, *see* Dkt 21 ¶ 7; and

(iii) CTS did not become a Florida limited liability company until seven years into its business relationship with ConvenientMD, *see* Dkt 21 ¶ 8. Florida's interest is also less compelling in light of Defendants' complete lack of activity within the state. *See, e.g., Rowe v. Gary, Williams, Parteni, Watson and Gary*, 723 Fed. Appx. 871, 876 (11th Cir. 2018) ("Georgia has a limited interest in adjudicating this dispute because the lion's share of the conduct alleged occurred outside Georgia").[9]

The <u>third factor</u> almost always favors the plaintiff, whose choice of forum is afforded some weight. *See, e.g., Future Tech.*, 218 F.3d at 1251 ("Any plaintiff's interest in obtaining convenient and effective relief is always present."). However, this interest is similarly tempered as to CTS, because Plaintiff appears to be "at home" in at least one other state. *See* Fenton Declaration, ¶ 6 (listing CTS's current address in Knoxville, Tennessee).

For the <u>fourth factor</u>, because all activities relevant to Plaintiff's claims occurred in or around New Hampshire, evidence will overwhelmingly also be located in or around New Hampshire — not Florida. For example, nearly all of the over-fifty alleged participants in the online courses, and nearly everyone involved in the In-House Trainings, are in New England; and nearly all related documents are located at ConvenientMD's New Hampshire headquarters.

---

[9]     *See also Future Tech.*, 218 F.3d at 1251 (the Court "cannot conclude a strong state interest in haling people into Florida courts from all over the country" on the basis of contracts entered "without ever setting foot in Florida"); *R&R Games, Inc. v. Fundex Games, Ltd.*, 2013 WL 784397, 9 (M.D. Fla. Mar. 1, 2013) ("Florida lacks an interest in disciplining a foreign company that has never directed any activity into the state").

*See* Frost Declaration, ¶¶ 10-14. This factor weighs against exercising personal jurisdiction in Florida.

For the <u>fifth factor</u>, because all relevant activities occurred in or around New Hampshire, that state has its own competing interest in resolving this dispute. *See Rowe*, 723 Fed. Appx. at 876 (where the "lions share" of conduct occurred in New York rather than Georgia, "New York would have a significantly stronger interest in adjudicating [the] dispute"). The several States also have an interest in preserving the Due Process protections afforded by the "purposeful availment" requirement, which would be undermined if this case is litigated in Florida.

In summation, exercising jurisdiction in Florida would inflict exceptional burdens on Defendants (first factor), while offering limited benefit to Plaintiff (third factor). And whereas Florida's interests are not particularly availing (second factor), there is reason to believe that the interests of efficient case resolution (fourth factor) and the several States (fifth factor) will be harmed if this case remains in Florida. On balance, the fair play and substantial justice factors offer an unambiguous warning against exercising personal jurisdiction in Florida, particularly in light of Plaintiff's already-meagre minimum contacts allegations.

## II.   Venue is Inappropriate in the Middle District of Florida, Because All "Events Giving Rise to CTS's Claims" Occurred in or Around New Hampshire.

As with personal jurisdiction, Plaintiff bears the burden of making "a prima facie showing of venue." *Delong Equip. Co. v. Wash. Mills Abrasive Co.*, 840 F.2d 843, 845 (11th Cir. 1988). CTS alleges that venue exists in this Court pursuant to

28 U.S.C. § 1391(b)(2) and § 1400(a). *See* Dkt 21 ¶¶ 63-64. <u>As to Section 1400(a),</u> this provision allows suit to be brought where "the defendant or his agent resides or may be found," *i.e.,* "in a district which may assert personal jurisdiction over the defendant." *Palmer v. Braun*, 376 F.3d 1254, 1259 (11th Cir. 2004). Because there is no personal jurisdiction over Defendants in Florida, venue is likewise improper in the Middle District of Florida under Section 1400(a).

<u>As to Section 1391(b)(2),</u> this provision allows suit to be brought in the district where "a substantial part of the events or omissions giving rise to the claim occurred." This analysis considers "[o]nly the events that directly give rise to a claim" in the lawsuit, and "only [considers] those locations hosting a 'substantial part' of [such] events." *Jenkins Brick Co. v. Bremer*, 321 F.3d 1366, 1371 (11th Cir. 2003). *See also Anderson v. Cottonwood Senior LP*, 2011 WL 4595594, 1 (N.D. Fla. Aug. 29, 2011) ("hosting a substantial part" of the event means that the location-based activities "bear a close nexus to the claims") (citation omitted). All told, venue under Section 1391(b)(2) requires an even "greater level of relevant activities by the Defendants than the minimum contacts analysis." *TMJ Practice Mgmt. Assoc.s, Inc. v. Curran*, 2017 WL 3130421, 5 (S.D. Fla. Jul 24, 2017) (citing *Jenkins Brick*, 321 F.3d at 1372).

