**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

CERTIFIED TRAINING SOLUTIONS, LLC,

Plaintiff,

v. Case No.: 8:26-cv-01156-CEH-CPT

CONVENIENTMD, LLC, DIANE WILLEY,
MARIE HALL, CAITLIN MORSE,
MELODY BARRY, DEREK NELSON,
KATELYN DALTON, DIANA TERESHCHUK,
and VICTORIA CLINE,

Defendants.
_______________________________/

**RESPONSE IN OPPOSITION TO DEFENDANTS CONVENIENTMD, LLC AND MARIE HALL'S MOTION TO DISMISS, OR TO TRANSFER VENUE**

Plaintiff, Certified Training Solutions, LLC ("Plaintiff" or "CTS"), by and through undersigned counsel, hereby files this Response in Opposition to Defendants, ConvenientMD, LLC and Marie Hall's (collectively, "Defendants"), Motion to Dismiss, or to Transfer Venue, filed on July 30, 2026 at Doc. 28, and in support thereof states as follows:

**FACTUAL BACKGROUND**

CTS is a Florida limited liability company with its principal place of business in St. Petersburg, Florida. Bradley Decl. ¶ 8. Lisa Bradley is CTS's owner and its only employee. She has resided in Florida since November 2018 and performs CTS's work from her home office in Pinellas County. Bradley Decl. ¶¶ 3–5, 9, 11; Ex. 6.

CTS is run from Florida. Ms. Bradley makes CTS's decisions about its courses, its copyrighted works, its license terms, its pricing, and the enforcement of its licenses, and she makes them in Florida. Bradley Decl. ¶ 10. She authored and maintains the Course content and Works, administers the learning management system, wrote CTS's Terms and Conditions, and maintains all CTS's records, and since 2018, all from her Florida office. Bradley Decl. ¶¶ 15–22.

ConvenientMD found CTS. On July 27, 2014, Melissa Mavrogeorge, then a Clinic Manager at ConvenientMD, submitted an inquiry through the contact form on CTS's website. Bradley Decl. ¶ 28; Ex. 1. CTS did not solicit ConvenientMD's business. CTS, through Ms. Bradley answered in writing, explaining the Train-the-Trainer course did not license ConvenientMD to train its own collectors, and that a separate procedures course had to be purchased for each person it wished to train. Bradley Decl. ¶¶ 29–30; Ex. 1. Ms. Mavrogeorge replied then and purchased the course the next day. Bradley Decl. ¶¶ 31–32; Ex. 1; Ex. 2. After that, ConvenientMD kept enrolling.

CTS's records reflect fifty-four enrollments by fifty-three distinct ConvenientMD personnel between July 28, 2014 and January 9, 2025. Bradley Decl. ¶¶ 33–34, 38; Ex. 3. Twenty-nine of those enrollments came on or after November 2018, and eighteen came after CTS was organized as a Florida limited liability company in January 2021. Bradley Decl. ¶ 39; Ex. 3. Every enrollment by every Individual Defendant falls in the period after CTS moved to Florida. Bradley Decl. ¶ 39; Ex. 3. The enrollees were ConvenientMD's clinical-training

personnel, who enrolled in a ConvenientMD capacity. Bradley Decl. ¶ 37; Ex. 3; Doc. 21 ¶ 37. In fifty-two of the fifty-four records the enrollee entered ConvenientMD as the employer in CTS's own registration fields. Bradley Decl. ¶¶ 36–37; Ex. 3. Each enrollment was a transmission to CTS. To enroll, an individual sent CTS registration information, accepted CTS's Terms and Conditions, and submitted payment through the learning management system CTS administers from Florida. Bradley Decl. ¶¶ 18, 24, 26. Defendant Hall did all of this personally, and accepted the Collector Trainer Agreement in her own name. Bradley Decl. ¶ 42; Ex. 4. CTS never received payment for a single Component 1 or Component 2 procedures course for any collector a ConvenientMD trainer instructed. Bradley Decl. ¶ 51; Doc. 21 ¶ 40. CTS learned of ConvenientMD's internal use of the Course in March 2025 and sent a cease-and-desist letter on April 7, 2025. Doc. 21 ¶¶ 41, 46; Doc. 21-6. ConvenientMD responded by disclosing the training materials it had been using. Doc. 21 ¶¶ 47–49.

