**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

CERTIFIED TRAINING SOLUTIONS, LLC,

Plaintiff,

v. Case No.: 8:26-cv-01156-CEH-CPT

CONVENIENTMD, LLC, DIANE WILLEY,
MARIE HALL, CAITLIN MORSE,
MELODY BARRY, DEREK NELSON,
KATELYN DALTON, DIANA TERESHCHUK,
and VICTORIA CLINE,

Defendants.
_______________________________/

**DECLARATION OF LISA J. BRADLEY IN SUPPORT OF RESPONSE IN OPPOSITION TO DEFENDANTS CONVENIENTMD, LLC AND MARIE HALL'S MOTION TO DISMISS, OR TO TRANSFER VENUE**

I, Lisa J. Bradley, pursuant to 28 U.S.C. § 1746, declare under penalty of perjury that the following is true and correct:

1. My name is Lisa J. Bradley. I am over the age of eighteen (18) and competent to testify to the matters stated herein.

2. I make this declaration in opposition to the Motion to Dismiss, or to Transfer Venue filed by Defendants ConvenientMD, LLC and Marie Hall. Doc. # 28. I make it on my personal knowledge, and on the business records of Plaintiff Certified Training Solutions, LLC ("CTS") made at or near the time of the events they record, by or from information transmitted by persons with knowledge, and kept in the regular course of CTS's business. I am the person at CTS who creates,

administers, and maintains those records. If called as a witness, I could and would testify to the statements made herein.

3. I am the owner and President of CTS, a Florida limited liability company. I direct and control CTS's operations, including the creation of its training materials, the administration of its learning management system, and its licensing program. Doc. # 21 at ¶¶ 1, 6.

4. I am an individual residing in Pinellas County, Florida.

5. I have resided in Florida since November 2018. The State of Florida issued my first Florida driver license on November 28, 2018. A true and correct copy of that license is attached as Exhibit 6.

6. Before I moved to Florida, CTS operated as a sole proprietorship that I ran from Tennessee, where I then lived. Since 2018, I have directed and controlled CTS's business from Florida. Doc. # 21 at ¶¶ 7–8.

7. CTS was organized as a Florida limited liability company in January 2021, with its principal office in Pinellas County, Florida. Doc. # 21 at ¶ 7. A true and correct copy of CTS's Articles of Organization, filed with the Florida Department of State in January 2021, is attached as Exhibit 9.

8. CTS's 2026 Florida Limited Liability Company Annual Report, filed with the Florida Secretary of State on January 16, 2026, lists CTS's current principal place of business as 222 41st Avenue NE, St. Petersburg, Florida 33703. I am CTS's registered agent at that address. Doc. # 28-3 at Ex. C5.

9. I maintain a home office at my residence in Pinellas County, Florida, and I perform CTS's work from that office.

10. I make CTS's decisions concerning its training courses, its copyrighted materials, its license terms, its pricing, and the enforcement of its licenses. I make those decisions in Florida.

11. I am CTS's only employee.

12. The individual identified as CTS's Chief Financial Officer on CTS's 2026 Florida Annual Report was an independent contractor, not an employee of CTS. His engagement with CTS began in May 2025 and ended in March 2026. He holds no position with CTS and performs no work for CTS. He had no involvement in any of the enrollments or payment transactions reflected in Exhibits 3 and 5, each of which predates his engagement. Doc. # 28-3 at Ex. C5.

13. CTS's "Train-the-Trainer" Urine Specimen Collector Course (the "Course") is one of CTS's core offerings. I directed the creation of the Course materials and of the copyrighted works titled "Urine Specimen Collection" and "Urine Specimen Collection 2023 Edition" (together, the "Works"). Doc. # 21 at ¶¶ 9–12.

14. CTS is the owner of the Works. The Works are registered with the United States Copyright Office under Registration Nos. TX 9-544-174 and TX 9-573-404. Doc. # 21-1; Doc. # 21-2.

15. I authored the Course content myself. I write the text of the Course's module pages, its examination items, and its interactive instructional scenarios; I

select, license, or create the images that accompany that text; and I publish the resulting content in SCORM format using course-authoring software installed on my laptop computer. Since 2018, I have performed that work in Florida.

