**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

Certified Training Solutions, LLC

Plaintiff

v. Case No.: 8:26-cv-01156

ConvenientMD, LLC, Diane Willey,
Marie Hall, Caitlin Morse,
Melody Barry, Derek Nelson,
Katelyn Dalton, Diana Tereshchuk,
and Victoria Cline,

Defendants.
_________________________/

**DEFENDANTS CONVENIENTMD, LLC AND MARIE HALL'S**
**REPLY ISO MOTION TO DISMISS, OR TO TRANSFER VENUE**

Defendants ConvenientMD, LLC and Marie Hall (together, "Defendants") file this Reply in further support of Defendants' Motion to Dismiss the Amended Complaint, or to Transfer Venue. Along with this Reply, Defendants file Supplemental Declarations of Marie Hall and Aaron Fenton ("Hall Supp. Declaration" and "Fenton Supp. Declaration," attached as Exhibit A and Exhibit B).

In the Declaration of Lisa Bradley ("Bradley Declaration"), Bradley attests that CTS moved to Florida in November 2018, and that twenty-nine ConvenientMD employees subsequently enrolled in CTS courses. *See* Bradley

Declaration ¶¶ 5-6, 33-34, 39, Exh. 3.[1] In the Opposition, Plaintiff identifies these twenty-nine enrollments as the "transactions that bear on jurisdiction." Dkt 37, p. 9. However, Plaintiff never alleged that that Defendants knew their counterparty in these twenty-nine transactions had any connection to Florida, nor any facts that could support such a conclusion. And Plaintiff alleges that Defendants' role in these transactions was merely that of an arms-length purchaser of CTS's services. For each of these reasons, Plaintiff fails to satisfy its "initial burden of alleging . . . sufficient facts to make out a *prima facie* case of [Florida] jurisdiction." *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009).

## I. Plaintiff Did Not Allege That Defendants Had Knowledge of CTS's Florida Connection.

Plaintiff first falls short because it did not allege that Defendants knew—or could have "reasonably anticipated"—that CTS had any connection to Florida. Plaintiff alleges that Defendants had "minimum contacts" with Florida based entirely on their interactions with CTS, so knowledge of CTS's Florida affiliation is a prerequisite to exercising personal jurisdiction there. For example, as Plaintiff's cited case explains:

> Under the minimum contacts test . . . we assess the nonresident defendant's contacts with the forum state and ask whether those contacts . . . are such that the defendant should *reasonably anticipate being haled into court* in the forum.

[1] Bradley also alleges that twenty-five ConvenientMD employees enrolled in courses prior to November 2018, while CTS was still based in Tennessee. *See id.*

*Louis Vuitton Malletier, S.A. v. Mosseri,* 736 F.3d 1339, 1357 (11th Cir. 2013) (emphasis added).[2] Applying this test, reason dictates that if an out-of-state defendant contacts a plaintiff who has undisclosed ties to Florida, then such defendant would have no reason to "anticipate" being "haled into court" in Florida on the basis of that contact.[3]

Nonetheless, Plaintiff did not allege a single fact that would cause Defendants to "reasonably anticipate" any connection to Florida. Notably, Plaintiff (i) did not allege that Defendants had actual knowledge that CTS moved to Florida; (ii) admits that the alleged contract never mentioned Florida; and (iii) alleged no reasonably-available avenue through which Defendants could have uncovered that CTS was operating from Florida (for example, a Florida address on the CTS website). *See generally,* Dkt 21; *see* Bradley Declaration ¶ 45.[4] And although

---

2 *See also, e.g., Licciardello v. Lovelady,* 544 F.3d 1280, 1284 (11th Cir. 2008) (minimum contacts requires "contact with the state [] such that [the defendant] has 'fair warning' that he may be subject to suit there"; which requires that the defendant "purposefully directed his activities at residents of the forum," such that he "could have reasonably anticipated being sued in the forum's courts") (citations omitted).

