**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

Certified Training Solutions, LLC

Plaintiff

v. Case No.: 8:26-cv-01156

ConvenientMD, LLC, Diane Willey,
Marie Hall, Caitlin Morse,
Melody Barry, Derek Nelson,
Katelyn Dalton, Diana Tereshchuk,
and Victoria Cline,

Defendants.
____________________________/

**MOTION TO DISMISS, OR TO TRANSFER VENUE, OF DEFENDANTS WILLEY, MORSE, BARRY, NELSON, DALTON, AND TERESHCHUK**

Defendants Diane Willey, Caitlin Morse, Melody Barry, Derek Nelson, Katelyn Dalton, and Diana Tereshchuk (together, the "Individuals")[1] move to dismiss the Amended Complaint filed by Plaintiff Certified Training Solutions, LLC ("CTS" or "Plaintiff"), for lack of personal jurisdiction and improper venue pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(3). In the alternative, the Individuals move to transfer this case to the District of New Hampshire, per the discretion afforded under 28 U.S.C. § 1404(a). The Individuals

[1] There are eight individuals named as Defendants in the lawsuit. Defendant Hall previously filed a Motion to Dismiss the Amended Complaint, which was filed jointly with Defendant ConvenientMD, LLC in July 2026. *See* Dkt 28. Defendants Willey, Morse, Barry, Nelson, Dalton, and Tereshchuk were served in August 2026. *See id.* at 32, 33, 36, 43, 45, 46. On October 29, 2026, Plaintiff filed a voluntary dismissal of Defendant Cline.

further move to dismiss Plaintiff's copyright claims (Counts IV and V), pursuant to Federal Rule of Civil Procedure 12(b)(6).

Plaintiff's Amended Complaint would force the Individuals to litigate this dispute 1,400 miles from home, in a forum where they have no alleged connections. Because the Individuals have no relevant contacts with Florida, and because Plaintiff's claims do not arise from activities in the Middle District of Florida, the Court should dismiss the Amended Complaint for lack of personal jurisdiction and lack of venue; or, in the alternative, transfer this case to the District of New Hampshire, where the relevant activities took place. Furthermore, Plaintiff's copyright claims wholly omit any supporting factual allegations, and the Court should dismiss those claims.

## SUMMARY OF THE ALLEGATIONS AND THE DECLARATIONS

The six Individuals are current or former employees of ConvenientMD, LLC ("ConvenientMD"). *See generally* Dkt 21. Plaintiff alleges that, between March 2019 and June 2024, the Individuals accessed Plaintiff's online "Train-the-Trainer" course materials;[2] and that, while clicking through pop-up notices within those course materials, the Individuals each entered a clickwrap-based contract with CTS, *see* Dkt 21 ¶¶ 66, 80, 95. Plaintiff further alleges that the clickwrap

[2] The Amended Complaint alleges that the Individuals accessed the course during various non-specific, conflicting time periods. *See* Dkt 21 ¶¶ 21, 23, 26, 33, 66, 80, 95. Since then, Plaintiff has filed the Declaration of Lisa J. Bradley, which included an "enrollment report" identifying specific dates that each Individual allegedly enrolled in CTS's online course: Willey on March 15, 2019 and February 15, 2024; Morse on February 28, 2022; Barry on March 14, 2022; Nelson on October 4, 2022; Dalton on October 7, 2022; and Tereshchuk on June 29, 2024. *See* Dkt 37-4

contracts had provisions that forbid the Individuals from subsequently using the knowledge they acquired from CTS's courses, unless they sent payment to CTS each time they used the newfound knowledge, *see id.* at ¶¶ 67, 69, 81-83, 96-97, 99; and that the Individuals violated the clickwrap contracts by using their new knowledge to train other employees in training classes hosted by ConvenientMD ("In-House Trainings"), *see id.* at ¶¶ 27-30, 70-72, 85-87, 100-01.

Plaintiff also alleges that it owns two copyrighted texts, *see id.* at ¶¶ 11-12, 105, 124, and that the Individuals used unspecified portions of those texts at In-House Trainings, *see id.* at ¶¶ 27-29, 48, 110, 129. Plaintiff does not allege any identifying details as to the contents of its textual works or the proprietary elements the Individuals allegedly infringed, *see generally id.* at ¶¶ 104-41, but alleges that Defendants utilized "word-for-word verbatim reproductions" of these unspecified materials at In-House Trainings, *id.* at ¶¶ 48-49, 114.

In support of this Motion to Dismiss, each of the six Individuals submits a declaration as an exhibit to the Motion.[3] In summary, the Individuals attest that when they took the CTS online course, and each time that they interacted with the CTS online course, the Individuals lived and worked in New Hampshire, Massachusetts, and/or Maine;[4] when they registered for and accessed the CTS

---

[3] The Declarations of Diane Willey ("Willey Declaration"), Caitlin Morse ("Morse Declaration"), Melody Barry ("Barry Declaration"), Derek Nelson ("Nelson Declaration"), Katelyn Dalton ("Dalton Declaration"), and Diana Tereshchuk ("Tereshchuk Declaration") are attached as Exhibit A through Exhibit F.

