**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

CERTIFIED TRAINING SOLUTIONS, LLC,

Plaintiff,

v. Case No.: 8:26-cv-01156-CEH-CPT

CONVENIENTMD, LLC, DIANE WILLEY,
MARIE HALL, CAITLIN MORSE,
MELODY BARRY, DEREK NELSON,
KATELYN DALTON, DIANA TERESHCHUK,
and VICTORIA CLINE,

Defendants.
_________________________________/

**RESPONSE IN OPPOSITION TO DEFENDANTS WILLEY, MORSE, BARRY, NELSON, DALTON, AND TERESHCHUK'S MOTION TO DISMISS, OR TO TRANSFER VENUE**

Plaintiff, Certified Training Solutions, LLC ("Plaintiff" or "CTS"), by and through undersigned counsel, hereby files this Response in Opposition to the Motion to Dismiss, or to Transfer Venue, filed on October 30, 2026 at Doc. 59 by Defendants Diane Willey ("Defendant Willey"), Caitlin Morse ("Defendant Morse"), Melody Barry ("Defendant Barry"), Derek Nelson ("Defendant Nelson"), Katelyn Dalton ("Defendant Dalton"), and Diana Tereshchuk ("Defendant Tereshchuk") (collectively, the "Individuals"), and in support thereof states as follows:

## FACTUAL BACKGROUND

CTS is a Florida limited liability company run from St. Petersburg, Florida, by its owner and only employee, Lisa Bradley, who has directed CTS's business from Florida since November 2018. Doc. 37-1 ¶¶ 3–11. CTS's Articles of Organization, listing its principal office and mailing address in St. Petersburg, have been on file with the Florida Department of State since January 14, 2021. Doc. 37-1 ¶ 7; Doc. 37-10. Ms. Bradley administers from Florida the learning management system through which every enrollee registers, accepts CTS's Terms and Conditions, and pays. Doc. 37-1 ¶¶ 17–19, 22, 24–26.

Each of the Individuals enrolled in CTS's Train-the-Trainer course in his or her own name, listed ConvenientMD as employer, and accepted CTS's Collector Trainer Agreement. CTS's records show the following enrollments: Defendant Willey on March 15, 2019 and again on February 15, 2024; Defendant Morse on February 28, 2022; Defendant Barry on March 14, 2022; Defendant Nelson on October 4, 2022; Defendant Dalton on October 7, 2022; and Defendant Tereshchuk on June 29, 2023. Doc. 37-4; Doc. 37-8; Supplemental Declaration of Lisa J. Bradley ("Supp. Bradley Decl."), filed herewith, ¶¶ 4–5. Every one of those enrollments came after CTS's business moved to Florida, and every one except Defendant Willey's first came after CTS's Florida organization was on public file. Supp. Bradley Decl. ¶ 9. Defendants Morse, Barry, Nelson, and Tereshchuk each typed a full name into the agreement "as additional Attestation and Confirmation of your Agreement to the aforesaid terms." Doc. 37-8, Exs. 7B–7D, 7F.

The agreement each Individual accepted was not a one-time purchase. Each agreed "that I will purchase a new and separate course for each and every specimen collector I train (at the Instructor-Discounted-Rate) from Certified Training Solutions." Doc. 37-8, Exs. 7A–7F. Those courses are purchased online through the storefront and payment system Ms. Bradley administers from Florida. Doc. 37-1 ¶¶ 17–19, 22, 24–26, 46; Supp. Bradley Decl. ¶¶ 7–8. Defendants Willey and Tereshchuk accepted the April 2023 version, which adds a remedy of $100.00 for each course not purchased and $400.00 for each person trained outside the trainer's own organization. Doc. 37-8, Exs. 7A, 7F; Doc. 21 ¶ 31.

Five of the six Individuals now swear that they instructed urine drug screening certification classes for ConvenientMD employees. Doc. 59-1 ¶ 13; Doc. 59-3 ¶ 10; Doc. 59-4 ¶ 11; Doc. 59-5 ¶ 11; Doc. 59-6 ¶ 11. CTS never received from any of them payment for a procedures course for any collector trained. Doc. 37-1 ¶ 51; Supp. Bradley Decl. ¶ 10.