Turning to Plaintiff's allegations, all events "giv[ing] rise to" Plaintiff's claims occurred in New England, where the clickwrap contracts were presented to, accepted by, and allegedly violated by ConvenientMD's employees, *see* Hall Declaration, ¶¶ 6, 8, Frost Declaration, ¶¶ 8-11; where ConvenientMD and its

employees allegedly accessed and misused copyrighted materials, *see* Dkt 21 ¶¶ 49, 111, 131, 149, 167, Frost Declaration, ¶¶ 8-10; and where ConvenientMD allegedly benefitted from CTS's course materials, *see* Dkt 21 ¶ 182, Frost Declaration, ¶ 8. Per these events, all aspects of Plaintiff's legal claims — including the alleged offer, acceptance, and breach of the clickwrap contracts, the alleged copyright infringement, and the alleged unjust enrichment — occurred in or around New Hampshire, while the only Florida "event" was Plaintiff's unilateral decision to move there. *See* Dkt 21 ¶¶ 7-8. This lone Florida "event" had no impact on CTS's ongoing business with Defendants, who were not even aware of Plaintiff's relocation.[10] Courts have also regularly rejected Plaintiff's remaining argument that venue is proper merely because CTS operated and was injured in Florida. *See, e.g., TMJ Practice*, 2017 WL 3130421 at 5-6 (although the plaintiff was injured in S.D. Florida, this in-forum injury was not "a substantial part of the events or omissions giving rise to the claim").[11]

---

[10]   As in the personal jurisdiction analysis, Plaintiff's move to Florida is also additionally irrelevant to the venue analysis because "the proper focus of the venue inquiry is on the relevant activities of the Defendants," not the plaintiff. *TMJ Practice*, 2017 WL 3130421 at 3 (citation omitted).

[11]   *See also, e.g., Jenkins Brick*, 321 F.3d at 1372-73; *Infinite Growth Grp., LLC v. Infinite Growth Assocs., LLC*, 2010 WL 3190613, 3 (M.D. Fla. Aug 11, 2010) (rejecting venue in M.D. Florida, notwithstanding a Florida plaintiff and injury); *Anderson*, 2011 WL 4595594 at 2 (although the plaintiff lived in Florida, the location with "a substantial part of the events underlying this action" was Alabama, where the alleged violations actually occurred); *Threadgill v. Dennard*, 2020 WL 4740502, 1 (N.D. Fla. Jul 20, 2020) (although the plaintiff lived in Florida, "[t]he crux of [the] complaint arises out of events . . . in . . . California," where the plaintiff was wrongfully-detained).

### III.    Transfer Is Otherwise Appropriate "For the Convenience of Parties and Witnesses" and "in the Interest of Justice."

Venue is improper in the Middle District of Florida. But if this Court determines otherwise, the Court should nonetheless transfer this case to the District of New Hampshire. Specifically, where an alternative venue exists:

> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

28 U.S.C. § 1404(a). Transfers under Section 1404(a) are generally "in accordance with the doctrine of *forum non conveniens*," except that courts are afforded "more discretion" under Section 1404(a). *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 253 (1981). *See also Norwood v. Kirkpatrick*, 349 U.S. 29, 39 (1955) (Section 1404(a) "permit[s] courts to grant transfers upon a lesser showing of inconvenience").

As previously discussed, the District of New Hampshire is a viable alternative venue under Section 1391(b)(2), because "a substantial part of the events . . . giving rise to the claim occurred" in New Hampshire. *See supra,* § II. Section 1391(b)(1) also authorizes venue in the District of New Hampshire, because Defendants are residents of New Hampshire. With this alternative venue in-hand, the Court next evaluates whether transferring the case would serve "the convenience of the parties and witnesses" and otherwise promote "the interest of justice." *Atl. Marine Const. Co. v. W. Dist. of Tex.*, 571 U.S. 49, 62-63 (2013). Given this lawsuit's paucity of connections to the Middle District of Florida and extensive connections to the District of New Hampshire, these considerations strongly

endorse exercising this Court's discretion to transfer the lawsuit to the District of New Hampshire.