## ARGUMENT

Defendants ConvenientMD and Hall move on four grounds: no personal jurisdiction, improper venue, transfer to the District of New Hampshire under 28 U.S.C. § 1404(a), and failure to state a claim as to Counts IV through VII. Doc. 28 at 1. Whatever this Court does with those grounds, they cannot end this case. Two of the nine Defendants filed the motion, and its Fed. R. Civ. P. 12(b)(6) branch reaches only four of the eight counts.

On personal jurisdiction, CTS pleads a prima facie case and, once Defendants file affidavits, must produce evidence, though affidavit statements that are "in substance legal conclusions" do not trigger that duty. *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1276–77 (11th Cir. 2009) (quoting *Posner v. Essex Ins. Co.*, 178 F.3d 1209, 1215 (11th Cir. 1999)). On transfer, the burden is Defendants'. On Rule 12(b)(6), the Amended Complaint's allegations are taken as true and the inquiry is confined to its four corners. Defendants' motion rests on an evidentiary premise no declarant swears to, a legal premise their own authorities do not support, and a pleading standard drawn from a screening order in a pro se case.

## I. This Court Has Personal Jurisdiction Over Defendants.

### *A. Defendants Contest Only Due Process, and Their Own Conduct Establishes It.*

Jurisdiction over a nonresident requires two things: the exercise of jurisdiction must be authorized by Florida's long-arm statute, and it must comport with due process. *See Venetian Salami Co. v. Parthenais*, 554 So. 2d 499, 502 (Fla. 1989). CTS satisfies both.

The Amended Complaint sufficiently pleads jurisdiction over each Defendant under section 48.193(1)(a)2. and/or (1)(a)7., Florida Statutes. Doc. 21 ¶¶ 54–62. Defendants do not contend otherwise. Their memorandum only asserts that "regardless of the particular theory," CTS must show that the exercise of jurisdiction comports with due process. Doc. 28 at 4–5. Nor do Defendants'

three declarations contest the facts underlying the statutory showing. The statutory prong is unrebutted, and the only prong actually joined is due process.

CTS accepts the rule Defendants lead with. The minimum-contacts inquiry looks to "contacts that the defendant himself creates with the forum State." *Walden v. Fiore*, 571 U.S. 277, 284 (2014) (internal quotation marks omitted). The *Kinon* order Defendants cite states the settled rule that jurisdiction requires the defendant to have "purposefully direct[ed] his activities at residents of the forum state," Doc. 28 at 8, a formulation that says nothing about what a defendant knew of its counterparty's address. Purposeful direction is measured by conduct: "[t]he proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way." *Walden*, 571 U.S. at 290. The Eleventh Circuit applies that principle through a settled test: a nonresident's contacts are assessed "individually or collectively," and the question is whether they are such that the defendant "should reasonably anticipate being haled into court in the forum." *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1357 (11th Cir. 2013). That test applies "in contract and tort cases alike." *Id.* That rule decides this motion in CTS's favor, because the contacts here are Defendants' own.

ConvenientMD sought CTS out, and it kept coming back. It found CTS through CTS's own website in July 2014 and returned fifty-four times across eleven years. Twenty-nine of those transactions came on or after November 2018, when CTS's business was being directed from Florida. Bradley Decl. ¶¶ 6, 33–34,

39; Ex. 3. Every enrollment by every Individual Defendant, including Defendant Hall, falls in that period. Bradley Decl. ¶¶ 39, 43–44; Ex. 3; Ex. 4; Ex. 7a–7g. Not one of those acts was CTS's.