16. The Works are maintained, revised, and updated under my direction. I monitor changes to the federal regulations governing specimen collection and revise the Course and its accompanying materials accordingly. Since 2018, that work has been performed in Florida.

17. The Course is delivered exclusively through CTS's learning management system (the "LMS"). CTS licenses the underlying LMS platform from a third-party vendor for an annual fee. CTS administers its own instance of that platform, and I perform that administration.

18. Administering CTS's LMS consists of, among other things: building and configuring each course within the platform; uploading the published course files; configuring the enrollment, pricing, access-period, bookmarking, and pass-and-fail settings for each course; creating and maintaining the certificate templates and issuing and reissuing completion certificates; publishing CTS's Terms and Conditions within the platform and within the courses themselves; and generating and reviewing CTS's enrollment, sales, and student-history records. I direct that work, and I perform the great majority of it myself; CTS also retains contractors who assist with limited administrative tasks under my direction. Since 2018, that work has been performed under my direction from Florida.

19. I also build and maintain CTS's website, including the pages describing each course and the purchase buttons on those pages, and I connected CTS's website to the LMS storefront and to CTS's payment processor so that a purchaser receives access to the purchased course immediately upon payment. I have done the majority of that work myself, with occasional assistance from contractors I have retained for discrete tasks. Since 2018, I have directed that work from Florida.

20. I wrote CTS's Terms of Use and Terms and Conditions, and I published them on CTS's website, within CTS's LMS, and within the courses themselves. Every version published since 2018 was written and published by me in Florida.

21. I set CTS's course pricing and I revise it as market conditions change. Since 2018, I have made those decisions in Florida.

22. CTS's records of enrollments, purchases, payments, and users' acceptance of CTS's Terms and Conditions are maintained electronically in systems I administer (CTS's instance of the LMS and CTS's payment-processor account) together with CTS's own electronic files. I access, manage, and produce those records from my home office in Pinellas County, Florida, and have done so since 2018.

23. Every enrollment by ConvenientMD personnel described below was made online, by the enrollee or by a person purchasing on the enrollee's behalf, without intervention by me or by anyone else at CTS. Neither I nor anyone else

on CTS's behalf traveled to New Hampshire, or anywhere else, to solicit, negotiate, or complete any of those transactions.

24. To enroll in the Course, a person: (a) clicks a purchase button on a course page of CTS's website; (b) is taken to the storefront within CTS's LMS; (c) creates a CTS account or logs into an existing CTS account, on a page that displays a link to CTS's Terms and Conditions; (d) is shown the course in the cart, on a page that again displays a link to CTS's Terms and Conditions; (e) enters payment card information on a page that again displays a link to CTS's Terms and Conditions; and (f) on the final confirmation page, before the purchase is completed, is presented with the statement "By clicking Complete Purchase you are indicating that you have read and agree to the Terms & Conditions," together with a further link to those Terms. Doc. # 21 at ¶¶ 16, 22, 34.

25. A person purchasing on behalf of another selects an option to purchase in bulk or for another person and enters the intended enrollee's email address.

26. Enrolling in the Course therefore requires the enrollee, or the person purchasing for the enrollee, to transmit to CTS through CTS's LMS: registration information; the enrollee's acceptance of CTS's Terms and Conditions and license; and payment card information. After enrollment, CTS delivers the Course to the enrollee through that same system, and CTS issues the enrollee a completion certificate on successful completion. I do not recall any material change in this process between 2014 and 2025.

27. After completing a purchase, CTS's LMS directs each enrollee to a Student Profile page that requests the enrollee's name, employer, job title, and telephone number. Entry of the employer, job title, and telephone number is voluntary. Those entries, when made, are transmitted to CTS and are retained in CTS's records.

28. ConvenientMD initiated its relationship with CTS. On July 27, 2014, Melissa Mavrogeorge, then a Clinic Manager at ConvenientMD, submitted an inquiry through the contact form on CTS's website. Her submission gave the email address mmavrogeorge@convenientmd.com, the telephone number 603-890-6330, and the address 8 Loudon Rd., Concord, New Hampshire 03301. A true and correct copy of the resulting email thread is attached as Exhibit 1. CTS did not solicit ConvenientMD's business. Doc. # 21 at ¶ 14.