3 The connection between knowledge and the "haled into court" analysis is also regularly featured in the Supreme Court's opinions. *See, e.g.*, *Calder v. Jones*, 465 U.S. 783, 790-91 (1984) (defendant's conduct was "expressly aimed at California," so defendant "must reasonably anticipate being haled into court there"); *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 781 (1984) (defendant knew that it made sales in New Hampshire, so "[t]here is no unfairness in calling it to answer" for liability there); *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 480 (1985) (rejecting lower court's reasoning because it "overlooks . . . that [defendant] most certainly knew that he was affiliating himself with an enterprise based primarily in Florida.").

4 Plaintiff briefly mentions that, after January 2021, an inquiry to the Florida Secretary of State could have uncovered CTS's corporate filings. *See* Dkt 37, pp. 7-8. But Plaintiff does not appear to argue that this afforded knowledge of CTS's Florida affiliation to Defendants, and Plaintiff has offered no factual allegations that would support such an argument (*i.e.*, allegations of circumstances that would have given Defendants actual or constructive notice of those filings).

Plaintiff bears the burden of alleging and substantiating Defendants' knowledge, Defendants have nonetheless conducted their own investigation, and have submitted evidence showing that the CTS website actively disclaimed any Florida connection at all times between 2018 and 2026, by instead advertising its address as being located in *Tennessee*. *See* Fenton Supp. Declaration, ¶ 5 (showing website each year from 2018 to 2025); Dkt 28, Exh. C (Fenton Declaration), ¶ 6 (showing website in 2026). These submissions refute any (unalleged) implication of possible knowledge, showing that the place where Defendants allegedly interacted with CTS—the CTS website—made no reference to Florida.

Plaintiff also argues that Defendants' Declarations do not directly state their lack of "knowledge of the forum." *See* Dkt 37, p. 6. Again, Plaintiff has the initial burden of alleging the "knowledge" necessary for personal jurisdiction; because it has not done so, Defendants had (and have) no obligation to affirmatively disclaim such knowledge. *See United Techs.*, 556 F.3d at 1274. But to simplify matters, Defendants submit the Hall Supp. Declaration, attesting that Hall (i) oversaw ConvenientMD's training programs involving CTS from August 2020 to July 2025, and (ii) "Prior to receiving the communications that proceeded this lawsuit from CTS/CTS's attorneys in 2025," Hall "had no knowledge or awareness that CTS was operated from, governed by, or otherwise had any connection to the State of Florida." Hall Supp. Declaration, ¶¶ 4-5.

## II. Plaintiff's Allegations Show Only that Employees Purchase Services From a Florida Resident, Which is Insufficient.

In addition to lack of knowledge, Plaintiff also fails to meet its burden because mere allegations that Defendants purchased services from a Florida company are insufficient to establish personal jurisdiction. *See Burke Prod.s, Inc. v. Access Elecs., LLC*, 311 So. 3d 145, 150 (Fla. 2d DCA 2020); *Marsh Supermarkets, Inc. v. Queen's Flowers Corp.*, 696 So. 2d 1207, 1209 (Fla. 3d DCA 1997).

Plaintiff attempts to skirt this settled rule by characterizing employees' "twenty-nine [course] enrollments" in CTS courses as something more than "routine contact" among contracting parties. *See* Dkt 37, pp. 8-9. But this is a high bar: to create personal jurisdiction, the purchaser must exercise some extra-ordinary involvement in the seller's performance of the contract. *See Burke*, 311 So. 3d at 150-51 (buyer must "actively monitor[]" or "otherwise engage[] themselves in [seller's] performance"); *Marsh*, 696 So. 2d at 1209 (buyer must "active[ly] participat[e]" in seller's business). Plaintiff argues that "enrollments" reach this high level, because employees "transmitted registration information, accepted CTS's license terms, and performed on the system CTS administers." Dkt 37, p. 9. They do not. Per the Bradley Declaration, the acts involved in "enrollment" are (1) adding a course to the shopping cart, (2) creating a login for the CTS website, and (3) entering credit card information and clicking "complete purchase," *see* Bradley Declaration ¶¶ 24, 26 – *i.e.*, what most call "online check-

out."[5] Completing an online check-out is obviously not "active[] monitor[ing]" and "active participation" as contemplated in *Burke* and *Marsh*.[6]

Finally, CTS invokes *Diamond Crystal Brands v. Food Movers International,* where the Eleventh Circuit found personal jurisdiction in Georgia because the contract specifically required goods be delivered to, held at, and re-sold from a warehouse in Savannah, Georgia. *See* 93 F.3d 1249, 1267-70, 1273 (11th Cir. 2010). In contrast, CTS delivers is products virtually, and the CTS contracts make no mention of Florida.