[4] Willey Declaration, ¶¶ 4-7, 9-10 (NH); Morse Declaration, ¶¶ 4-7 (ME); Barry Declaration, ¶¶ 4-7 (NH); Nelson Declaration, ¶¶ 4-7 (NH, MA); Dalton Declaration, ¶¶ 4-7 (MA); Tereshchuk Declaration, ¶¶ 4-7 (NH, MA).

online course, and at all times prior to receiving notice of this lawsuit, the Individuals "had no knowledge or awareness that CTS was operated from, governed by, or otherwise had any connection to the State of Florida";[5] and when they instructed In-House Trainings, they did so from New Hampshire, Massachusetts, and/or Maine.[6]

In addition, certain declarations previously filed in this lawsuit are germane to this Motion: (1) In the Declaration of Celina Frost ("Frost Declaration"), Frost attests that the Individuals' employer, ConvenientMD: is based in New Hampshire, which is also where corporate documents and witnesses reside; operates exclusively in New Hampshire and surrounding states; and hosted the In-House Trainings exclusively in New England. *See* Dkt 28-2, ¶¶ 4-5, 9-17. (2) The Declaration of Aaron Fenton ("Fenton Declaration") and Supplemental Declaration of Aaron Fenton ("Fenton Supp. Declaration") enclose images of CTS's webpage downloaded from publicly-available sources, showing that the CTS "contact us" webpage listed addresses outside Florida each year from 2019 to 2025, and through to July 2026. *See* Dkt 28-3, ¶¶ 4-6; Dkt 44-2, ¶¶ 4-5. (3) The Declaration of Lisa Bradley ("Bradley Declaration") attests that Bradley is "CTS's only employee" and "would be the CTS witness to testify" in this litigation;

---

5 Willey Declaration, ¶¶ 8, 11-12; Morse Declaration, ¶¶ 8-9; Barry Declaration, ¶¶ 8-9; Nelson Declaration, ¶¶ 8-9; Dalton Declaration, ¶¶ 8-9; Tereshchuk Declaration, ¶¶ 8-9.

6 Willey Declaration, ¶ 13 (NH, MA, ME); Barry Declaration, ¶ 10 (NH, MA); Nelson Declaration, ¶ 11 (MA); Dalton Declaration, ¶ 11 (MA); Tereshchuk Declaration, ¶ 11 (MA). Morse "never personally taught, or otherwise instructed," In-House Trainings. Morse Declaration, ¶ 10.

and that travel between New Hampshire and Florida would be onerous and expensive for individuals, requiring "airfare, ground transportation, lodging, meals, and related expenses." *See* Dkt 37-1, ¶¶ 11, 52. Bradley also encloses a list naming fifty-three ConvenientMD employees who allegedly took CTS's online course, which includes the date each of the Individuals allegedly enrolled in the course. *See* Dkt 37-4.

## ARGUMENT

### I. Florida Lacks Personal Jurisdiction Over the Individuals Because Florida has No Connection to the Individuals, Nor to the Claims in This Lawsuit.

Plaintiff "bears the initial burden of alleging . . . sufficient facts to make out a *prima facie* case of [personal] jurisdiction" over the Individuals. *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009).[7] This means that Plaintiff must demonstrate that exercising personal jurisdiction does not violate the Individuals' Due Process rights, *i.e.,* that the Individuals have "sufficient minimum contacts" with Florida, such that "maintenance of th[is] suit" in Florida "does not offend traditional notions of fair play and substantial justice." *Cable/Home Commc'n Corp. v. Network Prods., Inc.*, 902 F.2d 829, 855 (11th Cir. 1990). *See also Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945). Plaintiff alleges that

[7] "If the plaintiff doesn't meet his burden, the district court doesn't go to the second and third steps of the burden-shifting process, and the motion [to dismiss] should be granted." *See Diulus v. Am. Express Travel Related Serv. Co., Inc.*, 823 Fed. Appx. 843, 849 (11th Cir. 2020). If, however, a plaintiff does make the necessary *prima facie* showing, then the defendant can rebut the showing by submitting declarations that contradict the forum's exercise of jurisdiction. *See United Techs.*, 556 F.3d at 1274. At that point, the burden again "shifts back to the plaintiff to produce evidence supporting jurisdiction." *Id.*

Florida has specific jurisdiction over the Individuals because CTS is based in Florida, and because the Individuals allegedly (i) purchased online courses from CTS, and (ii) injured CTS, by breaching clickwrap contracts with CTS and infringing its copyrights. *See* Dkt 21 ¶¶ 54-55, 57-60.[8] The Amended Complaint should be dismissed because the individuals had no actual or constructive knowledge that CTS and its course were connected to Florida, and Plaintiff fails to allege any other valid basis for personal jurisdiction.

A. *Plaintiff Does Not Allege That the Individuals Knew, or Should Have Known, That CTS Had Any Connection to Florida.*

Plaintiff fails to allege a *prima facie* case for minimum contacts with Florida, because the Amended Complaint does not allege that the Individuals knew of—or could have anticipated—CTS's connection to Florida. A review of U.S. Supreme Court and Eleventh Circuit decisions makes plain that a defendant cannot have minimum contacts with a state absent at least constructive knowledge that their conduct may implicate such state. For example:

- The U.S. Supreme Court defines "essential" requirements for minimum contacts to include "some act [by the defendant] . . . purposefully avail[ing] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958) (citing *Int'l Shoe,* 326 U.S. 310). Without knowledge

8 Plaintiff does not allege that any of the Individuals is subject to general jurisdiction in Florida, which would require Florida connections that are "so continuous and systematic as to render them essentially at home in [Florida]." *See Goodyear Dunlop Tires Ops., v. Brown*, 564 U.S. 915, 919 (2011).

that CTS was a Florida company, the acts by the Individuals (*i.e.*, interacting with CTS's website) could not have "purposefully avail[ed]" them of the benefits and protections of Florida law.