## ARGUMENT

The Individuals' motion repeats, nearly word for word, the motion filed by Defendants ConvenientMD, LLC ("Defendant ConvenientMD") and Marie Hall ("Defendant Hall"), Doc. 28, to which CTS has responded, Doc. 37. Its one new proposition, that the Individuals cannot be sued in Florida because they did not know CTS was here, rests on six declarations that swear to it in the same sentence. Doc. 59 at 6–9. Each of the motion's grounds fails. The Individuals are

subject to jurisdiction because each personally agreed to keep buying from a Florida company (Part I.A). The knowledge declarations do not shift the burden, because they address neither the public record of CTS's Florida organization nor the conduct CTS pled (Part I.B). The Individuals make no compelling case that jurisdiction would be unfair (Part I.C). Venue follows from jurisdiction and from the Florida-directed obligations at issue (Part II). The Individuals have not carried their burden to justify transfer (Part III). Counts IV and V plead verbatim copying and post-publication access, which is all Rule 8 requires (Part IV).

## I. This Court Has Personal Jurisdiction Over the Individuals.

Both requirements for personal jurisdiction are met. The Amended Complaint pleads jurisdiction over each Individual under section 48.193(1)(a)2. and (1)(a)7., Florida Statutes, and the Individuals frame every jurisdictional argument as one of due process. Doc. 21 ¶¶ 54–60; Doc. 59 at 5–16. Each Individual is alleged to have breached in Florida a personal obligation to purchase and pay for courses from CTS under agreements that specify no place of payment. Doc. 21 ¶¶ 56–58. The statutory prong is uncontested, and the only question the motion joins is due process.

### *A. Each Individual's Own Agreement Created a Continuing Obligation to Buy From CTS in Florida.*

Each Individual reached into Florida by contracting for an ongoing obligation to CTS, not by making a single purchase. The minimum-contacts inquiry looks to "contacts that the defendant himself creates with the forum State." *Walden v. Fiore*, 571 U.S. 277, 284 (2014) (internal quotation marks

omitted). Jurisdiction has been upheld "over defendants who have purposefully 'reach[ed] out beyond' their State and into another by, for example, entering a contractual relationship that 'envisioned continuing and wide-reaching contacts' in the forum State." *Id.* at 285 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 479–80 (1985)). The Eleventh Circuit evaluates a contract through a "highly realistic approach" attentive to "prior negotiations, contemplated future consequences, the terms of the contract, and the actual course of dealing," and "[t]he focus must always be on the nonresident defendant's conduct." *Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc.*, 593 F.3d 1249, 1268 (11th Cir. 2010) (quoting *Burger King*, 471 U.S. at 479).

The contemplated future consequences of each Individual's agreement were more purchases from CTS. Each Individual sent CTS registration information, accepted CTS's license, and paid through the system CTS administers from Florida. Doc. 37-1 ¶¶ 24–26, 40. Each then agreed to return to that same system and buy a new course for every collector he or she trained. Doc. 37-8, Exs. 7A–7F. The motion recasts these as agreements to pay CTS each time the Individuals used their "newfound knowledge." Doc. 59 at 3. They were not. Each agreement required the purchase of a course for each collector trained and barred copying, reuse, or distribution of CTS's course. Doc. 37-8, Exs. 7A–7F. The Amended Complaint pleads exactly that obligation, and pleads that each Individual undertook it personally. Doc. 21 ¶¶ 54, 57–58. Defendant Willey enrolled and accepted CTS's terms twice, five years apart. Doc. 21 ¶ 26; Doc. 37-4.

Each of these was an agreement to keep transacting with a Florida company for as long as the Individual trained collectors, and the breach CTS alleges is each Individual's failure to make those purchases. Doc. 21 ¶¶ 57, 71, 86, 100.