"The most important factor under § 1404(a) is the convenience of witnesses." *Trans Am Worldwide LLC v. JP Superior Sol.s, LLC*, 2018 WL 3090394, 8 (N.D. Fla. Apr. 30, 2018) (citation omitted). Nearly all relevant witnesses are located in or around New Hampshire, including the online course participants and instructors and participants for In-House Trainings. *See* Frost Declaration, ¶¶ 10-12. And Florida is an especially inconvenient forum for this group, given the large number of witnesses (e.g., "at least fifty" alleged participants in the online courses) and the 1,400 miles separating Florida from New Hampshire. *See* Dkt 21 ¶ 40. To compound these issues, most of these witnesses live outside this Court's subpoena power. *See* Fed. R. Civ. P. 45(c). As for Florida witnesses, Plaintiff's CEO Lisa Bradley presently appears to be the lone potential witness with connections to Florida. *See* Dkt 21 ¶¶ 6-7. And even if a handful of other CTS personnel are later identified as witnesses, the available evidence calls into question whether the Middle District of Florida is a convenient venue for any CTS personnel other than Ms. Bradley. *See* Fenton Declaration, ¶ 6 (listing CTS's current address in Knoxville, Tennessee); *id.* at ¶ 7 (2026 Annual Report, listing CTS's CFO (Phoenix Vanzutphen) in Knoxville, Tennessee). With witness convenience overwhelmingly favoring New Hampshire over Florida, this "most important factor" heavily favors a transfer of venue.

"The location of operative facts underlying a claim" is another "key factor in determining a motion to transfer venue." *Nat'l Trust Ins. Co. v. Penn. Nat'l Mut. Cas. Ins. Co.,* 223 F. Supp. 3d 1236, 1245 (M.D. Fla. 2016). As previously described at length, all facts related to Plaintiff's claims occurred in New Hampshire or its neighboring states, whereas the Middle District of Florida has little-to-no connection to the substance of Plaintiff's claims. *See supra*, §§ I, II. In addition, Plaintiff's breach of contract claims are governed by New Hampshire law.[12] With the locus of facts and law each centered on New Hampshire, this also heavily favors transfer.

In summary, the District of New Hampshire is significantly more convenient for the parties and witnesses, and has much greater connections to the issues and claims in this lawsuit. Therefore, if the Court elects not to dismiss the Amended Complaint, then it should exercise its broad discretion to transfer this case to the District of New Hampshire.

## IV.    Plaintiff's Copyright Claims Lack Factual Allegations Identifying the Original or Copied Materials, and Should be Dismissed.

In Counts IV through VII, Plaintiff asserts claims for copyright infringement based on two registered copyrights, titled Urine Specimen Collection and Urine

---

[12]    The clickwrap contracts do not contain choice of law or choice of venue provisions. *See* Dkt 21-3, 21-4, 21-5. Florida follows Lex Loci Contractus choice of law, *see Shaps v. Provident Life & Acc. Ins. Co.*, 826 So. 2d 250, 254 n. 3 (Fla. 2002), which applies the law of the place where the last act necessary to bind the parties occurred, *see Jemco, Inc. v. United Parcel Service, Inc.,* 400 So. 2d 499, 501 (Fla. 3d 1981). In clickwrap agreements, this "last act" is ordinarily where the user clicks to "accept" the clickwrap terms. *See Sun Life Assur. Co. v. Imperial Premium Fin., LLC*, 904 F.3d 1197 (11th Cir. 2018); *Airbnb, Inc. v. Doe*, 336 So.3d 698 (Fla. 2022). Hall clicked "accept" in New Hampshire, *see* Hall Declaration, ¶ 6, so New Hampshire law applies.

Specimen Collection 2023 Edition (the "2023 Edition"). *See* Dkt 21 ¶¶ 105-08, 124-27. In order to sufficiently plead these copyright infringement claims, Plaintiff must plead that Defendants copied protectable elements of the copyrighted works, *see Miller's Ale House, Inc. v. Boynton Carolina Ale House, LLC*, 702 F.3d 1312, 1325 (11th Cir. 2012), *i.e.*, that Defendants copied "constituent elements of the work that are original." *Bennett v. Walt Disney Co.*, No. 23-12786, 2024 WL 4040443, 2 (11th Cir. Sept. 4, 2024) (quoting *Feist Publ'n, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340 (1991)). Furthermore, "[i]n pleading the defendant copied protected elements . . . a plaintiff must also plead facts that show that the similarities between the copyrighted work and the alleged copy are 'copyrightable material.'" *Henderson v. Starz Ent., LLC.*, No. 8:25-CV-02561-MSS-NHA, 2026 WL 1674075, 2 (M.D. Fla. May 19, 2026), *report and recommendation adopted*, 2026 WL 1670361 (M.D. Fla. June 9, 2026) (citing *Herzog v. Castle Rock Entm't*, 193 F.3d 1241, 1248 (11th Cir. 1999)). *See also MiTek Holdings, Inc. v. Arce Eng'g Co.*, 89 F.3d 1548, 1554 (11th Cir. 1996) (noting "the mere fact that a work is copyrighted does not mean that every element of the work may be protected").