Defendants' entire theory is that they did not know CTS was in Florida. Their memorandum says so on nearly every page: CTS's Florida connection was "unilateral," "undisclosed," and "quietly" acquired. Doc. 28 at 5, 24. But a theory in a brief is not evidence, and not one of Defendants' three declarants swears to it. Defendant Hall's declaration attests to where she sat when she took the course. Doc. 28-1 ¶¶ 6–7. The Frost Declaration attests to where ConvenientMD operates and where its employees work. Doc. 28-2 ¶¶ 8–12. Neither addresses what ConvenientMD knew about CTS's location. Knowledge of the forum is the premise on which Defendants' argument rests, and they left it out of the only papers that could establish it. The Fenton Declaration has a different problem. It attaches archived captures of CTS's website from January 2014, May 2014, and April 2016, and then nothing until July 30, 2026, the day Defendants filed this motion. Doc. 28-3. The decade it skips is the decade in which every Individual Defendant enrolled.

There is a further difficulty with "undisclosed." Since January 2021, CTS's organization as a Florida limited liability company and its Florida principal address have been on file with the Florida Department of State. Bradley Decl. ¶ 7; Ex. 9. Eighteen ConvenientMD enrollments post-date that filing, among them the first enrollment of seven of the eight Individual Defendants. Bradley Decl. ¶ 39;

Ex. 3. Defendants proved the point themselves: the document they attached as Exhibit C5, offered to show a Tennessee mailing address, is a Florida annual report listing CTS's principal place of business in St. Petersburg and Ms. Bradley as its registered agent there. Doc. 28-3, Ex. C5. CTS contends that "undisclosed" is the wrong word for a fact filed with a Secretary of State and put before this Court by Defendants. This matters under the rule Defendants themselves invoke: the court credits "only those portions of the [affidavit] that set forth specific factual declarations within the affiant's personal knowledge." *Posner*, 178 F.3d at 1215.

Defendants also misquote their payment authority. They render *Venetian Salami* as holding that "the mere failure to pay money in Florida" does not "suffice to obtain jurisdiction over a nonresident defendant," Doc. 28 at 11, but the sentence reads that the court did "not believe that the mere failure to pay money in Florida, *standing alone*, would suffice to obtain jurisdiction over a nonresident defendant." 554 So. 2d at 503 (emphasis added).

CTS does not rest on payment standing alone. It rests on what Defendants transmitted to CTS: fifty-four times across eleven years, twenty-nine of them after CTS's business was being directed from Florida. Those transmissions are contacts of Defendants' own making. Physical presence is not required: entry into the forum "through an agent, goods, mail, or some other means" is "certainly a relevant contact." *Walden*, 571 U.S. at 285. And jurisdiction has been upheld over defendants who entered a contractual relationship that "envisioned continuing

and wide-reaching contacts" in the forum State. *Id.* (quoting *Burger King*, 471 U.S. at 479–80). Argument in a brief does not shift a burden. Only evidence does.

### B. *The Cases Defendants Rely On Involved Passive, One-Time Purchasers.*

Every case Defendants marshal involved a passive or isolated purchaser. The Eleventh Circuit has said what *Banton* decided: it "held only that when the defendant's sole contact with the forum is contracting with a forum resident, even a history of such transactions does not provide sufficient minimum contacts." *Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc.*, 593 F.3d 1249, 1271 (11th Cir. 2010) (discussing *Banton Indus., Inc. v. Dimatic Die & Tool Co.*, 801 F.2d 1283 (11th Cir. 1986)). ConvenientMD's contacts were not confined to the fact of contracting. *Marsh*, cited by Defendants, turned on the same absence: "Marsh's sole relationship with Queen[']s, as well as with other vendors in the state of Florida, was that of a purchaser." *Marsh Supermarkets, Inc. v. Queen's Flowers Corp.*, 696 So. 2d 1207, 1209 (Fla. 3d DCA 1997).

*Burke Products*, on which Defendants rely, reversed for want of jurisdiction, and the reason it did is the reason this case is different. Its test, drawn from *Marsh*, was whether the nonresident had "actively monitored" the Florida company's performance "and/or otherwise engaged themselves in the performance of the services in the state of Florida." *Burke Prods., Inc. v. Access Elecs., LLC*, 311 So. 3d 145, 149–50 (Fla. 2d DCA 2020) (internal citation omitted). Burke had not: "routine contact, in and of itself, is not enough." *Id.*

Burke was a purchaser pursuing one consolidated order, shipped in two lots on different dates.