29. I answered Ms. Mavrogeorge's inquiry the same day. She and I exchanged four messages that afternoon, within approximately thirty-three minutes, and she purchased nothing that day. Exhibit 1.

30. In that exchange, and before Ms. Mavrogeorge purchased anything, I told her in writing that CTS's Train-the-Trainer course "does not give you the materials to use to train others fully ... it does not give you -- or allow you to print or use -- our procedures training course"; that the course instead "prepares you to act as the qualified monitor for other collectors who need their proficiency demonstration witnessed only"; and that "you will still need to purchase (at a

discount) one of our online Procedures Training courses for each person you wish to 'train.'" Exhibit 1; Doc. # 21 at ¶ 15.

31. Ms. Mavrogeorge replied the same afternoon, in writing, that she had reread my email and that it had given her the answer to her question. Exhibit 1.

32. CTS's records reflect that Ms. Mavrogeorge purchased CTS's Train-the-Trainer course the following day, July 28, 2014. A true and correct copy of the purchase confirmation CTS's system issued to her is attached as Exhibit 2.

33. Attached as Exhibit 3 is a true and correct copy of a report I generated from CTS's LMS on August 18, 2026, identifying enrollments in CTS's Train-the-Trainer courses by ConvenientMD personnel.

34. Exhibit 3 reflects not fewer than fifty-four (54) enrollments by ConvenientMD personnel between July 28, 2014 and January 9, 2025, by not fewer than fifty-three (53) distinct individuals.

35. I state those figures as minimums because CTS can identify an enrollment as a ConvenientMD enrollment only where the enrollee used a ConvenientMD email address or entered ConvenientMD as the employer in their Student Profile. An enrollee who did neither would not appear in Exhibit 3. Five of the fifty-four enrollees identified in Exhibit 3 used a personal email address while entering ConvenientMD as their employer in their Student Profile.

36. In fifty-two of the fifty-four enrollment records in Exhibit 3, the enrollee entered ConvenientMD as the employer, in one of the following forms: "ConvenientMD," "ConvenientMD LLC," "ConvenientMD Urgent Care," "ConvenientMD Urgent," "Convenient MD," "Convenient Md," and "Convenientmd."

37. The enrollees identified in Exhibit 3 also entered job titles reflecting roles in ConvenientMD's clinical and training operations (among them Clinic Manager, Practice Manager, RN Practice Manager, Clinic Lead RN, Regional Clinical Lead, Regional Clinical Lead for Northern & Central NH, Regional Clinical Training Lead, Regional Clinical Trainer, Regional Administrative Lead Training Supervisor, Regional Training Supervisor, Regional Trainer, Maine Regional Trainer, Lead Trainer, Clinical Learning Manager, Clinical Educator, District Clinical Educator, Registered Nurse, Medical Assistant, and Radiologic Technologist), together with telephone numbers. Doc. # 21 at ¶¶ 25, 37.

38. ConvenientMD personnel enrolled in a CTS Train-the-Trainer course in every calendar year from 2014 through 2025. Exhibit 3; Doc. # 21 at ¶ 39.

39. Twenty-nine of those fifty-four enrollments, by twenty-eight distinct individuals, occurred on or after November 2018. Eighteen occurred on or after January 2021, when CTS was organized as a Florida limited liability company. Each of the eight Individual Defendants enrolled on or after November 2018, and each has at least one enrollment on or after January 2021. Exhibit 3.

40. Each of those enrollments was a transmission to CTS of the kind described in paragraphs 23 through 27 above: registration information, an acceptance of CTS's Terms and Conditions and license, and payment.

41. ConvenientMD personnel also contacted CTS after enrolling. On March 12, 2021, ConvenientMD employee Nicole ("Nikki") Juliano emailed CTS asking that the name on her training certificate be corrected to her legal name, and CTS made the correction the same day. Doc. # 21 at ¶ 39; Exhibit 8 at p. 1.