## III. The Bradley Declaration Offers Additional Support For Transferring to the District of New Hampshire.

Furthermore, Plaintiff's Opposition materials offer additional factual allegations that even further support transferring this case to the District of New Hampshire.

First, while Defendants lacked any warning that their conduct could implicate Florida courts, CTS admits that it became aware of the transaction's New Hampshire connection in the parties' first communication in July 2014. *See* Bradley Declaration ¶ 28; *id.* at Exh. 1 (email providing address in "Concord,

---

5 So when the Opposition says employees "transmit[] registration information," it means they create a website login; when it says employees "accept[] CTS's license terms," it means they click "complete purchase"; and when it says employees "perform[] on the system CTS administers," it means they use the CTS website to complete their purchase.

6 In fact, employees' online check-out activities more closely resemble the facts of *O'Brien Glass v. Miami Wall Systems*, which rejected personal jurisdiction based on contacts that occurred in pre-contract negotiations, *see* 645 So. 2d 142, 144 (Fla. 3d DCA 1994); and *Pres-Kap v. System One, Direct Access,* which rejected personal jurisdiction based on merely accessing defendant's computer servers, *see* 636 So. 2d 1351, 1353 (Fla. 3d DCA 1994). CTS's Opposition ignores both of these cases.

New Hampshire"). And thereafter, CTS received at least four reminders that Defendants were based in New Hampshire.[7] The "interest of justice" therefore favors New Hampshire over Florida.

Second, Plaintiff identifies fifty-three specific ConvenientMD employees who took CTS courses, each of whom is a likely witness in this case and most of whom likely still live in New England. *See* Bradley Declaration ¶¶ 34, 36, Exh. 3; Dkt 28, Exh. B (Frost Declaration), ¶¶ 10-12. Plaintiff also admits that travel between New Hampshire and Florida would be onerous and expensive for individuals (which would include these fifty-three witnesses), requiring "airfare, ground transportation, lodging, meals, and related expenses." *See* Bradley Declaration ¶ 55. And Plaintiff admits that, compared to ConvenientMD's fifty-three-plus witnesses, CTS has only a single witness who would be required to make the trip. *See id.* at ¶¶ 11, 52. The "convenience of parties and witnesses" therefore favors New Hampshire over Florida.

Plaintiff has failed to sustain its pleading and evidentiary burdens to show personal jurisdiction exists over Defendants, and nothing in the Opposition alters the conclusion that this case belongs in New Hampshire. The Motion to Dismiss should be granted.

Respectfully submitted,

---

7 *See id.* at ¶ 42 (in February 2021, Hall "gave a New Hampshire []phone number"); *id.* at Exh. 8 (left) (March 2021 email, with Nikki Juliano's N.H. phone number); *id.* at Exh. 3 (April 2021 registration, listing Matthew Palmarietto's title as "Regional Clinical Lead for Northern & Central NH"); *id.* at Exh. 8 (right) (December 2022 email, with Hall's N.H. number and "Portsmouth" location).

*s/ Tori C. Simmons*
Cameron G. Shilling (NHBA 11363)
Cameron.Shilling@mclane.com
Aaron R. Fenton
Aaron.Fenton@mclane.com
MCLANE MIDDLETON, PA
900 Elm St.
Manchester, NH 03101
603-628-1351
*Lead Counsel for Defendants*
*ConvenientMD, LLC and Marie Hall*

Dennis P. Waggoner (FBN 509426)
dennis.waggoner@hwhlaw.com
regina.bigness@hwhlaw.com
Tori C. Simmons (FBN 107081)
tori.simmons@hwhlaw.com
michelle.armstrong@hwhlaw.com
HILL, WARD & HENDERSON, P.A.
101 E Kennedy Boulevard, Suite 3700
Tampa, FL 33602
Telephone: 813-221-3900
Facsimile: 813-221-2900
*Attorneys for Defendants*
*ConvenientMD, LLC and Marie Hall*