- The U.S. Supreme Court and Eleventh Circuit regularly emphasize that Due Process and minimum contacts limit personal jurisdiction to places where a defendant could "reasonably anticipate being haled into court." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).[9] Without knowledge that CTS was a Florida company, the Individuals would have no reason to "reasonably anticipate" that interacting with CTS's website would result in them being "haled into court" in Florida.[10]
- The Southern District of Florida has held that "minimum contacts" are satisfied only where the defendant "purposefully direct[ed] his activities *at residents of the forum state*." *Kinon Surface Design, Inc. v. Hyatt Corp.*, 2019 WL 4731771, 4 (S.D. Fla. 2019) (*citing Shaffer v. Heitner,* 433 U.S. 186, 218 (1977) and *Keeton,* 465 U.S. at 774) (emphasis added). Without

[9] *See also Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1357 (11th Cir. 2013) ("Under the minimum contacts test . . . we assess the nonresident defendant's contacts with the forum state and ask whether those contacts . . . are such that the defendant should *reasonably anticipate being haled into court* in the forum") (emphasis added); *Licciardello v. Lovelady,* 544 F.3d 1280, 1284 (11th Cir. 2008) (minimum contacts requires "contact with the state [] such that [the defendant] has 'fair warning' that he may be subject to suit there." This requires that the defendant "purposefully directed his activities at residents of the forum," such that he "could have reasonably anticipated being sued in the forum's courts") (citations omitted).

[10] This connection between knowledge and the "haled into court" analysis has been featured in the U.S. Supreme Court's opinions on multiple occasions. *See, e.g.*, *Calder v. Jones*, 465 U.S. 783, 790-91 (1984) (defendant's conduct was "expressly aimed at California," so defendant "must reasonably anticipate being haled into court there"); *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 781 (1984) (defendant knew that it made sales in New Hampshire, so "[t]here is no unfairness in calling it to answer" for liability there).

knowledge that CTS was a Florida company, the Individuals could not have "purposefully directed" their online CTS communications "at residents of Florida."

A defendant's knowledge of the forum-state connection is a fundamental prerequisite to allowing such connection to create personal jurisdiction.

However Plaintiff does not allege a single fact to support a *prima facie* case that the Individuals knew (or could "reasonably anticipate") that CTS had any affiliation with Florida. Namely, Plaintiff does not allege that its Florida affiliation was ever conveyed to the Individuals, nor that the Individuals had any specific information concerning the Florida affiliation such that they could have otherwise "reasonably anticipated" litigation in Florida. *See generally,* Dkt 21. Having failed to allege any such facts, Plaintiff's allegations land significantly short of a "prima facie case" for Florida personal jurisdiction. *See United Techs.*, 556 F.3d at 1274.

Furthermore, while Plaintiff's failure to make its *prima facie* showing singlehandedly defeats personal jurisdiction, *see Diulus*, 823 Fed. Appx. at 849, a review of the evidence submitted in rebuttal also demonstrates that the Individuals *did not have knowledge* of CTS's affiliation with Florida. Most directly, the six Individuals each swear that they "had no knowledge or awareness that CTS was operated from, governed by, or otherwise had any connection to the State of Florida" when they registered for and accessed the CTS online course.[11] Moreover,

[11] *See* Willey Declaration, ¶¶ 8, 11-12; Morse Declaration, ¶¶ 8-9; Barry Declaration, ¶¶ 8-9; Nelson Declaration, ¶¶ 8-9; Dalton Declaration, ¶¶ 8-9; Tereshchuk Declaration, ¶¶ 8-9.

CTS actively disclaimed any Florida connection on its website, instead openly advertising its address as located in *Tennessee*. *See* Fenton Supp. Declaration, ¶ 5 (images of CTS website for each year from 2019 to 2025); Fenton Declaration, ¶ 6 (image of CTS website in July 2026). To nonetheless exercise personal jurisdiction would subject the Individuals to litigation 1,400 miles away from home, based solely on their decisions to access a website owned by an undisclosed Florida resident. Such a result not only violates the Due Process clause, but undermines its core protections, by forcing the Individuals to litigate in this forum based only on "random, fortuitous, or attenuated contacts" that are outside the Individuals' control. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985).

B. *Florida Law Is Clear That Entering a Contract With a Florida Company is Not Sufficient For Personal Jurisdiction.*

Even if the Individuals knew about CTS's Florida connection—and they certainly did not—personal jurisdiction still fails. The mere fact that Plaintiff had clickwrap contracts with the Individuals is insufficient to establish personal jurisdiction. *See Burger King*, 471 U.S. at 478-79 (an in-state party's "contract[s] with an out-of-state party alone" are not "sufficient minimum contacts"); *Marsh Supermarkets, Inc. v. Queen's Flowers Corp.*, 696 So. 2d 1207, 1209 (Fla. 3d DCA 1997) ("[T]he mere purchase of goods within the state of Florida by a non-resident" is "insufficient to satisfy . . . minimum contacts."). Rather, a contract may show minimum contacts where the contract's substance evidences a "deliberate

affiliation with the forum state." *Burger King*, 471 U.S. at 482.[12] For example, in *Burger King*, the U.S. Supreme Court found minimum contacts with Florida where the contract expressly named Florida as the choice of law, and as the place where the contract was made and enforced, where plaintiff's operations were based, and where notices must be sent. *See id.* at 480-81. Florida was also central to this franchisee contract, which involved a "20-year relationship that envisioned continuing and wide-reaching contacts with Burger King in Florida" and "exacting regulation of his business from Burger King's Miami headquarters." *Id.* at 480. Similarly, in *Diamond Crystal Brands v. Food Movers International*, the Eleventh Circuit found minimum contacts with Georgia where the defendant expressly wrote the address of the plaintiff's "Savannah, Georgia" warehouse into the contract as the place where the subject goods would be delivered; where the goods would be held for resale; and where the goods would be picked up once re-sold. *See* 93 F.3d 1249, 1267-70, 1273 (11th Cir. 2010).[13] The defendant ultimately entered fourteen of these Georgia-laden contracts within six months, all of which indicated that defendant "deliberately associated with Georgia." *Id.* at 1270.

---

12 The "deliberate affiliation" test is another demonstration that minimum contacts cannot be based on undisclosed forum-state connections, with the U.S. Supreme Court rejecting the lower court's reasoning because it "overlooks . . . that [the out-of-state defendant] most certainly knew that he was affiliating himself with an enterprise based primarily in [the forum state]." *Burger King*, 471 U.S. at 480.