The purchaser cases on which the Individuals rely do not reach that structure. The Individuals rely on *Banton*. Doc. 59 at 12 (citing *Banton Indus., Inc. v. Dimatic Die & Tool Co.*, 801 F.2d 1283 (11th Cir. 1986)). The Eleventh Circuit has since explained that *Banton* "held only that when the defendant's sole contact with the forum is contracting with a forum resident, even a history of such transactions does not provide sufficient minimum contacts." *Diamond Crystal*, 593 F.3d at 1271. *Marsh* turned on the same absence: "Marsh's sole relationship with Queen[']s, as well as with other vendors in the state of Florida, was that of a purchaser." *Marsh Supermarkets, Inc. v. Queen's Flowers Corp.*, 696 So. 2d 1207, 1209 (Fla. 3d DCA 1997). The Individuals' relationship with CTS was not, however, that of a purchaser alone. Each was a licensee who accepted continuing restrictions on the use of CTS's Works and a continuing duty to buy from CTS. Doc. 21 ¶¶ 22, 32. Nor does CTS rest on its injury in Florida, or on a failure to pay "standing alone." *Venetian Salami Co. v. Parthenais*, 554 So. 2d 499, 503 (Fla. 1989). The Individuals again quote that sentence without those two words. Doc. 59 at 12–13.

The Individuals' remaining Florida cases do not change the analysis. In *O'Brien Glass*, the Florida seller submitted the quote, the Illinois buyer placed two orders for materials for one Illinois project, and the goods were shipped to

Illinois. *O'Brien Glass Co. v. Miami Wall Sys., Inc.*, 645 So. 2d 142, 143–44 (Fla. 3d DCA 1994). The court held that "[t]he mere fact that O'Brien ordered goods from a Florida corporation does not render it amenable to suit in Florida." *Id.* at 144. The same opinion applies the presumption on which the Amended Complaint's statutory showing partly rests: absent agreement, "the law requires us to presume that payment is to be made where the payee resides." *Id.* In *Pres-Kap*, the Florida plaintiff solicited the New York defendant through its own New York office, the contract was negotiated and executed in New York, the equipment was delivered and serviced there, and a Florida forum clause in the parties' earlier contracts had been deleted. *Pres-Kap, Inc. v. Sys. One, Direct Access, Inc.*, 636 So. 2d 1351, 1352–53 (Fla. 3d DCA 1994). On that record, a Miami billing office and database could not "convert this obviously New York-based transaction into a Florida transaction." *Id.* at 1353.

Nothing comparable exists here. CTS has no office, employee, or representative in New Hampshire, Massachusetts, or Maine, and it solicited none of the Individuals; it was their employer that sought CTS out. Doc. 37-1 ¶¶ 23, 28, 59. The only counterpart any Individual dealt with was CTS, which authored the Works, administered the platform, issued the certificates, and set the license terms from Florida. *Id.* ¶¶ 15–22. The Individuals also distinguish *Diamond Crystal* because CTS delivers its course online. Doc. 59 at 11. The Eleventh Circuit described the relevant factors as "not talismans" and asked whether the defendant "deliberate[ly] affiliat[ed]" with the forum. *Diamond Crystal*, 593 F.3d

at 1268–69. Each Individual did so by promising to buy, through the system CTS administers from Florida, a new course for every collector he or she trained.

### B. *The Individuals' Knowledge Declarations Do Not Defeat Jurisdiction.*

The six declarations do not shift the burden back to CTS, because they swear to something CTS never alleged and say nothing about the conduct CTS did allege. The motion's premise is that a defendant must have "at least constructive knowledge" of its counterparty's forum, and it argues that the Individuals "had no actual or constructive knowledge" that CTS was connected to Florida. Doc. 59 at 6. The Supreme Court frames the inquiry around conduct: "[t]he proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way." *Walden*, 571 U.S. at 290. On either framing, the declarations fall short.

CTS bears the initial burden of pleading a prima facie case. The Individuals' own description of the next step is that a defendant "can rebut the showing by submitting declarations that contradict the forum's exercise of jurisdiction," after which the burden returns to the plaintiff. Doc. 59 at 5 n.7 (citing *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009)). Affidavit statements that are "in substance legal conclusions" do not shift the burden at all. *Mazer*, 556 F.3d at 1276–77 (quoting *Posner v. Essex Ins. Co.*, 178 F.3d 1209, 1215 (11th Cir. 1999) (per curiam)).