Here, Plaintiff's pleadings do not even identify the relevant copyrighted "works," let alone which of their elements were "copyrightable material" with "similarities" to Defendants' alleged copies. Rather, combining all of Plaintiff's factual allegations regarding the works, the Amended Complaint identifies CTS's works only as some sort of "texts," which somehow implicate CTS's compliance training for Department of Transportation (DOT) "Urine Specimen Collection"

procedures.[13] And as to Defendants' alleged copies of these works, Plaintiff alleges only that the copies included "verbatim reproductions" of some unspecified portion of CTS's works. *See* Dkt 21 ¶¶ 48, 114. In other words, whereas Plaintiff must identify specific works containing specific copyrightable elements copied by Defendants, *see Henderson*, 2026 WL 1674075, 2, Plaintiff instead pleads that Defendants copied an unspecified amount of unnamed contents from Plaintiff's unidentified works. These gross pleading deficiencies warrant dismissal of Plaintiff's copyright claims. *See Henderson*, 2026 WL 1674075, 4-5 (dismissing copyright claim for failure to plead facts showing that protected elements were copied); *Dodd v. Woods*, 2010 WL 3747007, 4 (M.D. Fla. Aug. 31, 2010), *report and recommendation adopted*, 2010 WL 3745802 (M.D. Fla. Sept. 21, 2010) (dismissing a copyright claim for failing to plead facts showing similarity between the works).

On top of these glaring omissions, certain factual allegations that Plaintiff includes render these omissions particularly dubious. First, Plaintiff has easy access to the copyrighted works — including because Plaintiff's lead counsel in this litigation personally signed and submitted the copyright applications, *see* Dkt 21-1, 21-2 — and Plaintiff admits that it has copies of Defendants' allegedly-infringing

---

[13] Specifically, Plaintiff alleges that the works (i) are titled "Urine Specimen Collection" and "Urine Specimen Collection 2023 Edition," *see* Dkt 21 ¶ 12; (ii) have some unspecified connection to CTS's online Department of Transportation compliance training course, *see id.* at ¶¶ 2, 11; and (ii) per registration certificates attached to the Amended Complaint, that the works cover unspecified "text" and exclude unspecified "pre-existing and third party text," *see* Dkt 21-1, 21-2.

"verbatim reproductions," *see* Dkt 21 ¶¶ 47-49. With these materials already in-hand, Plaintiff's spartan allegations in the Amended Complaint appear to be the result of Plaintiff's chosen pleading strategy, rather than a lack of factual knowledge. Second, Plaintiff alleges that its copyrighted works pertain to compliance trainings for DOT "Urine Specimen Collection" procedures, *see id.* at ¶¶ 2, 11-12, which are publicly-available regulations published by the DOT.[14] Having alleged that CTS's works concern compliance with (uncopyrightable) published government regulations and with the copyright registrations admittedly disclaiming "existing and third-party text," it is highly likely that CTS's works incorporate some amount of non-original text from the regulations; and to the extent that such text is part of the elements copied by Defendants, Plaintiff would fail to allege infringement and the Court can "dispose of [this] copyright case on the pleadings." *Henderson*, 2026 WL 1670361 at 3.

Finally, Count V (infringement of the 2023 Edition) should be dismissed for the additional and independent reason that Plaintiff fails to allege infringement. To this point, Plaintiff alleges "on information and belief" that CTS incorporated the 2023 Edition into its training course in 2023, and therefore that course materials accessed after 2023 "necessarily included" the 2023 Edition. *See* Dkt 21

---

[14]   *See* U.S. Department of Transportation, Office of Drug & Alcohol Policy & Compliance, DOT Urine Specimen Collection Procedures Guidelines, https://www.transportation.gov/sites/dot.gov/files/2026-06/Urine_Specimen_Collector_Procedures_Guidelines_June_30_2026.pdf (last visited July 28, 2026). Courts may take judicial notice of government documents and publications. *Universal Express, Inc. v. U.S. S.E.C.*, 177 F. App'x 52, 53 (11th Cir. 2006).