ConvenientMD's participation was neither routine nor isolated. The transactions that bear on jurisdiction are the twenty-nine enrollments on or after November 2018, in each of which a ConvenientMD employee transmitted registration information, accepted CTS's license terms, and performed on the system CTS administers from Florida. Bradley Decl. ¶¶ 18, 24, 26, 36–37, 39; Ex. 3. *Diamond Crystal* catalogues the contacts that carry a nonresident buyer past passivity, among them "initiating the contractual relationship" and "establishing a relationship by placing multiple orders," while cautioning that those factors "are not talismans" and matter only as evidence that the defendant "deliberate[ly] affiliat[ed]" with the forum. 593 F.3d at 1268–69.

Defendants answer that the clickwrap never mentions Florida. Bradley Decl. ¶ 45. But the terms of the contract are one factor among four: the inquiry follows a "highly realistic approach" attentive to "prior negotiations, contemplated future consequences, the terms of the contract, and the actual course of dealing," and "[t]he focus must always be on the nonresident defendant's conduct." *Id.* at 1268. ConvenientMD's personnel did not merely place orders; they performed, on a system administered in Florida, twenty-nine times across seven years. That is the structure on which the Eleventh Circuit sustained jurisdiction in *Diamond Crystal* itself. The nonresident there was a California buyer that submitted repeated purchase orders to a Georgia seller, took

delivery in the forum, and paid into it; "by purposefully engaging in fourteen such transactions in just six months," it "established a substantial and ongoing relationship with a Georgia manufacturer." *Id.* at 1269. The court so held on a thinner record than this one, calling the case "close" because the buyer "never communicated directly with Diamond Crystal in Georgia" and the seller's "California agent initiated the overall relationship." *Id.* ConvenientMD did both.

ConvenientMD also paid. Eight cards each paid for the enrollments of more than one ConvenientMD employee, nearly half of the forty-nine charges in the record, and three were used only after November 2018, among them one card that paid for both Defendant Hall's and Defendant Cline's enrollments. Bradley Decl. ¶¶ 46–48; Ex. 5. CTS need not prove who owned the cards. Defendants' theory requires each enrollment to be an employee's own isolated act, and nearly half were paid on a card that also bought a colleague's seat. Neither declarant addresses payment at all. *Diamond Crystal* distinguishes the passive-purchaser cases on precisely this ground. 593 F.3d at 1270–71. *Banton*, *Marsh*, and *Burke* sit on that side of the line. ConvenientMD does not.

### ***C. Fair Play and Substantial Justice Favor This Forum, as Defendants' Own Authorities Show.***

Having directed their activities at Florida, Defendants must "present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985). The Eleventh Circuit states the same allocation: once the plaintiff establishes the first two prongs, "a defendant must make a 'compelling case' that

the exercise of jurisdiction would violate traditional notions of fair play and substantial justice." *Mosseri*, 736 F.3d at 1355. Doc. 28 never states that standard. It presents the five factors as an open balance for CTS to win. *Burger King* also answers the burden Defendants describe: "a defendant claiming substantial inconvenience may seek a change of venue." *Burger King*, 471 U.S. at 477. Defendants have done that, in the alternative, and there too the burden is theirs.

Their own authorities make the point. *R&R Games* sustained jurisdiction over four of the five movants and dismissed the fifth, a European distributor whose alleged infringement was directed at the United Kingdom; the sentence Defendants quote addresses that single defendant. *R&R Games, Inc. v. Fundex Games, Ltd.*, No. 8:12-cv-01957-JDW-TBM, Dkt. 74 at 15–16, 19 (M.D. Fla. Mar. 1, 2013). The same order states the rule that governs here: "[g]enerally, the burden imposed on out-of-state defendants is not unfair because modern transportation and communications have made it much less burdensome" to defend in another forum. *Id.* at 9 (quoting *Burger King*, 471 U.S. at 474) (internal quotation marks omitted). *Future Technology* was "a single telephone call, by the buyer of a service," and the state-interest sentence Defendants quote is qualified in the original: the court found no strong interest in haling people into Florida courts "for entering into one service arrangement, over the telephone without ever setting foot in Florida." *Future Tech. Today, Inc. v. OSF Healthcare Sys.*,

218 F.3d 1247, 1251 (11th Cir. 2000) (adopting and appending district court opinion). Twenty-nine transactions directed at Florida are the opposite pole.