42. Attached as Exhibit 4 is a true and correct copy of CTS's record of Defendant Marie Hall's acceptance of CTS's Collector Trainer Agreement. Defendant Hall enrolled in the Course and accepted that agreement, in her own name, on February 17, 2021. Doc. # 21 at ¶ 24. In her enrollment record she entered ConvenientMD as her employer and gave a New Hampshire telephone number, 603-397-3224. Exhibit 3. Ms. Hall also contacted CTS again on December 22, 2022, using an online form to request pricing and information about CTS's Breath Alcohol Technician (BAT) training course, an offering separate from the Train-the-Trainer course described above. Exhibit 8 at p. 1.

43. Attached as Exhibits 7a through 7g are true and correct copies of CTS's records of the acceptance of CTS's Collector Trainer Agreement by Defendants Diane Willey, Caitlin Morse, Melody Barry, Derek Nelson, Katelyn Dalton, Diana Tereshchuk, and Victoria Cline, on the dates reflected in those records.

44. In their enrollment records, Defendant Barry entered her title as Regional Clinical Lead; Defendant Dalton as Regional Clinical Lead; Defendant Nelson as Regional Clinical Training Lead; Defendant Tereshchuk as Clinical Educator; Defendant Cline as District Clinical Educator – Maine; Defendant Willey as District Clinical Educator; and Defendant Morse as "R.T(R)." Each also entered ConvenientMD as employer. Exhibit 3; Doc. # 21 at ¶ 25.

45. CTS's Terms and Conditions do not specify a place of payment. No version of CTS's Terms and Conditions in use between 2014 and 2025 identified any location at which payment was to be made. I wrote and published each of those versions. Doc. # 21 at ¶ 56; Doc. # 21-3; Doc. # 21-4; Doc. # 21-5.

46. Attached as Exhibit 5 is a true and correct copy of a report of payment transactions associated with ConvenientMD enrollments that I generated from CTS's payment-processor records on August 18, 2026. CTS's courses are purchased online and its payments are processed by Stripe. Exhibit 5 is drawn from CTS's payment records and is separate from Exhibit 3, which is drawn from CTS's learning management system. Exhibit 5 reflects only transactions by enrollees who used a ConvenientMD email address, and it therefore does not include the five enrollments described in paragraph 35 above. It reflects forty-nine completed transactions.

47. Exhibit 5 identifies the payment card used for each transaction by an identifier that CTS's payment processor assigns to a unique payment card. Eight of those card identifiers each appear on the enrollment charges of more than one

ConvenientMD enrollee. Those eight cards account for twenty-four of the forty-nine completed charges reflected in Exhibit 5. Three of the eight cards were used only for charges dated on or after November 2018, and those three cards account for eleven of the twenty-four charges.

48. Among the eight:

a. One card paid for the enrollments of five ConvenientMD enrollees between February 16, 2021 and January 9, 2025, including Defendant Hall's enrollment on February 17, 2021 and Defendant Cline's enrollment on January 9, 2025. Exhibit 5.

b. One card paid for the enrollments of four ConvenientMD enrollees between February 25, 2015 and November 4, 2016. On two of those four charges the cardholder name is recorded as "Emily Mock." On the other two it is recorded with ConvenientMD's name appended: "Emily Mock ConvenientMD" on the September 21, 2015 charge and "Emily Mock, ConvenientMD" on the November 4, 2016 charge. Exhibit 5.

c. One card, bearing the cardholder name "Kathryn Bolduc," paid for the enrollments of three ConvenientMD enrollees on December 14, 2015, November 21, 2016, and July 11, 2017. CTS's records do not reflect any enrollment in the Course by a person of that name. Exhibit 5.

d. One card paid for the enrollment of ConvenientMD enrollee Staci Gifford on July 29, 2014 and for the enrollment of ConvenientMD enrollee Brittany Mallette on August 12, 2014. The cardholder name is recorded as "Staci Gifford" on the first charge and as "Staci Gifford Convenient MD" on the second. Exhibit 5.

e. One card paid for the enrollment of ConvenientMD enrollee Melinda Noel and for the enrollment of ConvenientMD enrollee Rusty Pernell. Both charges were made on January 26, 2018, minutes apart. The cardholder name is recorded as "Melinda Noel" on both. Exhibit 5.

f. One card paid for the enrollments of four ConvenientMD enrollees between March 3, 2020 and August 28, 2020. Exhibit 5.

g. One card paid for the enrollments of two ConvenientMD enrollees on consecutive days, April 2 and April 3, 2019. Exhibit 5.

h. One card paid for the enrollments of two ConvenientMD enrollees, on August 30, 2018 and October 14, 2019. Exhibit 5.