13 The Amended Complaint cites *Diamond Crystal*, with a parenthetical alleging that this decision found "purposeful availment . . . without regard to the defendant's knowledge of the plaintiff's forum." *See* Dkt 21 ¶ 59. That parenthetical is false. In *Diamond Crystal*, the defendant plainly knew that its counterparty was located in the forum state (Georgia), as evidenced by the fact that the defendant specifically wrote the counterparty's Savannah address into the contract. *See* 593 F.3d at 1270.

The substance of the CTS clickwrap contracts stand in stark contrast to these "deliberate affiliation" contracts. Most directly, whereas the *Burger King* and *Diamond Crystal* contracts directly and repeatedly referenced the forum state, the CTS clickwrap contracts had no reference whatsoever to Florida. *See generally* Dkt 21-3, 21-4, 21-5. Moreover, the forum state was integral to the substance of the *Burger King* and *Diamond Crystal* contracts; whereas the substance of the CTS clickwrap contracts involved an online purchase of an online product, with no apparent connection to Florida.

The CTS clickwrap contracts are simple purchase and sale agreements: the Individuals each made a payment to CTS, so CTS granted access to the CTS-designed online course and materials. *See* Dkt 21 ¶¶ 9, 11, 17, 40. In this context specifically, a contract satisfies minimum contacts only where the out-of-state buyer exercised extra-ordinary involvement in the seller's in-state contract performance. *See Burke Prods., Inc. v. Access Elecs., LLC*, 311 So. 3d 145, 150-51 (Fla. 2d DCA 2020) (buyer must "actively monitor[]" or "otherwise engaged themselves in [seller's] performance"); *Marsh Supermarkets*, 696 So. 2d at 1209 (buyer must "active[ly] participat[e]" in seller's business). In contrast, the Individuals had no involvement whatsoever in CTS's performance, including no involvement in how CTS designed, nor how CTS chose to deliver, the course and materials.[14] What remains is the mere fact that CTS happened to be based in

[14] Completing an online check-out for the CTS course is obviously not "active[] monitor[ing]" and "active participation [in]" CTS's performance of its side of the contract. *See, e.g., O'Brien Glass v. Miami Wall Sys.*, 645 So. 2d 142, 144 (Fla. 3d DCA 1994) (rejecting personal

Florida, which Eleventh Circuit and Florida courts have regularly found to be insufficient for minimum contacts and personal jurisdiction. *See, e.g., Banton Indus., Inc. v. Dimatic Die & Tool Co.*, 801 F.2d 1283, 1284-85 (11th Cir. 1986) (finding four years of contracts with the in-forum counterparty "too insignificant" for minimum contacts); *Marsh Supermarkets,* 696 So. 2d at 1209 (finding sequence of 105 contracts with the Florida counterparty "insufficient to establish minimum contacts with Florida").[15]

Finally, Plaintiff invokes personal jurisdiction based on alleged injuries CTS supposedly suffered in Florida, as a result of either the contract payments it did not receive or the copyright infringement it suffered at CTS's Florida headquarters. *See* Dkt 21 ¶¶ 55-58, 62. Courts have soundly rejected each of these as bases for personal jurisdiction. *See Venetian Salami Co. v. Parthenais,* 554 So.2d 499, 503 (1989) ("[T]he mere failure to pay money in Florida" does not "suffice to obtain

---

jurisdiction based on contacts that occurred in pre-contract negotiations); *Pres-Kap v. Sys. One, Direct Access,* 636 So. 2d 1351, 1353 (Fla. 3d DCA 1994) (rejecting personal jurisdiction based on merely accessing defendant's computer servers).

15 *See also O'Brien Glass*, 645 So. 2d at 144 ("The mere fact that O'Brien ordered goods from a Florida corporation does not render it amenable to suit in Florida."); *Burke Prods.*, 311 So. 3d at 151 (finding no personal jurisdiction over out-of-state buyer, even though buyer contacted the seller multiple times in Florida about the contract); *Pres-Kap,* 636 So. 2d at 1353 (finding transaction with Florida counterparty was nonetheless "obviously New York-based").

jurisdiction over a nonresident defendant.");[16] *Walden v. Fiore*, 571 U.S. 277, 290 (2014) ("Mere injury to a forum resident is not a sufficient connection").[17]

C. *Exercising Personal Jurisdiction Over the Individuals Offends Traditional Notions of Fair Play and Substantial Justice.*

Plaintiff's proffer of its undisclosed Florida connection as a basis for personal jurisdiction is even more dubious "considered in light of" the "fair play and substantial justice" factors. *See Burger King*, 471 U.S. at 476 (citing *Int'l Shoe,* 326 U.S. 310). These include the: (1) "burden on the defendant," (2) "forum State's interest in adjudicating the dispute," (3) "plaintiff's interest," (4) "interstate judicial system's interest" in the "efficient resolution of controversies," and (5) "shared interest of the several States." *Id.* at 476–77 (quoting *World-Wide Volkswagen*, 444 U.S. at 292).

For the <u>first factor</u>, the Individuals live approximately 1,400 miles north of this Court, in New England.[18] As Plaintiff admits, this means that litigating in Florida would inflict acute burdens on the Individuals. *See* Bradley Declaration ¶ 55 (admitting that travel between New Hampshire and Florida would be onerous

---

[16] *See also, e.g., Pres-Kap*, 636 So. 2d at 1353 ("It is settled law" that a contract with a Florida party does not "automatically establish sufficient minimum contacts . . . even where . . . the foreign defendant allegedly breaches that contract by failing to make the required payments in Florida."); *O'Brien Glass*, 645 So. 2d at 144 ("[T]he fact that payment was due in Florida is not a sufficient minimum contact to sustain personal jurisdiction."); *Marsh Supermarkets,* 696 So. 2d at 1209 ("[P]urchases from a Florida vendor and . . . failure to make payment for the same in this state is insufficient to establish minimum contacts with Florida").