Two of the Individuals' knowledge authorities apply the "effects test," which asks whether a tortfeasor expressly aimed its conduct at a known forum

resident. *Calder v. Jones*, 465 U.S. 783 (1984); *Licciardello v. Lovelady*, 544 F.3d 1280 (11th Cir. 2008); *see* Doc. 59 at 7 nn.9–10, 12–13 n.17. CTS does not invoke that test. The effects test "does not supplant the traditional minimum contacts test for purposeful availment applicable in contract and tort cases alike." *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1357 (11th Cir. 2013). Under the traditional test, the contacts are the Individuals' own agreements and transmissions, described in Part I.A, and they support jurisdiction over the copyright counts as well as the contract counts.

The declarations address actual knowledge only. Each states, in identical words, that the declarant "had no knowledge or awareness that CTS was operated from, governed by, or otherwise had any connection to the State of Florida." Doc. 59-1 ¶¶ 8, 11–12; Doc. 59-2 ¶¶ 8–9; Doc. 59-3 ¶¶ 8–9; Doc. 59-4 ¶¶ 8–9; Doc. 59-5 ¶¶ 8–9; Doc. 59-6 ¶¶ 8–9. None addresses what was publicly available. CTS's organization as a Florida limited liability company, with its principal office and mailing address in St. Petersburg, has been on file with the Florida Department of State since January 14, 2021. Doc. 37-1 ¶ 7; Doc. 37-10. Defendants Morse, Barry, Nelson, Dalton, and Tereshchuk each enrolled after that filing, and Defendant Willey enrolled the second time after it. Supp. Bradley Decl. ¶ 9. Defendants' counsel located CTS's Florida annual report through the same public source and filed it in this case. Doc. 28-3 ¶ 7, Ex. C5.

The declarations also do not contradict the Amended Complaint. CTS did not plead what the Individuals subjectively knew about CTS's location. It pled

what the Individuals did: each personally accepted CTS's license, transmitted enrollment communications and payment into the platform CTS administers from Florida, and undertook purchase-and-payment obligations owed to CTS in Florida. Doc. 21 ¶¶ 54–58, 64. No declarant denies any of that. A declaration that leaves the pled conduct untouched does not "contradict the forum's exercise of jurisdiction," which is the showing the Individuals' own authority describes. Doc. 59 at 5 n.7. The website captures add nothing. Defendants' counsel captured CTS's "Contact Us" page. Doc. 28-3 ¶¶ 5–6; Doc. 44-2 ¶ 5. None of the six declarants says that he or she ever visited that page. A mailing address on a page no declarant claims to have read could not have shaped any declarant's expectations.

Defendant Nelson's declaration, moreover, cannot be reconciled with CTS's records. He swears that ConvenientMD employed him from September 2023 through June 2025 and that he registered for the course from ConvenientMD's Portsmouth headquarters or from his home in Massachusetts. Doc. 59-4 ¶¶ 4–6. CTS's records show an enrollment on October 4, 2022, nearly a year before that employment began, under the address DNelson@convenientmd.com, listing ConvenientMD as employer and "Regional Clinical Training Lead" as title, and an acceptance of the Collector Trainer Agreement on October 7, 2022 by an enrollee who typed the name "Derek A. Nelson." Doc. 37-4; Doc. 37-8, Ex. 7D; Supp. Bradley Decl. ¶¶ 4–6. The Individuals' own motion adopts the October 4, 2022 date. Doc. 59 at 2 n.2. Either Defendant Nelson held a ConvenientMD role a year

earlier than he swears, or his account of where and in what capacity he enrolled is mistaken. His statements about the place of his enrollment rest on a timeline the record contradicts, and they do not carry the Individuals' burden. None of the six declarations, then, contradicts the jurisdictional facts CTS pled, and the burden never returns to CTS.