¶ 130. Having made this allegation "on information and belief," Plaintiff's infringement theory rests on two necessary factual inferences: (1) that CTS must have added the 2023 Edition to the course materials, and (2) inclusion in the course materials must mean that the post-2023 defendants therefore had access to the 2023 Edition. These allegations based on "information and belief" and inference stacking provide insufficient factual support for Count V, which should therefore be dismissed. *See D.P. v. Sch. Bd. of Palm Beach Cnty.*, 658 F. Supp. 3d 1187, 1205 (S.D. Fla. 2023); *Phoenix Ent. Partners, LLC v. Orlando Beer Garden, Inc.*, 2016 WL 1567590, 5 (M.D. Fla. Mar. 30, 2016), *report and recommendation adopted*, 2016 WL 1559164 (M.D. Fla. Apr. 18, 2016) ("Conclusory allegations made upon information and belief are not entitled to a presumption of truth, and allegations stated upon information and belief that do not contain any factual support fail to meet the Twombly standard.").

In sum, Plaintiff's threadbare allegations fail to allege copying, because Plaintiff does not identify the copyrighted materials, the original protectable elements allegedly copied, nor facts supporting substantial similarity; and Plaintiff's "information and belief" allegations fail to allege infringement of the 2023 Edition. This Court should therefore dismiss Plaintiff's direct copyright

claims (Count IV and Count V), which in turn warrants dismissal of the indirect copyright claims (Count VI and Count VII).[15]

## CONCLUSION

ConvenientMD operates exclusively in New England, which is also where each of the individual defendants live and work. Nonetheless, Plaintiff seeks to hale Defendants into court over 1,400 miles away in Florida, based on the mere fact that Plaintiff quietly moved to Florida midway through its business relationship with ConvenientMD. Plaintiff's spartan basis for personal jurisdiction is matched by the paucity of factual allegations supporting its copyright claims, which fail to identify any of the original or allegedly-copied materials. There is neither jurisdiction nor venue in this Court and Plaintiff has failed to state copyright claims against Defendants, each warranting dismissal.

**WHEREFORE**, Defendants ConvenientMD and Hall respectfully request that this Court issue an order:

(i)     Dismissing the Amended Complaint as to Defendants ConvenientMD and Hall, for lack of personal jurisdiction;

(ii)    Dismissing the Amended Complaint as to Defendants ConvenientMD and Hall, for lack of appropriate venue, or in the alternative,

---

[15]   *See Peter Letterese & Assocs., Inc. v. World Inst. of Scientology Enters., Int'l*, 533 F.3d 1287, 1298 n. 11 (11th Cir. 2008*); Klein & Heuchan, Inc. v. CoStar Realty Info., Inc.,* 2011 WL 6097980, 3 (M.D. Fla. Dec. 7, 2011).

transferring venue to the District of New Hampshire under 28 U.S.C. 1404(a);

(iii)   Dismissing Count IV, Count V, Count VI, and Count VII as-against Defendants ConvenientMD and Hall; and

(iv)   Grant such other relief as may be just, equitable, and proper.

## LOCAL RULE 3.01(g) CERTIFICATION

The undersigned certifies that on June 30, 2026, counsel for ConvenientMD conferred with counsel for Plaintiff via email regarding the relief requested herein. Plaintiff opposes the relief requested.

Respectfully submitted,

*s/ Tori C. Simmons*
Cameron G. Shilling (NHBA 11363)
Cameron.Shilling@mclane.com
Aaron R. Fenton
Aaron.Fenton@mclane.com
MCLANE MIDDLETON, PA
900 Elm St.
Manchester, NH 03101
603-628-1351
*Lead Counsel for Defendants*
*ConvenientMD, LLC and Marie Hall*

Dennis P. Waggoner (FBN 509426)
dennis.waggoner@hwhlaw.com
regina.bigness@hwhlaw.com
Tori C. Simmons (FBN 107081)
tori.simmons@hwhlaw.com
michelle.armstrong@hwhlaw.com
HILL, WARD & HENDERSON, P.A.
101 E Kennedy Boulevard, Suite 3700
Tampa, FL 33602
Telephone: 813-221-3900

Facsimile:  813-221-2900
*Attorneys for Defendants*
*ConvenientMD, LLC and Marie Hall*