Florida has a "manifest interest in providing its residents with a convenient forum for redressing injuries inflicted by out-of-state actors." *Burger King*, 471 U.S. at 473 (internal quotation marks omitted). Defendants answer that CTS's Florida connection is recent, and in doing so concede the rest: "during four of the eleven years at issue in this lawsuit, Plaintiff had zero alleged connection to Florida." Doc. 28 at 12. That leaves seven: the years holding twenty-nine enrollments, the first enrollment of every Individual Defendant, and Hall's own agreement. Bradley Decl. ¶¶ 39, 42; Ex. 3; Ex. 4. Defendants' remaining point is a mailing address: CTS's own annual report, and its own current website, list a Tennessee mailing address alongside CTS's Florida principal place of business. Doc. 28-3, Ex. C4, Ex. C5. A mailing address is not a place of business, and it says nothing about where the decisions, work, and records at issue in this case are made. Bradley Decl. ¶¶ 4, 9–22. The comparative burden runs against Defendants for the reasons set out in Part III.B, *infra*, and the fourth factor is the transfer analysis, where the burden is theirs and they have named none of their own witnesses. See Part III.A, *infra*. On the fifth, these are federal copyright claims; no State's substantive social policy is displaced by trying them in Florida, and a competing interest is not a superior one.

## II. Venue Is Proper Because Jurisdiction Is Proper.

Defendants concede the rule that decides venue on the copyright counts. 28 U.S.C. § 1400(a) permits suit where the defendant "may be found," which means, as Defendants put it, "a district which may assert personal jurisdiction over the defendant." Doc. 28 at 15 (quoting *Palmer v. Braun*, 376 F.3d 1254, 1259–60 (11th Cir. 2004)). Counts IV through VII are copyright claims, so Part I decides venue for every count Defendants attack on the merits, and CTS does not contend otherwise.

28 U.S.C. § 1391(b)(2) asks whether a substantial part of the events giving rise to the claim occurred in this district, and it imposes two limits, relevance and substantiality, not the escalated contacts test Defendants describe. *Jenkins Brick Co. v. Bremer*, 321 F.3d 1366, 1371–72 (11th Cir. 2003) (disapproving a venue analysis whose "flavor was that of a 'minimum contacts' personal jurisdiction analysis rather than a proper venue analysis," and approving one "which considered as relevant only those acts and omissions that have a close nexus to the wrong"). The "even greater level of relevant activities" formulation Defendants press comes not from *Jenkins Brick* but from an unpublished district court decision citing it. Doc. 28 at 15. For Counts IV through VII, in any event, section 1400(a) is the governing venue provision, and Part I answers it.

The same facts satisfy § 1391(b)(2) for the counts to which § 1400(a) does not extend. The Amended Complaint alleges that a substantial part of the events giving rise to those counts occurred in this District because CTS administered

from Florida the platform and licensing program through which each Defendant transacted, and each Defendant transmitted the enrollment and course-access communications this case turns on into that platform. Doc. 21 ¶ 64. The record bears this out: each of the twenty-nine post-November 2018 transactions already at issue in Part I was a transmission, through the system CTS administers from Florida, of registration information and an acceptance of CTS's license terms. Bradley Decl. ¶¶ 18, 24, 26, 39. Those events directly give rise to the breach and unjust-enrichment claims and Florida hosts them under either party's account. *Jenkins Brick*, 321 F.3d at 1371–72.

## III. Defendants Have Not Carried Their Burden to Transfer.

### *A. Defendants Identify No Witness of Their Own and No Testimony, Which Is the Showing Section 1404(a) Requires.*

Section 1404(a) places the burden on the movant. *In re Ricoh Corp.*, 870 F.2d 570, 573 (11th Cir. 1989). A transfer motion is evaluated against nine factors. *Manuel v. Convergys Corp.*, 430 F.3d 1132, 1135 n.1 (11th Cir. 2005). Defendants brief two of them. The order Defendants themselves rely on applied that rule, and the movants there failed it because they had "considered only the witnesses relevant to the claims against" two defendants and "failed to consider the convenience of witnesses relevant to the claims against the other Defendants . . . ." *R&R Games*, Dkt. 74 at 17.