49. In addition, the card used to pay for ConvenientMD enrollee Christopher Munroe's December 1, 2015 enrollment bears the cardholder name of a different ConvenientMD enrollee, Kali Maltese, who had enrolled on October 21, 2014 using a different card. Exhibit 5.

50. Exhibit 5 records a cardholder name for every transaction it reflects through January 26, 2018, and records no cardholder name for any transaction from August 30, 2018 forward. Four of the eight cards described in paragraph 48 above therefore carry a recorded cardholder name and four do not. On three of the charges paid by those eight cards, the recorded cardholder name includes ConvenientMD's name: "Staci Gifford Convenient MD" on the August 12, 2014 charge, "Emily Mock  ConvenientMD" on the September 21, 2015 charge, and "Emily Mock, ConvenientMD" on the November 4, 2016 charge. A further charge, dated November 11, 2014, for the enrollment of ConvenientMD enrollee Michal Gamliel, records the cardholder name "Michal Gamliel ConvenientMD"; that card paid for no other enrollment. I do not know who owned or issued any of the cards reflected in Exhibit 5. I state only what CTS's records show.

51. CTS never received from ConvenientMD, or from any of its employees, payment for the Component 1 procedures courses required for the additional trainees to whom ConvenientMD's Train-the-Trainer licensees provided hands-on proficiency training, and CTS never received the

corresponding Component 2 procedures training fees for any ConvenientMD employee to whom a Train-the-Trainer licensee provided such training. Doc. # 21 at ¶ 40.

52. I am the person at CTS with knowledge of the creation, ownership, registration, and administration of the Works, and of CTS's enrollment, purchase, payment, and licensing records. I perform that work from Florida, and I would be the CTS witness to testify about those matters.

53. Requiring CTS to litigate this case in the District of New Hampshire would impose a substantial burden on CTS and on me.

54. I am CTS's only employee and I operate CTS from my home in Florida. CTS has no separate office. I retain contractors who provide limited administrative support, including answering CTS's business telephone line, but no one else performs the substantive work described in this declaration, and no one else can do that work in my absence.

55. Litigating in New Hampshire would require me to travel repeatedly between Florida and New Hampshire, and would require CTS to bear airfare, ground transportation, lodging, meals, and related expenses on each occasion, in addition to the effect of taking CTS's only employee away from the day-to-day operation of the business.

56. CTS is a small, single-employee business that I operate from my home. It does not have the staffing, infrastructure, or financial resources of a multi-location company such as ConvenientMD, and CTS's annual revenue is a

fraction of ConvenientMD's. Travel and litigation expenses that a company of ConvenientMD's size can absorb as a routine cost would represent a significant burden on CTS and on me personally. Requiring CTS to litigate in New Hampshire would therefore impose a substantially greater relative burden on CTS than litigating in Florida imposes on ConvenientMD.

57. I live alone and there is no one in my household who can assume my personal responsibilities while I am away.

58. I have chronic health conditions that make repeated long-distance travel materially more difficult for me than it would otherwise be.

59. CTS has no office in New Hampshire, Massachusetts, or Maine, no employees located in any of those states, and no regular in-person business in New Hampshire, Massachusetts, or Maine. I did not travel to New Hampshire, Massachusetts, or Maine to solicit or initiate the relationship with ConvenientMD. ConvenientMD contacted CTS.

60. CTS's records relating to the Works and to the ConvenientMD enrollments are maintained as described above, in systems I administer from my home office in Pinellas County, Florida.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on: August 20, 2026

By: *Lisa J. Bradley*
Lisa J. Bradley