[17] *See also, e.g., Licciardello*, 544 F.3d 1280 (to exercise personal jurisdiction based on in-forum injury, defendants must have "expressly aim[ed] [their] wrongful conduct" at the state by "individually targeting a known forum resident.").

[18] Willey Declaration, ¶ 3; Morse Declaration, ¶ 3; Barry Declaration, ¶ 3; Nelson Declaration, ¶ 3; Dalton Declaration, ¶ 3; Tereshchuk Declaration, ¶ 3.

and expensive for individuals). This factor therefore weighs heavily in favor of rejecting personal jurisdiction. *See Future Tech. Today, Inc. v. OSF Healthcare Sys.*, 218 F.3d 1247, 1251 (11th Cir. 2000) (where the defendant was based in Illinois and had no business in Florida, "the burden . . . in defending a lawsuit in Florida would be great"); *Estes v. Rodin*, 259 So.3d 183, 198 (Fla. 3d DCA 2018) (for the California and Kansas defendants, the burden of litigating in Florida outweighed the deference afforded to plaintiff's choice of forum).

For the second factor, Florida has an interest in resolving disputes involving a Florida company. But this interest is tempered as to CTS, because CTS portrays itself as operating from Michigan, California, and now Tennessee, which casts doubt on how much of CTS's operations are actually based in Florida. *See* Fenton Declaration, ¶¶ 4-6; Fenton Supp. Declaration, ¶¶ 4-5. Florida's interest is also less compelling in light of the Individuals' complete lack of activity within the state. *See, e.g., Rowe v. Gary, Williams, Parteni, Watson and Gary*, 723 Fed. Appx. 871, 876 (11th Cir. 2018) ("Georgia has a limited interest in adjudicating this dispute because the lion's share of the conduct alleged occurred outside Georgia").[19]

The third factor almost always favors the plaintiff. *See Future Tech.*, 218 F.3d at 1251. However, this interest is also tempered as to CTS, because Plaintiff

[19] *See also Future Tech.*, 218 F.3d at 1251 (the Court "cannot conclude a strong state interest in haling people into Florida courts from all over the country" on the basis of contracts entered "without ever setting foot in Florida"); *R&R Games, Inc. v. Fundex Games, Ltd.*, 2013 WL 784397, 9 (M.D. Fla. Mar. 1, 2013) ("Florida lacks an interest in disciplining a foreign company that has never directed any activity into the state").

appears to be "at home" in at least one other state. *See* Fenton Declaration, ¶ 6 (CTS's webpage as of July 2026, listing its address in Knoxville, Tennessee).

For the fourth factor, because all activities relevant to Plaintiff's claims occurred in or around New Hampshire, evidence will overwhelmingly be located in or around New Hampshire – not Florida. Notably, in addition to all six Individuals, New England is home to: nearly all of the approximately-fifty other alleged participants in the CTS online courses; nearly all trainers and trainees for the In-House Trainings; and nearly all related documents, which sit at ConvenientMD's headquarters in New Hampshire. *See* Frost Declaration, ¶¶ 9-14. This factor weighs against exercising personal jurisdiction in Florida.

For the fifth factor, because the relevant activities center on ConvenientMD's headquarters in New Hampshire, that state has its own competing interest in resolving this dispute. *See Rowe*, 723 Fed. Appx. at 876 (where the "lions share" of conduct occurred in New York rather than Georgia, "New York would have a significantly stronger interest in adjudicating [the] dispute"). The several States also have an interest in preserving the Due Process protections afforded by the minimum contacts requirements, which would be undermined if this case is litigated in Florida.

In summation, exercising jurisdiction in Florida would inflict exceptional burdens on the Individuals (first factor), while offering limited benefit to Plaintiff (third factor). And whereas Florida's interests are not particularly availing (second factor), there is reason to believe that the interests of efficient case resolution

(fourth factor) and the several States (fifth factor) will be harmed if this case remains in Florida. On balance, the fair play and substantial justice factors offer an unambiguous warning against exercising personal jurisdiction in Florida, particularly in light of Plaintiff's already-meagre minimum contacts allegations.

## II. Venue is Inappropriate in the Middle District of Florida, Because All "Events Giving Rise to CTS's Claims" Occurred in or Around New Hampshire.

Plaintiff also bears the burden of making "a prima facie showing of venue." *Delong Equip. Co. v. Wash. Mills Abrasive Co.*, 840 F.2d 843, 845 (11th Cir. 1988). CTS alleges that venue exists in this Court pursuant to 28 U.S.C. § 1391(b)(2) and § 1400(a). *See* Dkt 21 ¶¶ 63-64. As to Section 1400(a), this provision allows suit to be brought "in a district which may assert personal jurisdiction over the defendant." *Palmer v. Braun*, 376 F.3d 1254, 1259 (11th Cir. 2004). Because there is no personal jurisdiction in Florida, venue is likewise improper.

As to Section 1391(b)(2), this provision allows suit to be brought in the district where "a substantial part of the events or omissions giving rise to the claim occurred." This analysis considers "[o]nly the events that directly give rise to a claim" in the lawsuit, and "only [considers] those locations hosting a 'substantial part' of [such] events." *Jenkins Brick Co. v. Bremer*, 321 F.3d 1366, 1371 (11th Cir. 2003). *See also Anderson v. Cottonwood Senior LP*, 2011 WL 4595594, 1 (N.D. Fla. Aug. 29, 2011) ("hosting a substantial part" of the event means that the location-based activities "bear a close nexus to the claims") (citation omitted). All told, venue under Section 1391(b)(2) requires an even "greater level of relevant

activities by the Defendants than the minimum contacts analysis." *TMJ Practice Mgmt. Assocs., Inc. v. Curran*, 2017 WL 3130421, 5 (S.D. Fla. Jul 24, 2017) (citing *Jenkins Brick*, 321 F.3d at 1372).