### *C. Fair Play and Substantial Justice Favor This Forum.*

The Individuals make no compelling case against jurisdiction, which is the showing the law requires of them. Having directed their activities at Florida, defendants must "present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Burger King*, 471 U.S. at 477. The Eleventh Circuit states the same allocation. *Mosseri*, 736 F.3d at 1355. Defendant ConvenientMD and Defendant Hall's motion omitted the same standard, and CTS pointed out the omission in its response. Doc. 28 at 11–14; Doc. 37 at 11. On notice of that standard, the Individuals again fail to acknowledge the burden it places on them. Doc. 59 at 13–16. Instead, they present the five factors as an open balance.

Their burden argument rests on Ms. Bradley's description of what repeated travel to New Hampshire would cost CTS. Doc. 59 at 13–14. That statement describes the burden on a single-employee plaintiff, Doc. 37-1 ¶¶ 54–56, and it is the reason the comparative burden favors this forum. "Generally, the burden imposed on out-of-state defendants is not unfair because 'modern transportation and communications have made it much less burdensome'" to defend in a

"foreign jurisdiction." *R&R Games, Inc. v. Fundex Games, Ltd.*, No. 8:12-cv-01957-JDW-TBM, 2013 U.S. Dist. LEXIS 28426, at *15 (M.D. Fla. Feb. 28, 2013) (quoting *Burger King*, 471 U.S. at 474). The Individuals are also defended by the same counsel who already defend Defendant ConvenientMD and Defendant Hall in this Court. Doc. 59 at 26; Doc. 28 at 25–26. Florida has a "manifest interest in providing its residents with a convenient forum for redressing injuries inflicted by out-of-state actors." *Burger King*, 471 U.S. at 473 (internal quotation marks omitted). The Individuals' suggestion that CTS is "at home" in Tennessee rests on a mailing address on CTS's website and annual report. Doc. 59 at 14–15. A mailing address is not a place of business, and the same annual report lists CTS's principal place of business in St. Petersburg. Doc. 28-3, Ex. C5. The copyright counts arise under federal law, and no State's substantive policy is displaced by trying them here.

## II. Venue Is Proper Because Jurisdiction Is Proper.

Venue follows from jurisdiction on the copyright counts and from the Individuals' Florida-directed obligations on the contract counts. A copyright action may be brought in any district "in which the defendant or his agent resides or may be found." 28 U.S.C. § 1400(a). A defendant may be found "in a district which may assert personal jurisdiction over the defendant." *Palmer v. Braun*, 376 F.3d 1254, 1259 (11th Cir. 2004). The Individuals concede the point. Doc. 59 at 16. Part I therefore decides venue on Counts IV and V.

Venue is proper in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(b)(2). "Only the events that directly give rise to a claim are relevant. And of the places where the events have taken place, only those locations hosting a 'substantial part' of the events are to be considered." *Jenkins Brick Co. v. Bremer*, 321 F.3d 1366, 1371 (11th Cir. 2003). The "even greater level of relevant activities" standard the Individuals repeat comes from an unpublished district court decision, not from *Jenkins Brick*. Doc. 59 at 16–17. The breaches pled in Counts I through III are the Individuals' failures to make purchases and payments owed to CTS in Florida, through a platform CTS administers from Florida, under agreements each Individual accepted by transmission into that platform. Doc. 21 ¶¶ 57, 64; Doc. 37-1 ¶¶ 17–19, 22, 24–26. Those omissions have a close nexus to the wrong, and Florida hosts them. CTS does not rest venue on its residence or its injury in Florida, as the Individuals suggest, but rather on the Individuals' own omissions in Florida.

## III. The Individuals Have Not Carried Their Burden to Transfer.

The Individuals have not made the showing § 1404(a) requires of a movant. 28 U.S.C. § 1404(a) places the burden on the movant. *In re Ricoh Corp.*, 870 F.2d 570, 573 (11th Cir. 1989). A transfer motion is evaluated against nine factors. *Manuel v. Convergys Corp.*, 430 F.3d 1132, 1135 n.1 (11th Cir. 2005). The Individuals, like Defendant ConvenientMD and Defendant Hall, brief only witness convenience and the location of operative facts. Doc. 59 at 18–21.