The first is the one they call "most important": the convenience of witnesses. Doc. 28 at 18. That factor requires a specific showing of who the witnesses are and what they are expected to say, and Defendants supply neither.

Their memorandum identifies none of its own witnesses by name, and the Frost Declaration speaks only in categories: "all such instructors," "all . . . employees." Doc. 28-2 ¶¶ 10–12. A court cannot weigh the inconvenience of testimony it has not been told about. Defendants also invoke Rule 45(c)'s geographic limit, Doc. 28 at 18, but that limit cannot be applied to witnesses who have not been identified, and the rule they invoke reaches a party's officers anywhere in the state. Fed. R. Civ. P. 45(c)(1)(B)(i).

### *B. CTS's Choice of Forum Is Entitled to Deference, and Transfer Would Merely Shift the Burden.*

A plaintiff's choice of its home forum is entitled to deference, In re Ricoh, 870 F.2d at 573, and it is the eighth of the nine section 1404(a) factors. *Manuel*, 430 F.3d at 1135 n.1. Applying that factor, the court in *R&R Games* held that the plaintiff's choice of forum "weighs heavily against transfer." Dkt. 74 at 18. Defendants' transfer argument never mentions it.

The convenience Defendants invoke is in substantial part their own and that of ConvenientMD's personnel, whom Defendants call its "current or former employees." Doc. 28 at 2. Transfer would redistribute burden, not reduce it, and the redistribution would not be even. Bradley Decl. ¶¶ 53, 56. Ms. Bradley is CTS's only employee and its witness on the matters at issue, and no one can perform her work in her absence. Bradley Decl. ¶¶ 52, 54. Litigating in New Hampshire would require her to travel there repeatedly at CTS's expense, taking CTS's only employee away from running the business each time, and she has chronic health conditions that make repeated long-distance travel materially

more difficult. *Id.* ¶¶ 55, 57–58. CTS has no office, no personnel, and no regular business in New Hampshire. *Id.* ¶ 59. ConvenientMD, by contrast, operates facilities across three states, Doc. 28-2 ¶ 5, and swears that the documents it would produce sit at its own headquarters, where they will sit whichever forum tries this case. *Id.* ¶¶ 13–14. A transfer that puts a heavier burden on the plaintiff than it lifts from the movant serves neither convenience nor the interest of justice.

### *C. The Operative Facts Are Not Confined to New Hampshire.*

Defendants' second factor is the location of operative facts. They include what ConvenientMD's personnel transmitted to CTS, into the learning management system CTS administers from Florida, on twenty-nine occasions after CTS's business was being directed from that state, the license terms they accepted there, and the per-collector fees Defendants never paid a payee located here. This factor does not point in a single direction. Defendants' choice-of-law point reaches only Counts I through III, which this motion does not challenge, and it rests on the premise that the "last act" was Defendant Hall's click in New Hampshire. Doc. 28 at 19 n.12. Their declarations establish that premise for Defendant Hall alone.

## IV. Counts IV Through VII State Claims for Relief.

### *A. The Amended Complaint Pleads Both Elements, Including Verbatim Reproduction of the Registered Deposit Materials.*

Fed. R. Civ. P. 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," and a complaint survives

dismissal when its factual content permits the reasonable inference that the defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009). To state a claim for copyright infringement, a plaintiff must plead two elements: "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Latimer v. Roaring Toyz, Inc.*, 601 F.3d 1224, 1232–33 (11th Cir. 2010) (quoting *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991)). The Amended Complaint pleads both. CTS alleges ownership of the Works, which Defendants do not appear to dispute. Doc. 21 ¶¶ 12–13, 105–08, 124–27; Doc. 21-1; Doc. 21-2. Their argument is directed at the second element.

On copying, the Amended Complaint pleads reproduction rather than inference. After CTS sent its cease-and-desist letter, ConvenientMD disclosed the training materials it was using, among them documents that are "word-for-word verbatim reproductions" of CTS materials forming part of the deposit materials CTS submitted to the Copyright Office in support of its registrations, reproductions of "pages of the deposit copy" itself. Doc. 21 ¶¶ 47–49, 114. Those documents are not evidence of access; they are copies of CTS's protected expression, produced by ConvenientMD and described by it as materials it was using to conduct the trainings alleged. *Id.* ¶¶ 49, 114.