All events "giv[ing] rise to" Plaintiff's claims occurred in New England, where the clickwrap contracts were presented to, accepted by, and allegedly violated by the Individuals, and where the Individuals allegedly accessed and misused copyrighted materials.[20] In contrast, the only Florida "event" was Plaintiff's undisclosed domicile there, *see* Dkt 21 ¶¶ 7-8, which had no impact on CTS's business with the Individuals, who were not even aware of the Florida connection. Courts have regularly rejected Plaintiff's remaining argument that venue is proper merely because CTS operated and was injured in Florida. *See, e.g.*, *TMJ Practice*, 2017 WL 3130421 at 5-6 (the in-forum injury was not "a substantial part of the events or omissions giving rise to the claim").[21]

---

[20] *See* Frost Declaration, ¶ 9 (In-House Trainings were conducted in New Hampshire, Massachusetts, and Maine); Willey Declaration, ¶¶ 6-7, 9-10, 13; Morse Declaration, ¶¶ 6-7; Barry Declaration, ¶¶ 6-7, 10; Nelson Declaration, ¶¶ 6-7, 11; Dalton Declaration, ¶¶ 6-7, 11; Tereshchuk Declaration, ¶¶ 6-7, 11.

[21] *See also, e.g.*, *Jenkins Brick*, 321 F.3d at 1372-73; *Infinite Growth Grp., LLC v. Infinite Growth Assocs., LLC*, 2010 WL 3190613, 3 (M.D. Fla. Aug 11, 2010) (rejecting venue in M.D. Florida, notwithstanding a Florida plaintiff and injury); *Anderson*, 2011 WL 4595594 at 2 (although the plaintiff lived in Florida, the "substantial part of the events underlying this action" was in Alabama, where the violations occurred); *Threadgill v. Dennard*, 2020 WL 4740502, 1 (N.D. Fla. Jul 20, 2020) (although the plaintiff lived in Florida, "[t]he crux of [the] complaint arises out of events" in California, where the plaintiff was wrongfully-detained).

### III. Transfer Is Otherwise Appropriate "For the Convenience of Parties and Witnesses" and "in the Interest of Justice."

Venue is improper in the Middle District of Florida. But if this Court determines otherwise, the Court should nonetheless transfer this case to the District of New Hampshire. Specifically, where an alternative venue exists:

> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

28 U.S.C. § 1404(a). Transfers under Section 1404(a) are generally "in accordance with the doctrine of *forum non conveniens*," except that courts are afforded "more discretion" under Section 1404(a). *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 253 (1981). As previously discussed, the District of New Hampshire is a viable alternative venue pursuant to Section 1391(b)(2), because "a substantial part of the events . . . giving rise to the claim occurred" in New Hampshire. *See supra*, § II. With this alternative venue in-hand, the Court evaluates whether transferring under Section 1404(a) serves "the convenience of the parties and witnesses" and otherwise promotes "the interest of justice." *Atl. Marine Const. Co. v. W. Dist. of Tex.*, 571 U.S. 49, 62-63 (2013).

"The most important factor under § 1404(a) is the convenience of witnesses." *Trans Am Worldwide LLC v. JP Superior Sol.s, LLC*, 2018 WL 3090394, 8 (N.D. Fla. Apr. 30, 2018) (citation omitted). Nearly all relevant witnesses are located in or around New Hampshire, including the Individuals;[22]

---

[22] *See* Willey Declaration, ¶ 3; Morse Declaration, ¶ 3; Barry Declaration, ¶ 3; Nelson Declaration, ¶ 3; Dalton Declaration, ¶ 3; Tereshchuk Declaration, ¶ 3.

forty-five non-party witnesses who purchased CTS's online courses;[23] and the trainers and trainees for the In-House Trainings.[24] And as Plaintiff admits,[25] Florida is an especially-inconvenient forum for these witnesses given the distance separating Florida and New England. *See Filtalert Corp. v. Int'l Bus. Mach. Corp.*, 2015 WL 9474640 (S.D. Fla. Dec 29, 2015) (noting the "direct relationship" between distance and witness inconvenience, and transferring because most witnesses lived "significantly closer to North Carolina than to Miami," such that North Carolina "would be much more convenient"). As for Florida witnesses, Plaintiff's CEO, Lisa Bradley, is the lone potential witness with connections to Florida. *See* Bradley Declaration ¶¶ 11, 52. Because the "convenience of witnesses" overwhelmingly favors New Hampshire over Florida, this "most important factor" heavily favors transferring venue.

Courts also "generally transfer cases when important witnesses cannot be compelled to testify in the forum, but could be subpoenaed in the transferee court." *Game Controller Tech., LLC v. Sony Computer Entm't Am., LLC*, 994 F. Supp. 2d 1268, 1275 (S.D. Fla. 2014). Nearly all potential witnesses are likely in New Hampshire, Massachusetts, and Maine – well beyond the 100-mile limit of this

---

23 Plaintiff alleges "at least fifty" ConvenientMD employees bought courses, *see* Dkt 21 ¶ 40, and has identified the specific employees, *see* Bradley Declaration ¶¶ 34, 36, Exh. 3. All employees who took courses, and who taught or took In-House Trainings, "lived within commuting distance" of New Hampshire, Massachusetts, or Maine. Frost Declaration, ¶¶ 10-12.

24 *See* Frost Declaration, ¶¶ 10, 12 (In-House Training instructors and trainees lived within commuting distance of New Hampshire, Massachusetts, or Maine).