On witnesses, the Individuals name themselves, but they are parties represented by counsel already appearing here. For non-parties, they point to the other enrollees on CTS's list and to the trainers and trainees in ConvenientMD's classes. Doc. 59 at 18–19. They do not say what any of those persons would testify to, why that testimony matters to claims against six Individuals that turn on each Individual's own agreement and CTS's own records, or that any of them would decline to appear. A court cannot weigh the inconvenience of testimony it has not been told about. Any non-party who will not travel can testify by deposition, which the Court may permit to be used at trial when the witness is more than 100 miles away. Fed. R. Civ. P. 32(a)(4)(B). The trainers and trainees the Individuals describe are, by Defendant ConvenientMD's own account, its current or former employees, Doc. 28-2 ¶¶ 10–12, and Defendant ConvenientMD is a party here.

A plaintiff's choice of its home forum is entitled to deference. *Ricoh*, 870 F.2d at 573. The Individuals' transfer argument never mentions that factor. Applying it, the court in *R&R Games* held that the plaintiff's choice of forum "weighs heavily against transfer." 2013 U.S. Dist. LEXIS 28426, at *30. Transfer would move the burden onto a single-employee Florida plaintiff whose owner is its only witness on the records at issue. Doc. 37-1 ¶¶ 52–59.

The location of operative facts does not point in a single direction. The agreements were accepted through, the purchases and payments were owed to, and the Works were administered from Florida. Doc. 21 ¶¶ 57, 64; Doc. 37-1 ¶¶ 15–26. The Individuals' fairness point, that CTS received "warnings" that

ConvenientMD's employees were in New Hampshire, Doc. 59 at 20, does not engage any § 1404(a) factor. What a Florida company knew about where its customers were located says nothing about the convenience of litigating in Florida. The Individuals and Defendants ConvenientMD and Hall, moreover, raise the same transfer arguments on the same facts. The claims against all Defendants arise from the same enrollments, the same agreements, and the same Works, and the interest of justice favors resolving them in one forum. That forum is the one CTS chose.

## IV. Counts IV and V State Claims for Relief.

The Individuals' Rule 12(b)(6) argument is Defendant ConvenientMD and Defendant Hall's argument, copied without change, and it fails for the reasons CTS gave in response to it. Doc. 37 at 16–19. To state a claim for copyright infringement, a plaintiff must plead "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Latimer v. Roaring Toyz, Inc.*, 601 F.3d 1224, 1232–33 (11th Cir. 2010) (quoting *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991)). The Amended Complaint pleads ownership and registration of both Works. Doc. 21 ¶¶ 12–13, 105–08, 124–27; Doc. 21-1; Doc. 21-2. It pleads copying by reproduction, not by inference: the training materials Defendant ConvenientMD disclosed after CTS's cease-and-desist letter include word-for-word reproductions of pages of the deposit copy CTS submitted to the Copyright Office. Doc. 21 ¶¶ 47–49, 114.

The Individuals' demand that CTS plead which elements of the alleged similarities are protectable assumes that CTS must prove copying by comparison. Doc. 59 at 21–23. It need not. "If the plaintiff does not have direct proof of copying, the plaintiff may show copying by demonstrating that the defendants had access to the copyrighted work and that the works are 'substantially similar.'" *Herzog v. Castle Rock Ent.*, 193 F.3d 1241, 1248 (11th Cir. 1999) (per curiam). Where the accused copies are "indistinguishable" from the original, "substantial similarity is not at issue." *Latimer*, 601 F.3d at 1233. CTS pleads direct copying: word-for-word reproduction of pages of its registered deposit copy. Doc. 21 ¶¶ 47–49, 114. A verbatim copy of text is a copy of its expression.