Defendants ask the Court to apply a different standard: that CTS "must also plead facts that show that the similarities between the copyrighted work and the alleged copy are 'copyrightable material.'" Doc. 28 at 20. The only support

offered is an unpublished report and recommendation, adopted without objection, dismissing an unrepresented litigant's second amended complaint. *Henderson v. Starz Entm't, LLC*, No. 8:25-cv-02561-MSS-NHA (M.D. Fla. May 19, 2026), ECF No. 20, *report and recommendation adopted*, ECF No. 22 (M.D. Fla. June 9, 2026). What Defendants describe is the filtration of unprotectable elements from a work before comparing it to the accused copy, and it is a comparison made on a record, not a pleading element. On summary judgment, where the accused copies were "indistinguishable" from the original, "substantial similarity is not at issue." *Latimer*, 601 F.3d at 1233. The Amended Complaint pleads that reproduction and identifies the pages. Doc. 21 ¶¶ 47–49, 114. Nothing more is required to state a claim.

### *B. The Originality Argument Is a Merits Defense, Not a Pleading Defect.*

Defendants' remaining argument is that CTS's works are "highly likely" to incorporate uncopyrightable regulatory text. Doc. 28 at 22. The adverb is the argument's measure: whether and to what extent CTS's registered works incorporate pre-existing material is a question of fact, not one resolved on the pleadings. A registration's disclaimer of pre-existing and third-party text narrows what CTS claims; it does not defeat what remains. CTS does not oppose judicial notice of the Department of Transportation's published guidelines, Doc. 28 at 22 n.14; noticing what the government published establishes nothing about what CTS's registered works contain.

### ***C. Count V Pleads Access, and the Indirect Counts Rise With the Direct.***

Count V does not stack inferences. The Amended Complaint pleads the 2023 Edition's incorporation into the Course and the enrollees' post-publication access to that Course. Doc. 21 ¶¶ 124–31. *Phoenix Entertainment*, on which Defendants rely, was a trademark case. It recommended denying a default judgment, without prejudice, because the complaint's Lanham Act allegations rested on conclusory statements made on information and belief. *Phoenix Ent. Partners, LLC v. Orlando Beer Garden, Inc.*, No. 6:16-cv-80-Orl-31DAB (M.D. Fla. Mar. 30, 2016), ECF No. 16, *report and recommendation adopted*, ECF No. 18 (M.D. Fla. Apr. 18, 2016). Nor does Count V rest on the pleading *Phoenix* condemned. Here the qualifier in Doc. 21 ¶ 130 attaches to a single link, the 2023 Edition's incorporation into the Course from its publication date, while the facts that make access follow are pleaded flatly: Defendants Tereshchuk, Willey, and Cline enrolled in and accessed the Course through CTS's Florida-based learning management system after January 23, 2023, and affirmatively agreed to its governing license terms. Doc. 21 ¶¶ 129–30. Counts VI and VII require an underlying act of direct infringement, and Defendants advance no independent argument as to them. Those counts stand with Counts IV and V.

WHEREFORE, CTS respectfully requests that this Court deny Defendants ConvenientMD, LLC and Marie Hall's Motion to Dismiss, or to Transfer Venue, in its entirety. In the alternative, and only if the Court finds any portion of the Amended Complaint deficient, CTS respectfully requests leave to amend.

Dated: August 20, 2026.

Respectfully submitted,

/s/ Julia Hannah Weber
Julia Hannah Weber
Florida Bar No. 1045592
Joseph F. Southron, Esq.
Florida Bar No. 122109
**SOUTHRON FIRM, P.A.**
400 N. Ashley Drive, Suite 1720
Tampa, Florida 33602
Tel. (813) 773-5105
Fax (813) 683-4338
julia.weber@southronfirm.com
joe@southronfirm.com
eservice@southronfirm.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on August 20, 2026, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

/s/ Julia Hannah Weber
Julia Hannah Weber