25 *See* Bradley Declaration ¶ 55 (admitting that travel between New Hampshire and Florida would require "airfare, ground transportation, lodging, meals, and related expenses").

Court's subpoena power. *See* Fed. R. Civ. P. 45(c)(1). On the other hand, the 100-mile range for the District of New Hampshire includes nearly all of New Hampshire, nearly all of Massachusetts, and Maine's largest population center (southwestern Maine, including Portland).

"The location of operative facts underlying a claim" is another "key factor in determining a motion to transfer venue." *Nat'l Trust Ins. Co. v. Penn. Nat'l Mut. Cas. Ins. Co.,* 223 F. Supp. 3d 1236, 1245 (M.D. Fla. 2016). As previously described, all facts related to Plaintiff's claims occurred in New Hampshire or its neighboring states; whereas the Middle District of Florida has little-to-no connection to the substance of Plaintiff's claims. *See supra,* § II. With the locus of facts centered on New Hampshire, this also favors transfer.

Finally, transferring to the District of New Hampshire comports with principals of fundamental fairness and the "interest of justice." Whereas the Individuals lacked any warning that they were dealing with a Florida counterparty, *see supra,* § I.A, CTS received at least five warnings that ConvenientMD's employees were based in New Hampshire.[26] Fundamental fairness and the "interest of justice" therefore favors litigating in New Hampshire over Florida.

In summary, the District of New Hampshire is significantly more convenient for the parties and witnesses; has subpoena power over most of the likely

---

[26] *See* Bradley Declaration, Exh. 1 (email providing address in "Concord, New Hampshire"); *id.* at ¶ 42 (Hall "gave a New Hampshire []phone number"); *id.* at Exh. 8 (left) (email with N.H. phone number); *id.* at Exh. 3 (registration listing title as "Regional Clinical Lead for Northern & Central NH"); *id.* at Exh. 8 (right) (email with N.H. number and "Portsmouth" location).

witnesses; has much stronger connections to the issues and claims in this lawsuit; and is the fairer jurisdiction to litigate this dispute. Therefore, if the Court elects not to dismiss the Amended Complaint, it should exercise its broad discretion to transfer this case to the District of New Hampshire.

### IV. Plaintiff's Copyright Claims Lack Factual Allegations Identifying the Original or Copied Materials, and Should be Dismissed.

In Count IV and Count V, Plaintiff asserts claims for copyright infringement based on two registered copyrights, titled Urine Specimen Collection and Urine Specimen Collection 2023 Edition (the "2023 Edition"). *See* Dkt 21 ¶¶ 105-08, 124-27. For these claims, Plaintiff must plead that the Individuals copied protectable elements of the copyrighted works, *see Miller's Ale House, Inc. v. Boynton Carolina Ale House, LLC*, 702 F.3d 1312, 1325 (11th Cir. 2012), *i.e.*, copied "constituent elements of the work that are original," *Bennett v. Walt Disney Co.*, No. 23-12786, 2024 WL 4040443, 2 (11th Cir. Sept. 4, 2024) (quoting *Feist Publ'n, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340 (1991)). Furthermore, "[i]n pleading the defendant copied protected elements . . . a plaintiff must also plead facts that show that the similarities between the copyrighted work and the alleged copy are 'copyrightable material.'" *Henderson v. Starz Ent., LLC.*, No. 8:25-CV-02561-MSS-NHA, 2026 WL 1674075, 2 (M.D. Fla. May 19, 2026), *R&R adopted*, 2026 WL 1670361 (M.D. Fla. June 9, 2026) (citing *Herzog v. Castle Rock Entm't*, 193 F.3d 1241, 1248 (11th Cir. 1999)). *See also MiTek Holdings, Inc. v. Arce Eng'g Co.*, 89 F.3d 1548, 1554 (11th Cir. 1996) (noting "the mere fact that a work is copyrighted does not mean that every element of the work may be protected").

Plaintiff does not even identify the relevant copyrighted "works," let alone which elements were "copyrightable material" with "similarities" to the Individuals' alleged copies. Rather, the Amended Complaint identifies CTS's works only as "texts," which somehow implicate CTS's compliance training for Department of Transportation (DOT) "Urine Specimen Collection" procedures.[27] And as to the alleged copies, Plaintiff alleges only that they included "verbatim reproductions" of an unspecified portion of CTS's works. *See* Dkt 21 ¶¶ 48-49, 114. In other words, rather than identifying specific works with specific copyrightable elements copied by the Individuals, *see Henderson*, 2026 WL 1674075, 2, Plaintiff pleads that the Individuals copied an unspecified amount of unnamed contents from unidentified works. Such deficiency warrants dismissal of Plaintiff's copyright claims. *See Henderson*, 2026 WL 1674075, 4-5 (dismissing copyright claim for failing to plead that protected elements were copied); *Dodd v. Woods*, 2010 WL 3747007, 4 (M.D. Fla. Aug. 31, 2010), *R&R adopted*, 2010 WL 3745802 (M.D. Fla. Sept. 21, 2010) (dismissing claim for failing to plead similarity between the works).