Each of the Individuals' cases turned on similarity inferred by comparison, not on reproduction. *Herzog* and *Miller's Ale House* compared the works on a summary judgment record. *Herzog*, 193 F.3d at 1257; *Miller's Ale House, Inc. v. Boynton Carolina Ale House, LLC*, 702 F.3d 1312, 1325–27 (11th Cir. 2012). The remainder dismissed pro se complaints whose alleged similarities were ideas or stock elements, which is when dismissal at the pleading stage is available: "if all similarities alleged concern unoriginal aspects of the work." *Bennett v. Walt Disney Co.*, No. 23-12786, 2024 U.S. App. LEXIS 22430, at *4 (11th Cir. Sept. 4, 2024) (per curiam); *see Dodd v. Woods*, No. 8:09-cv-1872-T-27AEP, 2010 U.S. Dist. LEXIS 98689, at *15 (M.D. Fla. Aug. 31, 2010) (shared first name and the concepts of a youth rehabilitation center, a cult, and mind control), *report and recommendation adopted*, 2010 U.S. Dist. LEXIS 98734 (M.D. Fla. Sept. 21,

2010); *Henderson v. Starz Ent., LLC*, No. 8:25-cv-02561-MSS-NHA, 2026 U.S. Dist. LEXIS 130329 (M.D. Fla. May 19, 2026), *report and recommendation adopted*, 2026 U.S. Dist. LEXIS 133851 (M.D. Fla. June 16, 2026). CTS does not allege that kind of similarity. Whether and how far the Works incorporate regulatory text, which the Individuals call "highly likely," Doc. 59 at 23, is a question of fact. The registrations' disclaimer of pre-existing and third-party text narrows what CTS claims; it does not defeat what remains.

The Individuals also suggest that the absence of the deposit copy and ConvenientMD's materials from the Amended Complaint reflects a "chosen pleading strategy." Doc. 59 at 23. Rule 8 requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). None of the Individuals' authorities requires a plaintiff to attach the registered work and the accused copy to its complaint. If the Court concludes that more detail is required, they can be supplied by amendment.

Count V pleads access as to Defendants Willey and Tereshchuk with facts, not stacked inferences. The 2023 Edition was first published on January 23, 2023. Doc. 21 ¶ 130. The Amended Complaint pleads that Defendant Willey enrolled the second time on February 15, 2024, that Defendant Tereshchuk enrolled in 2023 after the April 10, 2023 update, and that each accessed the Course through CTS's learning management system after the 2023 Edition's publication and agreed to its license terms. Doc. 21 ¶¶ 26, 33, 129–30. The qualifier "on information and belief" in paragraph 130 attaches to a single link,

the 2023 Edition's incorporation into the Course from its publication date, while the facts that make access follow are pled flatly. *Phoenix Entertainment*, on which the Individuals rely, recommended denying a motion for default judgment in a trademark case whose Lanham Act allegations rested on conclusory statements made on information and belief. *Phoenix Ent. Partners, LLC v. Orlando Beer Garden, Inc.*, No. 6:16-cv-80-Orl-31DAB, 2016 U.S. Dist. LEXIS 51637 (M.D. Fla. Mar. 30, 2016), *report and recommendation adopted*, 2016 U.S. Dist. LEXIS 51638 (M.D. Fla. Apr. 18, 2016). Count V is not that pleading, nor is the case at the default judgment stage. Counts IV and V state claims against the Individuals, and the Rule 12(b)(6) branch of the motion should be denied.

WHEREFORE, CTS respectfully requests that this Court deny the Motion to Dismiss, or to Transfer Venue, filed by Defendants Willey, Morse, Barry, Nelson, Dalton, and Tereshchuk (Doc. 59) in its entirety. In the alternative, and only if the Court finds any portion of the Amended Complaint deficient, CTS respectfully requests leave to amend.

Dated: November 20, 2026.

Respectfully submitted,

/s/ Julia Hannah Weber
Julia Hannah Weber
Florida Bar No. 1045592
Joseph F. Southron, Esq.
Florida Bar No. 122109
**SOUTHRON FIRM, P.A.**
400 N. Ashley Drive, Suite 1720
Tampa, Florida 33602
Tel. (813) 773-5105
Fax (813) 683-4338
julia.weber@southronfirm.com
joe@southronfirm.com
eservice@southronfirm.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on November 20, 2026, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

/s/ Julia Hannah Weber
Julia Hannah Weber