On top of these glaring omissions, certain factual allegations render these omissions particularly dubious. First, Plaintiff has easy access to the copyrighted

[27] Specifically, Plaintiff alleges that the works (i) are titled "Urine Specimen Collection" and "Urine Specimen Collection 2023 Edition," *see* Dkt 21 ¶ 12; (ii) have some unspecified connection to CTS's online Department of Transportation compliance training course, *see id.* at ¶¶ 2, 11; and (ii) per registration certificates attached to the Amended Complaint, that the works cover unspecified "text" and exclude unspecified "pre-existing and third party text," *see* Dkt 21-1, 21-2.

works – including because Plaintiff's lead counsel in this litigation personally signed and submitted the copyright applications, *see* Dkt 21-1, 21-2 – and Plaintiff admits that it has copies of the Individuals' allegedly-infringing "verbatim reproductions," *see* Dkt 21 ¶¶ 47-49. With these materials already in-hand, Plaintiff's spartan allegations in the Amended Complaint appear to be the result of Plaintiff's chosen pleading strategy, rather than a lack of factual knowledge. Second, Plaintiff alleges that its copyrighted works pertain to compliance trainings for DOT "Urine Specimen Collection" procedures, *see id.* at ¶¶ 2, 11-12, which are publicly-available regulations published by the DOT.[28] Having alleged that CTS's works concern compliance with (uncopyrightable) published government regulations, it is highly likely that CTS's works incorporate some amount of non-original text from the regulations; and to the extent that such text is part of the elements copied by the Individuals, Plaintiff would fail to allege infringement and the Court can "dispose of [this] copyright case on the pleadings." *Henderson*, 2026 WL 1670361 at 3.

Finally, Count V (infringement of the 2023 Edition) should be dismissed for the additional and independent reason that Plaintiff fails to allege infringement. To this point, Plaintiff alleges "on information and belief" that CTS incorporated

[28] *See* U.S. Department of Transportation, Office of Drug & Alcohol Policy & Compliance, DOT Urine Specimen Collection Procedures Guidelines, https://www.transportation.gov/sites/dot.gov/files/2026-06/Urine_Specimen_Collector_Procedures_Guidelines_June_30_2026.pdf (last visited July 28, 2026). Courts may take judicial notice of government documents and publications. *Universal Express, Inc. v. U.S. S.E.C.*, 177 F. App'x 52, 53 (11th Cir. 2006).

the 2023 Edition into its training course in 2023, and therefore that course materials accessed after 2023 "necessarily included" the 2023 Edition. *See* Dkt 21 ¶ 130. Having made this allegation "on information and belief," Plaintiff's infringement theory rests on two necessary factual inferences: (1) that CTS must have added the 2023 Edition to the course materials, and (2) inclusion in the course materials must mean that the post-2023 defendants therefore had access to the 2023 Edition. These allegations based on "information and belief" and inference stacking provide insufficient factual support for Count V, which should therefore be dismissed. *See D.P. v. Sch. Bd. of Palm Beach Cnty.*, 658 F. Supp. 3d 1187, 1205 (S.D. Fla. 2023); *Phoenix Ent. Partners, LLC v. Orlando Beer Garden, Inc.*, 2016 WL 1567590, 5 (M.D. Fla. Mar. 30, 2016), *report and recommendation adopted*, 2016 WL 1559164 (M.D. Fla. Apr. 18, 2016) ("Conclusory allegations made upon information and belief are not entitled to a presumption of truth, and allegations stated upon information and belief that do not contain any factual support fail to meet the Twombly standard.").

In sum, Plaintiff's threadbare allegations fail to allege copying, because Plaintiff does not identify the copyrighted materials, the original protectable elements allegedly copied, nor facts supporting substantial similarity; and Plaintiff's "information and belief" allegations fail to allege infringement of the 2023 Edition. This Court should therefore dismiss Plaintiff's direct copyright claims (Count IV and Count V).

## CONCLUSION

All Individuals live in New England, where they also lived and worked when they took CTS's online course. Nonetheless, Plaintiff seeks to hale the Individuals into court over 1,400 miles away in Florida, based on Plaintiff's undisclosed domicile. This spartan basis for personal jurisdiction is matched by the paucity of factual allegations supporting the copyright claims, which fail to identify any of the original or allegedly-copied materials. There is neither jurisdiction nor venue in this Court and Plaintiff has failed to state copyright claims against the Individuals, each warranting dismissal.

**WHEREFORE**, Defendants Willey, Morse, Barry, Nelson, Dalton, and Tereshchuk respectfully request that this Court issue an order:

(i) Dismissing the Amended Complaint as to the Individuals for lack of personal jurisdiction;

(ii) Dismissing the Amended Complaint as to the Individuals for lack of appropriate venue, or in the alternative, transferring venue to the District of New Hampshire under 28 U.S.C. 1404(a);

(iii) Dismissing Count IV as to the Individuals;

(iv) Dismissing Count V as to Defendants Willey and Tereshchuk; and

(v) Granting such other relief as may be just, equitable, and proper.

## LOCAL RULE 3.01(g) CERTIFICATION

The undersigned certifies that counsel for the moving Individuals attempted to confer with counsel for Plaintiff regarding the relief requested in this motion,

but did not reach Plaintiff's counsel before filing this motion. Undersigned counsel will continue attempts to confer and promptly update this certificate. On July 30, 2026, undersigned counsel conferred with counsel for Plaintiff via email regarding the arguments and relief requested herein in the context of a similar motion filed by the earlier-served defendants, and Plaintiff opposed the relief requested as to those defendants.

Respectfully submitted,

*/s/ Tori C. Simmons*
Cameron G. Shilling (NHBA 11363)
Cameron.Shilling@mclane.com
Aaron R. Fenton
Aaron.Fenton@mclane.com
MCLANE MIDDLETON, PA
900 Elm St.
Manchester, NH 03101
603-628-1351
*Lead Counsel for Defendants Willey, Morse, Barry, Nelson, Dalton, and Tereshchuk*

Dennis P. Waggoner (FBN 509426)
dennis.waggoner@hwhlaw.com
regina.bigness@hwhlaw.com
Tori C. Simmons (FBN 107081)
tori.simmons@hwhlaw.com
michelle.armstrong@hwhlaw.com
HILL, WARD & HENDERSON, P.A.
101 E Kennedy Boulevard, Suite 3700
Tampa, FL 33602
Telephone: 813-221-3900
Facsimile: 813-221-2900
*Attorneys for Defendants Willey, Morse, Barry, Nelson, Dalton, and Tereshchuk*